UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

XIAMEN ITG GROUP CORP. LTD.,        :
                                        :
                    Petitioner,       :
     -vs.-                         : Civil Action No. 1:21-cv-00535
                                          :

PEACE BIRD TRADING CORP.,         :
                                          :
                  Respondent.    :
-------------------------------------------------------------- x

 

**Petitioner Xiamen ITG Group Corp. Ltd.'s Opposition to
Respondent Peace Bird Trading Corp.'s Motion to Dismiss the
Petition to Confirm the Foreign Arbitration Award and in
Support of Confirmation of Arbitral Award**

MAZZOLA LINDSTROM, LLP

Jean-Claude Mazzola
1350 Avenue of the Americas, 2FL
New York, New York 10019
(646) 216-8585
jeanclaude@mazzolalindstrom.com

Ruofei Xiang
1350 Avenue of the Americas, 2FL
New York, New York 10019
(646) 663-1860
ruofei@mazzolalindstrom.com

*Attorneys for Petitioner*

## Table of Contents

**Page(s)**

Table of Authorities………………………………………………………………...iv

Preliminary Statement....................................................................................... 7

Statement of Facts and Procedural History........................................................ 7

Argument ........................................................................................................... 3

 I.  Standard of Review........................................................................................ 3

 II. The First-to-File Rule is inapplicable .......................................................... 4

    (1)   The first-to-file rule is inapplicable since CIETAC arbitration was commenced and the arbitration hearing was conducted before any filing in the United States District Court for the Eastern District of New York. ............................. 5

    (2)   The 2019 action concerns contracts that are substantively different from the contract submitted for arbitration and pertain to different sets of goods........... 6

    (3)   There is no waiver of arbitration. .................................................... 8

 III.    The Award Should be Enforced Since Respondent Raises No Relevant Grounds Opposing Enforcement. ........................................................ 11

    (1)   Legal standard for enforcement of arbitral award. ......................... 11

    (2)   Under the New York Convention, Peace Bird fails to meet its burden of proving the existence of one of the narrowly construed grounds for refusing to recognize the award. ...................................................... 12

    (3)   Peace Bird failed to challenge the validity of the eight contracts during the CIETAC arbitration, and thus waived its right to do so. ................................ 14

    (4)   Xiamen ITG satisfied its obligation to attempt to settle................... 15

    (5)   Enforcement of the award is not against public policy. ................... 15

    (6)   Courts Have a Long-Standing History of Confirming CIETAC Arbitration Awards......................................................................... 17

    (7)   The agreed-upon arbitration clause is valid and enforceable. ......................... 19

(8)    Xiamen ITG's motion to confirm the award
           is procedurally proper and sufficient. ........................................................ 20

IV.    Petitioner's Motion to Confirm the Award should be Granted under
       the Federal Arbitration Act and the New York Convention ...................................... 21

Conclusion ........................................................................................................................ 22

4821-0591-1262, v. 1

**Table of Authorities**

**Cases**                                                     **Page(s)**

*Andros Compania Maritama S.A. v. Marc Rich & Co.*,
579 F.2d 691 (2d Cir. 1978) ......................................................................... 6

*Applied Indus. Materials Corp. v Ovalar Makine Ticaret Ve Sanayi, A.S.*,
492 F3d 132 (2d Cir 2007) ......................................................................... 21

*Bank Melli Iran v. Pahlavi*,
58 F. 3d 1406 (9th Cir. 1995) ..................................................................... 20

*Barbier v. Shearson Lehman Hutton Inc.*,
948 F. 2d 117 (2d Cir. 1991) ...................................................................... 16

*Bergesen v Joseph Muller Corp.*,
710 F2d 928 (2d Cir 1983) ......................................................................... 22

*Brandeis Intsel Ltd. v. Calabrian Chems. Corp.*,
656 F. Supp. 160 (S.D.N.Y. 1987) ............................................................. 14

*China Minmetals Materials, Ltd. v Chi Mei*,
334 F.3d 274 (3rd Cir. 2003) ................................................................. 5, 14

*Commonwealth Coatings Corp. v. Continental Cas. Co.*,
393 U.S. 145 (1968) ............................................................................. 20, 21

*Com-Tech Assoc. v. Computer Assoc.*,
938 F.2d 1574 (2d Cir. 1991) ..................................................................... 11

*D.H. Blair & Co., Inc. v.Gottdeiner*,
462 F3d 95 (2d Cir 2006) ........................................................................ 5, 6

*Duferco Int'l Steel Trading. v. T. Klaveness Shipping A/S*,
333 F.3d 383 (2d Cir. 2003) ......................................................................... 6

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
403 F.3d 85 (2d Cir. 2005) ........................................................................... 6

*Europcar Italia, S.p.A v. Maiellano Tours, Inc.*,
156 F. 3d 310 (2d. Cir. 1998) ..................................................................... 16

*Folkways Music Publishes, Inc. v. Weiss*,
989 F.2d 108 (2d Cir. 2993) ......................................................................... 6

iv

*Geotech Lizenz AG v. Evergreen Sys. Inc.*,
    697 F. Supp. 1248 (E.D.N.Y 1988) ................................................................ 13

*Hendrix v. Raybestos-Manhattan, Inc.*,
    776 F. 2d 1492 (11th Cir. 1985) ................................................................... 7

*In re Fund In re Fund for Protection of Inv. Rights in Foreign States v AlixPartners, LLP*,
    2021 U.S. App. LEXIS 20932 (2d Cir July 15, 2021, No. 20-2653-cv) ............................... 18

*In re Hanwei Guo*,
    2019 US Dist. LEXIS 29572 [SDNY Feb. 25, 2019, No. 18-MC-561 (JMF) ................... 18, 19

*Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Industrial y Comercial*,
    745 F. Supp. 172 (S.D.N.Y 1990) ................................................................ 14

*Jiangsu Changlong Chem, Co., Inc. v. Burlington Bio-Medical & Sci. Corp.*,
    399 F. Supp. 2d 165 (E.D.N.Y. 2005) ........................................................ 6, 13, 22

*John. T. Brady & Co. v. Form-Eze Systems, Inc.*,
    623 F.2d 261 (2d Cir. 1980) ....................................................................... 2

*Johnson v. Kerney*,
    No. 91-CV-19993, U.S. Dist. LEXIS 18503 (E.D.N.Y. 1993) ................................ 7

*Korean Trade Ins. Corp. v. Eat It Corp.*,
    No. 14-CV-3456, 2015 WL 1247053 (E.D.N.Y. Mar. 16, 2015) ........................... 5

*Kramer v Hammond*,
    943 F2d 176 (2d Cir. 1991) ................................................................. 11, 12

*Lucent Techs. Inc. v. Tatung Co.*,
    379 F. 3d 24 (2d Cir. 2004) .................................................................... 21

*M&C Corp. v. Erwin Behr GmbH & Co.*,
    87 F. 3d 844 (6th Cir. 1996) ................................................................... 14

*Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Association. (Bermuda) Ltd.*,
    No. 90-CV-3792, 1995 WL 361303 (S.D.N.Y. June 16, 1995) ............................. 13

*Morelite Const. Corp. v. New York City Dist. Council Carpenters Ben. Funds*,
    748 F.2d 79 (2d Cir. 1984) ................................................................... 20

*Moses H. Cone Mem. Hosp. v Mercury Constr. Corp.*,
    460 US 1 (1983) ............................................................................. 11

*Nat'l Football League Mgm't Council v. Nat'l Football League Players Ass'n*,
    820 F. 3d 527 (2d Cir. 2016) ................................................................. 20

v

*OOO FC Grand Cap. v. Int'l Pharm. Sers. Ltd.*,
  No. 16-CV-6156, 2017 WL 8813135 (E.D.N.Y. Dec. 15, 2017)
  *R&R adopted*, 2018 WL 879027 (E.D.N.Y. Feb. 14, 2018).........................5

*Parsons & Whittemore Overseas Co. v. Societe Generale de l'Industrie du Papier*,
  508 F 2d 969 (2d Cir. 1974)..................................................................14

*Rush v. Oppenheimer & Co.*,
  779 F.2d 885 (2d Cir. 1985)............................................................11, 12

*SEC v Illarramendi*,
  2012 US Dist. LEXIS 8890 (D. Conn. Jan. 25, 2012, No. 3:11CV78 (JBA))...........7

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010)...........................................................................20

*Tianjin Port Free Trade Zone Intl. Trade Serv. Co. v Tiancheng Chempharm Inc.*,
  2018 US Dist. LEXIS 90106 (EDNY May 30, 2018, No. 17-CV-4130 (JS)(AYS)).....17

*Wallace v. Buttar*,
  378 F.3d 182 (2d Cir. 2004)...................................................................5

*Yonir Technologies, Inc. v. Duration Systems Ltd.*,
  244 F. Supp. 2d 194 (S.D.N.Y. 2002).......................................................6

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys 'R' Us, Inc.*,
  126 F. 3d 15 (2d. Cir. 1997)..................................................................14

*Zeiler v. Deitsch*,
  500 F.3d 157 (2d Cir. 2007)...................................................................2

**Other Authorities**

Domke on Commercial Arbitration § 22.1 (Larry E. Edmonson ed., 3d ed. 2015).......22

**Rules**

9 U.S.C. § 10............................................................................................20

9 USC § 201...............................................................................................5

9 USC § 207...........................................................................................5, 14

Federal Rule of Civil Procedure 42 ............................................................7

4821-0591-1262, v. 1

## Preliminary Statement

### Statement of Facts and Procedural History

Xiamen ITG  submitted a written arbitration application to CIETAC on November 22, 2018, commencing arbitration proceedings on eight separate contracts bearing numbers: NLF20170218 executed on February 10, 2017, NLF2017022-1 executed on February 10, 2017, NLF20170220-2 executed on February 10, 2017, NLF20170514 executed on May 10, 2017, NLF20170517 executed on May 10, 2017, NLF20170520 executed on May 10, 2017, NLF20170706 executed on May 10, 2017, NLF20170620 executed on May 10, 2017, and NLF20170620 executed on June 25, 2017. Each contract was duly signed by Peace Bird, and contained an arbitration clause, less than an inch above the signature line, providing as follows:

> Arbitration: Any dispute, controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity be settled amicably through negotiation. In case no settlement can be reached between the two parties, the case shall be submitted for arbitration to China International Economic and Trade Arbitration Commission in Beijing in accordance with its Arbitration Rules. The tribunal shall be composed of three arbitrators. Each party shall nominate one arbitrator and jointly nominate the third arbitrator who shall act as the presiding arbitrator. Where the parties have failed to nominate the third arbitrator, the third arbitrator shall be appointed by the chairman of CIETAC. The presiding arbitrator shall not be a lawyer in practice. The arbitrary [sic] award shall be accepted as final and binding upon both parties. The arbitration fee shall be borne by the losing party.

See Exhibit 5, Pages 2, 5, 7, 10, 12, 14, 16, 18.

On January 2, 2019, CIETAC sent notice of arbitration, the arbitration rules, and the list of arbitrators to both parties by express mail. See Exhibit 1, Page 4. The arbitration application and supporting evidence submitted by Xiamen ITG were sent to Peace Bird. Xiamen ITG selected an arbitrator as per the arbitration clause. See Exhibit 1, Page 4. Peace Bird failed to select an arbitrator or entrust the chairman of CIETAC to appoint an arbitrator within the

prescribed time limit. See Exhibit 1, Page 4. In accordance with the arbitration clause and

CIETAC rules, the chairman of CIETAC appointed the second and third arbitrators and sent

relevant notices on the formation of the tribunal and appointment of arbitrators to both parties.

Article 27 of the CIETAC rules specifically provide that:

> 1. Within fifteen days from the date of receipt of the Notice of Arbitration, the Claimant and the Respondent shall each nominate, or entrust the Chairman of CIETAC to appoint, an arbitrator, failing which the arbitrator shall be appointed by the Chairman of CIETAC.

> 2. Within fifteen days from the date of the Respondent's receipt of the Notice of Arbitration, the parties shall jointly nominate, or entrust the Chairman of CIETAC to appoint, the third arbitrator, who shall act as the presiding arbitrator.

See Exhibit 6.

On May 29, 2019, the arbitration tribunal held a hearing on the case in Beijing. Both the

Xiamen ITG and Peace Bird participated, and had the opportunity to present their respective

positions. Both parties submitted documents to the tribunal before the hearing, and both parties

entrusted agents to attend. See Exhibit 1, Page 4. The arbitration award specified that:

> During the hearing, Petitioner [Xiamen ITG] stated the arbitration claim and the facts and reason on which it was based. Respondent [Peace Bird] replied to the claim. Petitioner presented the relevant original evidence and Respondent questioned the evidence. Both parties debated the facts and legal issues and answered the questions raised by the Arbitration Tribunal.

See Exhibit 1, Pages 4-5.

The tribunal found in favor of Xiamen ITG and rendered a final award on March 10,

2020.

On February 1, 2021, Xiamen ITG filed a petition with this court to confirm the final

arbitration award.

**Argument**

## I.   Standard of Review

Foreign arbitration awards are enforceable under the Federal Arbitration Act (9 USC §§201, 207), which incorporates the provisions of the New York Convention. *China Minmetals Materials, Ltd. v Chi Mei*, 334 F.3d 274, 279 (3rd Cir. 2003). In determining whether to confirm an arbitral award, the reviewing court must afford great deference to the decision of the arbitrator. *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004). "'A district court's review of an arbitration award is extremely deferential,' and '[s]uch deference is particularly appropriate with respect to foreign arbitration awards'." *OOO FC Grand Cap. v. Int'l Pharm. Sers. Ltd.*, No. 16-CV-6156, 2017 WL 8813135, AT *5 (E.D.N.Y. Dec. 15, 2017); *R&R adopted*, 2018 WL 879027, at *1 (E.D.N.Y. Feb. 14, 2018), *quoting Korean Trade Ins. Corp. v. Eat It Corp.*, No. 14-CV-3456, 2015 WL 1247053, at *4 (E.D.N.Y. Mar. 16, 2015) (alteration in original). "[C]onfirmation of an award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F3d 95 (2d Cir 2006). All that is required is a "barely colorable justification" for the award. *Id*. Confirmation of a foreign arbitral award is a "summary proceeding," which "merely converts what is already a final decision into a judgment of a court."  *Jiangsu Changlong Chem, Co., Inc. v. Burlington Bio-Medical & Sci. Corp.*, 399 F. Supp. 2d 165, 168 (E.D.N.Y. 2005) (internal quotation marks and citation omitted).

A party that is seeking to dismiss an action to confirm an arbitral award or to vacate an arbitral award "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by state and case law." *Duferco Int'l Steel Trading. v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). The Second Circuit holds that '[a]rbitration

3

awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Yonir Technologies, Inc. v. Duration Systems Ltd.*, 244 F. Supp. 2d 194, 203 (S.D.N.Y. 2002), *citing Folkways Music Publishes, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 2993); *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005). Accordingly, the Second Circuit uses an extremely deferential standard of review for arbitral awards in order to encourage and support the use of arbitration by consenting parties. *Id.*; *Duferco*, 333 F.3d 383 at 388. Only a "barely colorable justification" for the outcome reached by the arbitrator is necessary to confirm the award. *D.H. Blair & Co. v. Gottdiener*, 462 F. 3d 95, 110 (2d Cir. 2006); *Andros Compania Maritama S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978). The arbitrator's fact-finding is beyond challenge. Accordingly, Peace Bird's excuses for rejecting the arbitration award – which do not fall within the exceptions to the enforcement of arbitral awards – are of no moment.

## II.     The First-to-File Rule is inapplicable.

There are no competing lawsuits here. Peace Bird argues that the first-to-file rule should apply because the issues in *Xiamen ITG Group Corp. Ltd v. Peace Bird Trading Corp.* (19-cv-6524) ("2019 Action") and the current case overlap substantially and the parties in the two actions are substantially similar. Neither the first-to-file rule should apply nor do the current actions overlap substantially. The first-to-file rule was intended to resolve situations where an action brought in one federal trial court and a later action embracing the same issue is brought in another federal court: the first court would have jurisdiction to enjoin the second action unless there are special circumstances which justify priority to the second action. *See SEC v Illarramendi*, 2012 US Dist. LEXIS 8890 (D. Conn. Jan. 25, 2012, No. 3:11CV78 (JBA)). This is not the current situation. Both cases are in the United States District Court for the Eastern

District of New York; therefore, there is no dispute over priority in jurisdiction because there is only one court.

With regard to the Peace Bird's request for consolidation of the matters pursuant to Federal Rule of Civil Procedure 42(a), consolidation of the cases at this time would only serve to frustrate its purpose by creating additional unnecessary cost and delay. While the court does have "broad discretion in determining whether consolidation is appropriate," the court must balance the efficiency gained through consolidation against possible prejudice to the parties. *Johnson v. Kerney*, No. 91-CV-19993, U.S. Dist. LEXIS 18503, at *16 (E.D.N.Y. 1993) (J. Sifton), *citing Hendrix v. Raybestos-Manhattan, Inc.*, 776 F. 2d 1492 (11th Cir. 1985). In the instant case, no efficiency will be gained through consolidation because the arbitration award does not require discovery, witness testimony, or litigation (as respondent suggests), since the relief that is sought is solely enforcement of the arbitration award. Additionally, because the case has already gone through two years of CIETAC proceedings, consolidation under Rule 42(a) would frustrate the entire purpose of the arbitration, nullifying two years of arbitration, solely because Peace Bird wishes to forestall the inevitable. Consolidation would run afoul of Rule 42(a), as it would only cause delay, to the prejudice of Xiamen ITG.

**(1) The first-to-file rule is inapplicable since CIETAC arbitration was commenced and the arbitration hearing was conducted before any filing in the United States District Court for the Eastern District of New York.**

First, the first-to-file rule does not apply because the 2019 action was commenced on November 19, 2019, whereas Xiamen ITG initiated arbitration proceedings one year earlier on November 22, 2018. Xiamen ITG did not waive its right to arbitration. On the contrary, the timeline of the filings show that Xiamen ITG honored the arbitration clauses in the eight contracts by commencing CIETAC arbitration, and then separately litigated the other twenty contracts *which do not contain arbitration clauses*.

5

This instant action is a petition for the confirmation of the CIETAC arbitration award. It is not an action to litigate the underlying facts and arguments, for which the CIETAC tribunal has already rendered a final ruling. This action does not compete with the 2019 action procedurally or factually, regardless whether the underlying contractual dispute involves the same parties, with substantially similar goods, or raise similar legal issues. Confirmation of the arbitral award here does not prejudice Peace Bird  in the 2019 action, nor does it affect the adjudication of that matter. This is not a "parallel federal lawsuit," as Peace Bird argues in its papers.

The arbitration hearing was conducted on May 29, 2019, and as per the award, "[b]oth Parties hereof entrusted agents to attend the hearing." Exhibit 1, Page 4. By the time the 2019 action was filed on November 29, 2019, Peace Bird had already participated in the arbitration hearing, and had the opportunity to defend raise any defense our counterclaim it wished. Peace Bird does not now get a second bite of the apple, not even a nibble. In fact, we're dealing with apples and oranges. One set of contracts has arbitration clauses; one set does not. It's quite simple.

**(2)   The 2019 action concerns contracts that are substantively different from the contract submitted for arbitration and pertain to different sets of goods.**

It is very clear that the 2019 action has nothing to do with the invoices and contracts that were the subject of the arbitration. In the 2019 action, Xiamen ITG made it very clear in the complaint, the discovery papers, and motions to the court that the contracts containing arbitration clauses were carved out, so as to honor the parties' agreement to arbitrate. There was no waiver of arbitration, nor of the right to obtain confirmation of the award.

The complaint in the 2019 action points out that Xiamen ITG entered into a series of twenty-eight separate written contracts with Peace Bird. Exhibit 2, ¶ 6. The complaint then specifically states in paragraph 9 that:

> Eight of the initial Sales Contracts provided for the arbitration of any dispute, controversy or claim arising out of or relating to the contracts before the China International Economic and Trade Arbitration Commission. The remaining Sales Contracts that were executed by the parties and which are the subject of this action, do not include an arbitration clause.

Exhibit 2, ¶9.

The twenty causes of action in the 2019 action pertained exactly to the twenty contracts that did not contain an arbitration clause. None of the remaining eight contracts at issue here, which *did* contain arbitration clauses, were included in that complaint. Each contract corresponded with the purchase of different sets of goods, in different quantities, different colors, different models, and different unit prices. Whether they were shipped in the same containers through the same ports, or involved the same buyer and seller are irrelevant. It is common practice for goods under various contracts to be shipped in the same container. Regularly, goods are shipped from multiple importers in the same container to optimize efficiency and reduce costs. These are called "mixed containers," and the goods are not all subject to the same contracts.

Even if the goods were shipped in the same container, Peace Bird's argument makes improper assumptions. It does not change the fact that these are twenty-eight different contracts; twenty contained no arbitration clause. These are the subject of the 2019 action. Eight have arbitration clauses, and those contracts were the subject of the CIETAC arbitration, and its tribunal's award in Xiamen ITG's favor must now be confirmed.

When Peace Bird attempts to include all twenty-eight contracts in the 2019 action (without even mentioning the arbitration proceedings in its answer and counterclaims), Xiamen

ITG made its objections very clear, both in discovery and in its motion papers in the 2019 action. For example, in Xiamen ITG's responses to certain interrogatories, it objected on the grounds that such interrogatories wee based on contracts containing CIETAC arbitration provisions that "have been submitted to CIETAC for arbitration and that an arbitral award with respect to these claims has been issued by duly formed arbitral tribunal…." See Exhibit 3. Further, in motion papers submitted in the 2019 action, Xiamen ITG maintained its position that "none of the contracts for the sales transactions involved in this case have arbitration clauses, and there is no claim made in this action to enforce the arbitration [a]wards that have been entered against the Peace Bird defendants in China." See Exhibit 4. In the 2019 action.

RFI No. 23 asked Xiamen ITG to set forth in detail all goods that were subject to any arbitration and the specific rulings made by the arbitrator related to those goods. Xiamen ITG stated that, "[a]lthough none of the sales contracts in this case have arbitration clauses, [Xiamen ITG's] response referred [Peace Bird] to pages XIAMENITG000671A to XIAMENITG000847 of [Xiamen ITG's] June 4, 2020, document production which consisted of certified copies of the arbitral awards entered against each of the [Peace Bird] defendants with respect to shipments made by [Xiamen ITG] to them." See Exhibit 4.

Civil cases are not related merely because they involve common legal issues or the same parties. While the 2019 action and the present case involve the same parties, the contracts discussed in these two cases are substantively different, and the issues in the present case were already arbitrated and resolved two years ago.

**(3)  There is no waiver of arbitration.**

In determining whether arbitration was waived, the Supreme Court has held that, "[a]ny doubts concerning the scope of arbitration issues should be resolved in favor of arbitration,

8

whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v Mercury Constr. Corp.*, 460 US 1 (1983). "In light of this presumption, a waiver of arbitration "is not to be lightly inferred." *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985) (citation omitted).

A party waives the right to arbitration when he engages in "protracted litigation that results in prejudice to the opposing party." *Com-Tech Assoc. v. Computer Assoc.*, 938 F.2d 1574, 1576 (2d Cir. 1991). "Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Rush*, 779 F.2d at 887. In *Com-Tech* and *Rush*, the Second Circuit established that "[p]rejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." *See Com-Tech*. 938 F.2d at 1576; *Rush*, 779 F.2d at 887-88. Neither of these situations are applicable here.

*Kramer v Hammond*, 943 F2d 176 (2d Cir. 1991), addressed the issue of prejudice. Four years passed between the time that suit was brought suit and when the arbitration clause was interposed as a defense, after Kramer had already litigated (and lost) up to the high courts of New York and South Carolina, and then attempted to enforce the arbitration clause and take another chance at achieving a different result. The court held that, "[b]y engaging in such aggressive, protracted litigation for over a four-year period, Kramer waived his contractual right to arbitration. To allow him to invoke arbitration at this late date would severely prejudice Hammond, who has expended a great deal of time and money in contesting Kramer's motions and appeals." *Id*.

Contrary to respondent's allegations, Xiamen ITG is not attempting to raise the arbitration clause to achieve a different result, but only seeking enforcement of the arbitral award. Xiamen ITG has not litigated the eight sales contracts in this court, or in any other court, and does not seek to litigate them in the 2019 action. The enforcement of the arbitral award is distinguishable from the *Kramer* because Xiamen ITG is not seeking to relitigate the case and achieve a different result.

Second, *Rush v Oppenheimer & Co.,* 779 F.2d 885 (2d Cir 1985), held that the prejudice required for waiver may also be "prejudice in terms of either expense or delay." *Rush* at 888. In *Rush*, the court held that while there was an eight-month delay before arbitration was invoked, the number of non-arbitrable issues justified the litigation that preceded the demand for arbitration. *Id*. at 887-888. There is no prejudice in expense or delay here. Xiamen ITG commenced arbitration as to contracts that required adjudication by arbitration, and it filed litigation for contracts that required adjudication through litigation, as they did not contain arbitration clauses. This action simply asks to confirm an arbitral award. No additional litigation is required. No delay or unnecessary cost has been or will be incurred, other than the costs borne by Xiamen ITG in addressing Peace Bird's dilatory tactics.

It is not Xiamen ITG that is attempting to relitigate the case, nor has it waited too long before invoking its contractual right to arbitration. Xiamen ITG filed a written application for arbitration a year before filing a case in the Eastern District; it is not attempting to relitigate the case, but, instead, confirm the award. Peace Bird's attempt to relitigate the matter would cause Xiamen ITG to suffer unnecessary delay and additional expense, since these eight contracts will need to be relitigated, and the past two years of CIETAC arbitration will have been for nought.

III.    **The Award Should be Enforced Since Respondent Raises No Relevant Grounds Opposing Enforcement**.

**(1)    Legal standard for enforcement of arbitral award.**

Countries that are parties to the New York Convention, including the United States and China, agree to recognize each other's arbitral awards and to enforce them in accordance with the rules of procedure of the place where the award is relied upon." *Jiangsu Changlong Chem, Co., Inc. v. Burlington Bio-Medical & Sci. Corp.*, 399 F. Supp. 2d 165, 168 (E.D.N.Y. 2005), *citing Geotech Lizenz AG v. Evergreen Sys. Inc.*, 697 F. Supp. 1248, 1252 (E.D.N.Y 1988).

The party seeking enforcement "need only submit an authentic copy of the award, the agreement to arbitrate and, if the award is in a language other than English, a duly certified translation." *Id*. (citing NY Convention, Art. IV). Once these documents are submitted, the burden shifts to respondent to demonstrate that "one of the circumstances warranting denial of enforcement, as set forth in the Convention, is present." *Jiangsu*, 399 F. Supp. 2d at 168, *citing Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Association. (Bermuda) Ltd.*, No. 90-CV-3792, 1995 WL 361303, at *1 (S.D.N.Y. June 16, 1995), *aff'd* 79 F. 3d 295 (2d Cir. 1996). These circumstances are limited and "in view of the strong public policy favoring arbitration, are to be narrowly constructed." *Jiangsu*, 399 F. Supp. 2d at 168, *citing Geotech*, 697 F. Supp. at 1252.

As the Second Circuit has noted, there is now considerable case law holding that, in an action to confirm an award rendered in, or under the law of, a foreign jurisdiction, the grounds for relief enumerated in Article V of the New York Convention are the only grounds available for setting aside an arbitral award. *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys 'R' Us, Inc.*, 126 F. 3d 15, 20 (2d. Cir. 1997), *citing M&C Corp. v. Erwin Behr GmbH & Co.*, 87 F. 3d 844, 851 (6th Cir. 1996); *Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Industrial*

*y Comercial*, 745 F. Supp. 172, 181-82 (S.D.N.Y 1990); *Brandeis Intsel Ltd. v. Calabrian Chems. Corp.*, 656 F. Supp. 160, 167 (S.D.N.Y. 1987).

"In an oft-cited opinion" regarding enforcement of a foreign arbitration award, the Second Circuit noted the "general pro-enforcement bias informing the Convention," due to the fact that the Convention's "basic thrust was to liberalize procedures for enforcing foreign arbitral awards." *Parsons & Whittemore Overseas Co. v. Societe Generale de l'Industrie du Papier*, 508 F 2d 969 (2d Cir. 1974).

The Convention, in keeping with 9 U.S.C. § 207, "unequivocally provides that a court in which enforcement of a foreign arbitration award is sought 'shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *China Minmetals Materials Import & Export Co., Ltd. v Chi Mei Corp.*, 334 F3d 274 (3d Cir 2003).

**(2) Under the New York Convention, Peace Bird fails to meet its burden of proving the existence of one of the narrowly construed grounds for refusing to recognize the award.**

Under Article V of the New York Convention, confirmation and enforcement of the award is required unless, at the request of the party against whom it is invoked, that party proves that non-recognition is warranted:

> 1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, ***only if*** that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> (a) The parties to the agreement referred to in Article II were, under the law applicable to them, under ***some incapacity***, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked **was not given proper notice** of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference ***not contemplated by or not falling within the terms of the submission to arbitration***, or it contains decisions on matters

***beyond the scope*** of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) ***The composition of the arbitral authority*** or the arbitral procedure ***was not in accordance with the agreement*** of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has ***not yet become binding*** on the parties, or ***has been set aside*** or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2.   Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is ***not capable of settlement*** by arbitration under the law of that country; or (b) The recognition or enforcement of the award would be ***contrary to the public policy*** of that country.

Article V of the New York Convention (emphasis added).

Manifestly, none of the exceptions apply. Nonetheless, Focusing on section (1)(d), Peace Bird claims that the composition of the tribunal was not in accordance with the parties' agreement. This argument cannot have been made in good faith.

The arbitration clause is found in Section 9 of each of the eight contracts at issue in this action, which provides that, "[e]ach party shall nominate one arbitrator and jointly nominate the third arbitrator who shall act as the presiding arbitrator. Where the parties have failed to nominate the third arbitrator, the third arbitrator shall be appointed by the chairman of CIETAC." See Exhibit 5. As discussed above, this provision is entirely consistent with Article 27 of CIETAC rules. Were the rule otherwise, a party would be able to frustrate arbitration by merely declining to nominate its own arbitrator.

Peace Bird, by failing to nominate an arbitrator within fifteen days, waived its right to do so, and so an arbitrator was chosen on its behalf by CIETAC. See Exhibit 1, Page 4. Peace Bird did not dispute the chosen arbitrators during the CIETAC proceedings, nor did it object to the jurisdiction of CIETAC. Instead, it fully participated in the CIETAC arbitration, never objecting

to the composition or jurisdiction of the tribunal.

There are no good-faith grounds for Peace Bird to contest the composition of the tribunal. The sole reason that it cites for objecting to the composition of the tribunal is that it was unable to choose an arbitrator. But it had the opportunity to do so, and waived it. It failed to designate an arbitrator within the allotted time, so CIETAC appointed an arbitrator on its behalf. Peace Bird's attempt to invalidate the award is predicated upon its own inaction.

**(3) Peace Bird failed to challenge the validity of the eight contracts during the CIETAC arbitration, and thus waived its right to do so.**

Peace Bird attempts to evade confirmation of the award by disputing the validity of the eight contract; however, it failed to assert such arguments during the CIETAC arbitration. See Exhibit 1. Thus, it's argument has been waived. Tthe Second Circuit has held that, "the issue of whether the underlying contract that is the subject of the arbitrated dispute was forged or fraudulently induced [is] a matter to be determined exclusively by the arbitrators." *Europcar Italia, S.p.A v. Maiellano Tours, Inc.*, 156 F. 3d 310, 315 (2d. Cir. 1998) (collecting cases). Additionally, if the party resisting confirmation of the arbitration award, "did raise the issue to the arbitrators, it cannot seek to relitigate the matter here." *Id. citing Barbier v. Shearson Lehman Hutton Inc.*, 948 F. 2d 117, 120-21 (2d Cir. 1991) (additional citations omitted). A party is required to raise the issue of whether the sales contracts are fraudulent to the arbitrators. When a party fails to raise the issue, the issue is forfeited and cannot be raised in the district court as a defense to its enforcement. *Tianjin Port Free Trade Zone Intl. Trade Serv. Co. v Tiancheng Chempharm Inc.*, 2018 US Dist. LEXIS 90106 (EDNY May 30, 2018, No. 17-CV-4130 (JS)(AYS)). As did the opponent of confirmation in *Tianjin*, Peace Bird likewise failed to raise this issue during arbitration, and has therefore waived the issue. It cannot raise this argument now.

14

**(4)   Xiamen ITG satisfied its obligation to attempt to settle.**

Peace Bird argues that Xiamen ITG failed to attempt to settle this dispute amicably before submitting a request for arbitration to CIETAC. Peace Bird states that Xiamen ITG "never even made a good faith attempt to engage in any negotiation before instituting arbitration." Respondent's Brief in Support of Motion to Dismiss, Page 23. This is false. Xiament ITG requested payment multiple times, but Peace Bird refused repeated reminders to make payment.

In determining whether the parties attempted to settle the dispute prior to arbitration, the Second Circuit has held that reminders to make payment are sufficient to satisfy the requirement of an attempt to settle. *Tianjin Port Free Trade Zone Intl. Trade Serv. Co. v Tiancheng Chempharm Inc.*, 2018 US Dist. LEXIS 90106 (EDNY May 30, 2018, No. 17-CV-4130 (JS)(AYS)) at *12. The numerous attempts to collect, as noted by the tribunal, are set forth in the margin.[1] Further, this is not grounds for vacating or refusing to enforce an arbitration award under the New York Convention. Whether a condition precedent was met in invoking the arbitration award is a matter that should have been raised during the arbitration.

**(5)   Enforcement of the award is not against public policy.**

Respondent claims that CIETAC arbitration was unfair because Xiamen ITG is a "large business controlled by the Republic of China, which is controlled by the Chinese Communist

---

[1] Under sales contract NFL20170218, the tribunal held that "[u]pon the repeated reminders by the [petitioner], Respondent still refused to pay". CIETAC Arbitration Award Page 3. Under sales contract NFL20170220-1, the tribunal held that "[u]pon the repeated reminders by the [petitioner], Respondent still refused to pay". CIETAC Arbitration Award Page 3. Under sales contract NFL20170220-2, the tribunal held that "[u]pon the repeated reminders by the [petitioner], Respondent still refused to pay". CIETAC Arbitration Award Page 3. Under sales contract NFL20170514, the tribunal held that "[u]pon the repeated reminders by the [petitioner], Respondent still refused to pay". CIETAC Arbitration Award Page 4. Under sales contract NFL20170517, the tribunal held that "[u]pon the repeated reminders by the [petitioner], Respondent still refused to pay". CIETAC Arbitration Award Page 5. Under sales contract NFL20170520, the tribunal held that "[u]pon the repeated reminders by the [petitioner], Respondent still refused to pay". CIETAC Arbitration Award Page 5. Under sales contract NFL20170706, the tribunal held that "[u]pon the repeated reminders by the [petitioner], Respondent still refused to pay". CIETAC Arbitration Award Page 5. Under sales contract NFL20170620, the tribunal held that "[u]pon the repeated reminders by the [petitioner], Respondent still refused to pay". CIETAC Arbitration Award Page 6.

Party ('CCP'). The members of the arbitration panel portrayed themselves as members of the CCP and were loyal to [Xiamen] ITG as a business controlled by the Republic of China." Declaration of Brian Wu, ¶21.

First, Peace Bird has proffered no evidence that political affiliations are involved in CIETAC decisions. There is no basis for the suggestion that CIETAC is an arm of the Chinese government, and our courts have found otherwise: In the case of *In re Hanwei Guo*, 2019 US Dist. LEXIS 29572 [SDNY Feb. 25, 2019, No. 18-MC-561 (JMF), the court noted that CIETAC – though originally established by the Chinese government – operates as a private commercial arbitration body and is no longer a government entity.[2] CIETAC's jurisdiction is not derived from the Chinese government; rather, it is derived exclusively from the private agreement of the parties to the arbitration proceedings. *In re Hanwei Guo*, supra; see also CIETAC Arbitration Rules ("CIETAC Rules") art. 3(1). *In re Fund for Protection of Inv. Rights in Foreign States v AlixPartners, LLP, 2021 U.S. App. LEXIS 20932 (2d Cir July 15, 2021, No. 20-2653-cv)*

, the Second Circuit noted that hit had been found in *Hanwei Guo* that CIETAC "function[ed] essentially independently of the Chinese government in the 'administration of its arbitration cases'." *In re Fund* at \*16. Additionally, the Second Circuit found that CIETAC, "maintain[ed] confidentiality from all non-participants during and after arbitration, limiting opportunities for *ex parte* intervention by state officials" and that CIETAC offers a pool of arbitrators with no affiliation with the Chinese government. *In re Fund* at \*16. Accordingly, the court held that CIETAC had a "high degree of independence and autonomy, and, conversely, a

---

[2] The Chinese government originally established CIETAC in 1954; however, CIETAC in 2021 is substantially different than CIETAC in 1954. See e.g. Arthur Ma, et al., People's Republic of China, in ASIA ARBITRATION HANDBOOK §3.63, at 124 (Michael J. Moser & John Choong eds., 2011) ("Although established under the auspices of a quasi-governmental entity, CIETAC's legal status has gradually transformed into a non-governmental organization which now functions independently in dispute handling.").

low degree of state affiliation."

Second, subject to approval by CIETAC, the parties – not the state – are permitted to choose their own arbitrator or arbitrators. *In re Guo*, 965 F. 3d 96 (2d Cir. 2020). CIETAC maintains a list of over 1,400 approved arbitrators, but the parties are not limited to choosing from the list and, in any event, the list includes over 400 arbitrators from outside of China. Third, the arbitrator's decision "is final and binding upon both parties." CIETAC Rules arts. 49-50. Fourth, CIETAC emphasized its "[i]ndependence and impartiality," noting that it is "independent of the administrative organs [of the Chinese government], and free from any administrative interference in handling cases.

Accordingly, Peace Bird's argument that Xiamen ITG is a state-owned entity and may have had undue influence on the arbitrators' decisions is meritless, as no evidentiary proffer has been submitted in support of the argument, much less particularized allegations.

**(6)   Courts Have a Long-Standing History of Confirming CIETAC Arbitration Awards.**

Peace Bird cites decades-old articles recommending that CIETAC change its procedure and that CIETAC arbitration should be avoided. However, contrary to these articles, China and the United States signed a treaty to honor foreign arbitral awards and CIETAC arbitration awards are routinely enforced in the United States. Companies that conduct business in China are familiar with CIETAC and many contracts are subject to CIETAC arbitration.

Respondent argues that under the Uniform Foreign Country Money Judgments Act, the court must deny recognition and enforce a foreign judgment if it is the product of a judicial system that does not have impartial tribunals or procedures compatible with due process. Peace Bird cites case law from 1995 where the Ninth Circuit denied recognition of judgments entered in an Iranian court because, based on the record, trials in Iran were non-public, highly political,

corrupt, and lacking in judicial independence. *Bank Melli Iran v. Pahlavi*, 58 F. 3d 1406 (9th Cir. 1995). In Iran at this time, there was reorganization of the court system, and the established, existing structures of revolutionary courts, penal courts, and other court were dissolved while a new General Court was established. The General Court permitted judges to act as both the investigator and judge. Such a combination contravened international fair-trial standards. CIETAC does not contravene international fair-trial standards and a comparison between the two is inappropriate.

The UFMJRA also allows U.S. courts to deny enforcement where the cause of action on which a judgment is based is repugnant to the public policy of the enforcing state. The court must vacate an arbitration under Section 10 "where there was evident partiality… in the arbitrator." *Morelite Const. Corp. v. New York City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 82 (2d Cir. 1984); see 9 U.S.C. § 10(a)(2). "[E]vident partiality within the meaning of 9 U.S.C. §10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Id.* at 84. The party challenging the award must prove the existence of evident partiality by clear and convincing evidence. *See Nat'l Football League Mgm't Council v. Nat'l Football League Players Ass'n*, 820 F. 3d 527, 548 (2d Cir. 2016); accord *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). (The party challenging an award on the basis of evidence partiality "must clear a high hurdle.")

The Supreme Court established in *Commonwealth Coatings Corp. v. Continental Cas. Co*., 393 U.S. 145 (1968), that "an arbitrator's failure to disclose a material relationship with one of the parties can constitute 'evident partially' requiring vacatur of the award." *Lucent Techs. Inc. v. Tatung Co.*, 379 F. 3d 24, 28 (2d Cir. 2004) (citing *Commonwealth Coatings Corp.*). A neutral arbitrator's relationship with a party is material if it goes "so far as to include the rendering of services of the very projects involved in th[e] lawsuit," *Commonwealth Coatings*,

18

393 U.S. at 146, or contemporaneous investments that create a vested financial stake. See

*Applied Indus. Materials Corp. v Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F3d 132 at 137-39

(2d Cir 2007).

As stated previously, CIETAC maintains a list of over 1,400 approved arbitrators, but the

parties are not limited to choosing from the list and, in any event, the list includes over 400

arbitrators from outside of China. Peace Bird, as per the arbitration clause and the CIETAC rules,

had the opportunity to select an arbitrator from this list. Its assertion is that all 1,400 of these

arbitrators would have been partial to Xiamen ITG – even though 400 of them are from outside

of China – is, mathematically, irrational. A reasonable person could not conclude that all 1,400

of these arbitrators would be partial to Xiamen ITG. Therefore, Peace Bird has failed to meet the

high standard required for evident partiality.

**(7)  The agreed-upon arbitration clause is valid and enforceable.**

All recitations of facts behind the underlying dispute are irrelevant in light of a binding

and final arbitration award. Peace Bird is a sophisticated business party that has imported

millions of dollars' worth of goods into the United States, and cannot now feign ignorance to

avoid liability. Alternatively, Peace Bird failed to raise any objection to the arbitrability of this

issue during the CIETAC arbitration.

Peace Bird has waived this argument by participating in the arbitration. If it believed the

arbitration was permissive rather than mandatory, it should have brought the objection to the

attention of the arbitrators. While an arbitration respondent many commence a court action to

argue that the dispute is not covered by the arbitration agreement (see Martin Domke, Domke on

Commercial Arbitration § 22.1 (Larry E. Edmonson ed., 3d ed. 2015), this argument is

completely meritless here, because Peace Bird has agreed to arbitrate, both by participating in the arbitration and by having contracted to arbitrate.

**(8)  Xiamen ITG's motion to confirm the award is procedurally proper and sufficient.**

Contrary to Peace Bird's assertions, the documents submitted by Xiamen ITG are not defective. Under Article IV of the New York Convention, the party seeking enforcement "need only submit an authentic copy of the award, the agreement to arbitrate and, if the award is in a language other than English, a duly certified translation. *Jiangsu Changlong Chems., Co. v Burlington Bio-Medical & Scientific Corp.*, 399 F Supp 2d 165 (EDNY 2005). In *Jiangsu Changlong,* this court recognized these requirements and accepted agreements to arbitrate as set forth in the relevant contracts, an authentic copy of an arbitration award from CIETAC, and an English translation of the arbitration award from CIETAC. *Id.* Upon submission of these documents, the burden is on the opponent to show that one of the of the enumerated circumstances, which warrant denial of enforcement, is present. *Id.*

In *Bergesen v. Joseph Muller Corp.*, the Second Circuit held that copies of an award and agreement certified by the arbitrator "provide sufficient basis upon which to enforce [the] award under the [New York] Convention." *Bergesen v Joseph Muller Corp.*, 710 F2d 928, 934 (2d Cir 1983). Even though copies are not required to be certified under *Bergesen,* the first page of the award submitted to the court herein contains a general authentication certificate from the United States Department of State bearing the signature of Mark Ananka, Vice Consul. Exhibit 1, Page 1.

Peace Bird's argument that the award must be signed by both an individual authorized under a foreign country's law and a United States consul general, vice consul, or consular agent fails to recognize that the first page of the award contains a certification by a vice consul of the

United States, and the original arbitration award, in Chinese, contains the signatures of all three arbitrators. See Exhibit 7 Page 38. Therefore, Peace Bird's claim that the documents were procedurally deficient is plainly unfounded.

IV.     **Petitioner's Motion to Confirm the Award should be Granted under the Federal Arbitration Act and the New York Convention**

We do not discuss the underlying factual disputes between the parties here. The substance of the case, including any commentary on Chinese law and application of Chinese law, liability and testimony, facts, commercial disputes, are irrelevant and outside the scope of the issue here in discussion as they have all been sorted out in the agreed-upon arbitration. In confirmation of a foreign arbitration award, the court only looks at the procedural issue and the substance of the case are irrelevant. Peace Bird can oppose confirmation of the award based on the enumerated grounds. It has failed to satisfy its heavy burden.

**Conclusion**

For the forgoing reasons, petitioner Xiamen ITG Group Corp. Ltd. respectfully requests the court to:

1) Deny the respondent Peace Bird Trading Corp.'s motion to oppose and dismiss petitioner's motion to confirm foreign arbitration award;

2) Grant the petitioner Xiamen ITG Group Corp. Ltd.'s motion to confirm foreign arbitration award; and

3) The arbitral award should be confirmed; and

4) Grant such other and further relief as this court may deem proper.

Dated:  July 30, 2021                        Respectfully submitted,
        New York, New York

                                             MAZZOLA LINDSTROM, LLP

                                             */s/ Jean-Claude Mazzola*
                                             Jean-Claude Mazzola
                                             1350 Avenue of the Americas, 2FL
                                             New York, New York 10019
                                             (646) 216-8300
                                             jeanclaude@mazzolalindstrom.com

                                             Ruofei Xiang
                                             1350 Avenue of the Americas, 2FL
                                             New York, New York 10019
                                             (646) 663-1860
                                             ruofei@mazzolalindstrom.com
                                             *Attorneys for Petitioner*

## ATTORNEY CERTIFICATION

I, Jean-Claude Mazzola, an attorney duly admitted to practice law before the courts of the Eastern District of New York, hereby certify that this Memorandum of Law complies with the word count limit because it contains 7,516 words, excluding the parts of the memorandum exempted. In preparing this certification, I have relied on the word count of the word processing system used to prepare this memorandum of law.

*/s/ Jean-Claude Mazzola*
Jean-Claude Mazzola
1350 Avenue of the Americas, 2FL
New York, New York 10019
(646) 216-8300
jeanclaude@mazzolalindstrom.com