UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

XIAMEN ITG GROUP CORP. LTD.,                     :
                                                 :
                             Petitioner,         :
      -vs.-                                      :  Civil Action No. 1:21-cv-00535
                                                 :
PEACE BIRD TRADING CORP.,                        :
                                                 :
                             Respondent.         :
------------------------------------------------------------------ x


**Attorney Affirmation of Jean-Claude Mazzola**

1.  I am duly admitted to practice before this court.

2.  I am an attorney with the law firm Mazzola Lindstrom LLP, counsel for Xiamen ITG
Group Corp., Ltd., and make this affirmation in opposition to respondent Peace Bird Trading
Corp.'s motion, which seeks dismissal pursuant to Fed. R. Civ. Pro. 12(b)(3), 12(b)(6), 12(b)(7)
and Rule 8(a), or, in the alternative, an order staying the case pending the resolution of *Xiamen
ITG Group Corp. Ltd. v. Peace Bird Trading Corp., et al*. Civil Action No. 19-CV-6524. Peace
Bird also seeks an order consolidating this matter with *Xiamen ITG Group Corp. Ltd. v. Peace
Bird Trading Corp., et al.* Civil Action No. 19-CV-6524 pursuant to Fed. R. Civ. Pro. 42(a).

3.  Having reviewed the discovery documents and file materials maintained for the
representation of petitioner Xiamen ITG, I am familiar with the facts stated herein.

4.  On November 22, 2018, Xiamen ITG submitted an application for arbitration to CIETAC
– the China International Economic and Trade Arbitration Commission – for money owed with
respect to eight sales contracts between petitioner and respondent.

5.   On March 10, 2020, CIETAC issued a final arbitration award in favor of Xiamen ITG. A true and accurate copy of the English translation of the final award is annexed hereto as Exhibit 1.

6.   On November 19, 2019, Xiamen ITG filed a complaint in the United States District Court of the Eastern District of New York for money owed with respect to twenty sales contracts – none of which contained arbitration provisions – of shipments of goods between Xiamen ITG and Peace Bird. A true and accurate copy of the complaint in the 2019 action is annexed hereto as Exhibit 2.

7.   Peace Bird asserts that the contracts containing arbitration clauses are relevant to the 2019 action. Xiamen ITG, in the 2019 action and this case, has and continues to assert that the 2019 action does not concern contracts containing arbitration clauses. A true and accurate copy of relevant discovery responses numbers 7, 9, 10, and 18 in the 2019 action are annexed hereto as Exhibit 3.

8.   In Xiamen ITG's response to Interrogatory No. 23 in the 2019 action, it unequivocally asserts that the 2019 action does not involve sales contracts containing arbitration clauses. A true and accurate copy of the relevant response to Interrogatory No. 23 is annexed hereto as Exhibit 4.

9.   There are eight sales contracts between Xiamen ITG and Peace Bird that were the subject to CIETAC arbitration. True and accurate copies of the sales contracts NLF20170218 executed on February 10, 2017, NLF2017022-1 executed on February 10, 2017, NLF20170220-2 executed on February 10, 2017, NLF20170514 executed on May 10, 2017, NLF20170517 executed on May 10, 2017, NLF20170520 executed on May 10, 2017, NLF20170706 executed on May 10, 2017, NLF20170620 executed on May 10, 2017, and NLF20170620 executed on June 25, 2017 are annexed hereto as Exhibit 5.

2

10. During CIETAC arbitration, Xiamen ITG and Peace Bird were subject to the CIETAC arbitration rules, specifically Article 27. A true and accurate copy of Article 27 of the CIETAC arbitration rules is annexed hereto as Exhibit 6.

11. On March 10, 2020, CIETAC issued a final award in favor of Xiamen ITG. A true and accurate copy of the original final arbitration award from CIETAC in Chinese is annexed hereto as Exhibit 7.

12. Based upon the above, it is respectfully requested that this court deny Peace Bird's motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(3), 12(b)(6), 12(b)(7) and Rule 8(a); deny Peace Bird's motion to stay the case pending the resolution of *Xiamen ITG Group Corp. Ltd. v. Peace Bird Trading Corp., et al.* Civil Action No. 19-CV-6524; and deny Peace Bird's motion to consolidate this matter with *Xiamen ITG Group Corp. Ltd. v. Peace Bird Trading Corp., et al.* Civil Action No. 19-CV-6524 pursuant to Fed. R. Civ. Pro. 42(a).

13. Rather, it is respectfully submitted that Peace Bird's motion to confirm the CIETAC arbitration must be confirmed.

I affirm under penalty of perjury that the foregoing is true and correct.

Dated:     July 30, 2021
           New York, New York

_____
Jean-Claude Mazzola

MAZZOLA LINDSTROM LLP
1350 Avenue of the Americas, 2nd Fl
New York, New York

# Exhibit 1



U. S. Department of State

# GENERAL AUTHENTICATION CERTIFICATE

**VENUE**

People's Republic of China
_____
Country

Guangdong Province
_____
State, Province, etc.

Guangzhou
_____
City

Consulate General of the
United States of America
_____
Name of Consular Post

I certify that the official named below, whose true signature and official seal are, respectively, subscribed and affixed to the annexed document, was, on this day, empowered to act in the official capacity designated in the annexed document, to which faith and credit are due.

Chen Hong
_____
Typed Name of Affiant

_____
Signature of Consular Officer

Mark Ananka
_____
Typed Name of Consular Officer

Vice Consul
_____
Title of Consular Officer

0 6 JUL 2020
_____
Date *(mm-dd-yyyy)*



(SEAL)

DS-1982
05-2017

# Arbitral Award

Arbitral Award



China International Economic and Trade Arbitration Commission

# China International Economic and Trade Arbitration Commission

# Arbitral Award

Applicant: Xiamen ITG Group Corp., Ltd.

Address: 18/F, Guomao Building, Hubin South Road, Siming District, Xiamen City, Fujian Province, P.R. China

Arbitration Agent: Liu Xin and Jiang Chunjing on Behalf of Xiamen ITG Group Corp., Ltd.


Respondent: PEACE BIRD TRADING CORP

Address: 1441 67TH ST APT 1B BROOKLYN,

　　　　NY11219 UNITED STATES OF AMERICA

Arbitration Agent: Wu Wenyi


Beijing

March 10, 2020

# Arbitral Award

[2020] Z.G.M.Z.J.C.Z. No. 0317

China International Economic and Trade Arbitration Commission (hereinafter referred to as the "Arbitration Commission") accepted the Case according to "PEACE BIRD TRADING CORP CONTRACT" numbered NLF20170218, "PEACE BIRD TRADING CORP CONTRACT" numbered NLF20170220-1, and "PEACE BIRD TRADING CORP CONTRACT" numbered NLF20170220-2 executed on February 10, 2017, "PEACE BIRD TRADING CORP CONTRACT" numbered NLF20170514, "PEACE BIRD TRADING CORP CONTRACT" numbered NLF20170517, "PEACE BIRD TRADING CORP CONTRACT" numbered NLF20170520 and "PEACE BIRD TRADING CORP CONTRACT" numbered NLF20170706 executed on May 10, 2017, "PEACE BIRD TRADINGCORP CONTRACT" numbered NLF20170620 executed on June 25, 2017, by and between Xiamen ITG Group Corp., Ltd. (hereinafter referred to as the "Applicant"), and PEACE BIRD TRADING CORP (hereinafter referred to as the "Respondent"), as well as the written arbitration application submitted by the Applicant to the Arbitration Commission on November 22, 2018. The number of the Case is G20181782.

The arbitration procedure in the Case shall be governed by *the Arbitration Rules of China International Economic and Trade Arbitration Commission* (hereinafter referred to as the "*Arbitration rules*") that took into effect on January 1, 2015.

On January 2, 2019, the Arbitration Court of the Arbitration Commission (hereinafter referred to as the "Arbitration Court") sent the Notice of Arbitration, *the Arbitration Rules* and *the List of Arbitrators* to both Parties hereof by express mail according to the address provided by the Applicant in the arbitration application. In the meanwhile, it sent the arbitration application submitted by the Applicant and the attached supporting evidence to the Respondent.

The Applicant chose Mr. Tang, Gongyuan as the arbitrator for the Case. Since the Respondent failed to select or entrust the chairman of the Arbitration Commission to appoint an arbitrator within the prescribed time limit, the chairman of the Arbitration Commission appointed Ms. Liu, Jing as the arbitrator for the Case according to *the Arbitration Rules*. Since both Parties hereof failed to jointly select or jointly entrust the Chairman of the Arbitration Commission to appoint the presiding arbitrator within the prescribed time limit, the Chairman of the Arbitration Commission appointed Ms. Zhou, Xiaoyan as the presiding arbitrator of the Case according to *the Arbitration Rules*. After the signing of the Declaration for the Agreed Appointment, the aforesaid three arbitrators formed an Arbitration Tribunal on April 16, 2019 to jointly hear the Case.

The Arbitration Tribunal, in consultation with the Arbitration Court, decided to hold a hearing in Beijing on May 29, 2019. On April 16, 2019, the Arbitration Court sent the Notice of Formation of the Arbitral Tribunal for the Case and the attached *Declaration* for the Agreed Appointment executed by the arbitrators of the Case and the Notice of Court Session to both Parties hereof by express mail.

On May 29, 2019, the Arbitration Tribunal held a hearing on the Case in Beijing as scheduled. Both Parties hereof entrusted agents to attend the hearing. Before the hearing, the Applicant submitted to the Arbitration Tribunal the "List of Evidence" and the attached supporting evidence dated May 1, 2019. The Respondent submitted the form prepared unilaterally. The Arbitration Court transferred the aforesaid documents of both Parties hereof to each other in court. During the hearing, the

1

Applicant stated the arbitration claim and the facts and reasons on which it was based. The Respondent replied to the claim. The Applicant presented the relevant original evidence and the Respondent questioned the evidence. Both Parties hereof debated the facts and legal issues and answered the questions raised by the Arbitration Tribunal.

On July 1, 2019, the Applicant submitted the "Explanatory Letter", "Statement of Attorney", a "List of Evidence" dated June 18, 2019 and the attached supporting evidence. Subsequently, the Arbitration Court forwarded the aforesaid materials submitted by the Applicant to the Respondent.

On February 19, 2020, the Applicant submitted an "Explanatory Letter for Amending the Arbitration Claim" and its annexes. On February 25, 2020, the Arbitration Court forwarded above-mentioned materials to the Respondent and informed both Parties hereof that the Arbitration Tribunal had decided to accept the arbitration claim amended in the Applicant's above-mentioned "Explanatory Letter for Amending the Arbitration Claim" and requested the Respondent to reply within the prescribed time limit. Within the aforesaid the prescribed time limit, the Respondent failed to submit a written reply.

Based on the needs of the arbitration procedure in the Case, upon the application by the Arbitration Tribunal, the president of the Arbitration Court agreed and decided to extend the deadline for making the award on the Case to March 17, 2020.

All written notices and documents concerning the Case have been effectively served by the Arbitration Court on both Parties hereof in accordance with the Arbitration Rules.

The Case has now been concluded. The Arbitration Tribunal has made this award through the joint deliberation based on the existing written documents submitted by both Parties hereof and the facts found during the hearing.

The Case, the opinions of the Arbitration Tribunal and the results of award are concluded as follows:

## I. Basic Information of the Case

(I)  The Applicant's arbitration claim and the facts and reasons on which it was based.

On February 10, 2017, the Applicant and the Respondent executed three copies of PEACE BIRD TRADING CORP ONTRACT numbered NFL20170218 and NFL20170220 (in total, two copies are distinguished by NFL20170220-1 and NFL20170220-2), four copies of PEACE BIRD TRADING CORP ONTRACT numbered NFL20170514, NFL20170517, NFL20170520 and NFL20170706 on May 10, 2017, and one copy of PEACE BIRD TRADING CORP ONTRACT numbered NFL20170620 on June 25, 2017 (eight copies in total). As provided for under the Contract, the Respondent shall purchase fabric from the Applicant, and the Applicant shall deliver the goods under the aforesaid Contract in dispute to the Respondent as scheduled in accordance with the Contract, but the Respondent refused to pay. The specific terms and performance of each contract are concluded as follows:

1.  Terms and Performance of the Contract Numbered NFL20170218

In accordance with the Contract, the total quantity of fabric purchased by the Respondent from the Applicant is 72,000KGS, with a total amount of USD 316,800. The place of delivery is CIF MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped).

2

After the signing of the Contract, the Applicant consigned the goods under the Contract to the shipping company CCNI for transportation. On May 31, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading would be made 180 days after the goods are shipped. On May 17, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to the Applicant showing that the goods had been loaded on board. On June 9, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on June 18, 2017, and the Respondent picked up the goods by the Telex Release Bill of Lading.

In accordance with the Contract, the Respondent shall pay off above-mentioned amount under the Contract prior to November 24, 2017. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The total principal amount of the loan under the aforesaid contract is USD 96,653.48.

2.  Terms and Performance of the Contract Numbered NFL20170220-1

In accordance with the Contract, the total quantity of fabric purchased by the Respondent from the Applicant is 96,000KGS, with a total amount of USD 432,000. The place of delivery is CIF MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped).

After the signing of the Contract, the Applicant consigned the goods under the Contract to the shipping company CCNI for transportation. On May 31, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading would be made 180 days after the goods are shipped. On May 17, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to the Applicant showing that the goods had been loaded on board. On June 9, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on June 18, 2017, and the Respondent picked up the goods by the Telex Release Bill of Lading.

In accordance with the Contract, the Respondent shall pay off above-mentioned amount under the Contract prior to November 24, 2017. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The total principal amount of the loan under the aforesaid contract is USD 96,980.4.

3.  Terms and Performance of the Contract Numbered NFL20170220-2

In accordance with the Contract, the total quantity of fabric purchased by the Respondent from the Applicant is 72,000KGS, with a total amount of USD 452,880. The place and time of delivery shall be LDP MEXICO (Landed-Duty Paid) and the payment method shall be OA 180days (payment within 180 days after the goods are shipped).

After the signing of the Contract, the Applicant consigned the goods under the Contract to the shipping company HAPAG-LLOYD/BVL in two batches. On July 4, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading numbered HLCB0N23769, and then issued a Letter of Payment Guarantee to the Applicant to safeguard that the payment under the Telex Release

3

Bill of Lading would be made 180 days after the goods are shipped. On July 5, 2017, the shipping company HAPAG-LLOYD issued a Bill of Lading to the Applicant showing that the goods had been loaded on board. On July 21, 2017, the Applicant sent a scanned Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 29, 2017, and the Respondent picked up the goods with the scanned Bill of Lading.

On July 10, 2017, the Respondent issued a Letter of Payment Guarantee to the Applicant, guaranteeing payment for the goods under Bill of Lading No. ZYA7NGB020295 will be made within 180 days after the goods are shipped. On July 10, 2017, the shipping company BVL issued the original Bill of Lading to the Applicant showing that the goods had been loaded on board. On July 24, 2017, the Applicant sent the original Bill of Lading to the address designated by the Respondent via DHL express (express number 763 4841 502). The goods arrived at the destination port on July 31, 2017, and the Respondent picked up the goods by the Bill of Lading.

In accordance with the Contract, the Respondent shall pay off above-mentioned amount under the Contract prior to January 6, 2018. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The total principal amount of the loan under the aforesaid contract is USD 286,293.12.

4. Terms and Performance of the Contract Numbered NFL20170514

In accordance with the Contract, the Respondent purchases a total of 22,000KGS, with a total amount of USD 145,640. The place of delivery is LDP MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped)

After the signing of the Contract, the Applicant consigned the goods under the Contract to the shipping company HAPAG-LLOYD for transportation. On July 4, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading will be made within 180 days after the goods are shipped. On June 26, 2017, the shipping company HAPAG-LLOYD issued the original Bill of Lading to the Applicant, showing that the goods had been loaded on board. On July 21, 2017, the Applicant sent a scanned Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 29, 2017, and the Respondent picked up the goods with the scanned Bill of Lading.

In accordance with the Contract, the Respondent shall pay off above-mentioned amount under the Contract prior to January 1, 20118. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The principal amount of the loan under the aforesaid contract is USD 147,541.93.

5. Terms and Performance of the Contract Numbered NFL20170517

In accordance with the Contract, the total quantity of fabric purchased by the Respondent from the Applicant is 132,251KGS, with a total amount of USD 875,498.8. The place of delivery is LDP MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped)

After the signing of the Contract, the Applicant consigned the goods under the Contract to the shipping company HAPAG-LLOYD for transportation. On July 4, 2017, the Respondent applied to

4

the Applicant for the Telex Release Bill of Lading, and then issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading will be made within 180 days after the goods are shipped. On July 4, 2017, the shipping company HAPAG-LLOYD issued the original Bill of Lading to the Applicant, showing that the goods had been loaded on board. On July 21, 2017, the Applicant sent a scanned Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 29, 2017, and the Respondent picked up the goods with the scanned Bill of Lading.

In accordance with the Contract, the Respondent shall pay off above-mentioned amount under the Contract prior to January 1, 2018. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The principal amount of the loan under the aforesaid contract is USD 149,831.78.

6. Terms and Performance of the Contract Numbered NFL20170520

In accordance with the Contract, the Respondent purchased 24,000KGS, with a total amount of USD 150,960. The delivery place is LDP MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped)

On July 10, 2017, the Respondent issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Bill of Lading numbered ZYA7NGB020293 will be made within 180 days after the goods are shipped. On July 10, 2017, the shipping company BVL issued the original Bill of Lading to the Applicant showing that the goods had been loaded on board. On July 24, 2017, the Applicant sent the original Bill of Lading to the address designated by the Respondent via DHL express (express number 763 4841 502). The goods arrived at the destination port on July 31, 2017, and the Respondent picked up the goods by the Bill of Lading.

In accordance with the Contract, the Respondent shall pay off above-mentioned amount under the Contract prior to January 6, 2018. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The principal amount of the loan under the aforesaid contract is USD 144,412.74.

7. Terms and Performance of the Contract Numbered NFL20170706

In accordance with the Contract, the Respondent purchased 24,000KGS, with a total amount of USD 150,960. The delivery place is LDP MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped)

On July 10, 2017, the Respondent issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Bill of Lading numbered ZYA7NGB021470 will be made within 180 days after the goods are shipped. On July 17, 2017, the shipping company BVL issued the original Bill of Lading to the Applicant showing that the goods had been loaded on board. On July 24, 2017, the Applicant sent the original Bill of Lading to the address designated by the Respondent via DHL express (express number 763 4841 502). The goods arrived at the destination port on August 7, 2017, and the Respondent picked up the goods by the Bill of Lading.

In accordance with the Contract, the Respondent shall pay off above-mentioned amount under the Contract prior to January 6, 2018. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The principal amount of the loan under the aforesaid contract is USD 141,095.39.

5

8.  Terms and Performance of the Contract Numbered NFL20170620

In accordance with the Contract, the Respondent purchased a total of 19,536KGS, with a total amount of USD 150,426.9. The delivery place is LDP MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped)

On August 4, 2017, the Respondent issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Bill of Lading numbered C232013347 will be made within 180 days after the goods are shipped. On July 31, 2017, the shipping company YANG MING issued the original Bill of Lading to the Applicant showing that the goods had been loaded on board. On August 4, 2017, the Applicant sent the original Bill of Lading to the address designated by the Respondent via DHL express (express number 506 2759 995). The goods arrived at the destination port on August 21, 2017, and the Respondent picked up the goods by the Bill of Lading.

In accordance with the Contract, the Respondent shall pay off above-mentioned amount under the Contract prior to January 27, 2018. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The principal amount of the loan under the aforesaid contract is USD 122,945.13.

Under above-mentioned eight Contracts, the principal of the Loan amounts to USD 1,185,753.97.

The Applicant Submitted the Following Arbitration Claim:

1.  The Respondent shall immediately pay the Applicant the payment for the goods of USD 1,185,753.97 and the interests arising therefrom of USD 51,563.04 (calculated from the date of payment, provisionally till November 6, 2018, at 5.05% of the Bank's loan interest rate for the same period);

The aforesaid amount is provisionally USD 1,237,317.01

2.  The Respondent shall reimburse the travel expenses incurred by the Applicant for the Case;

3.  The arbitration and preservation fees for the Case shall be assumed by the Respondent.

Subsequently, the Applicant submitted an Explanatory Letter for Amending the Arbitration Claim to amend the first arbitration claim mentioned above to:

1. The Respondent shall immediately pay the Applicant the payment for the goods of USD 1,185,753.97 and interests arising therefrom of USD 48,499.89 (calculated from the date of payment, provisionally until November 6, 2018, at the interest rate of 4.75% per year for medium and long-term loans [one to five years] of the People's Bank of China, and accrued until the actual payment date by the Respondent)

(II) Oral Defense by the Respondent at the Hearing

The Respondent failed to submit any written documents before the hearing. The oral defense during the hearing is concluded as follows:

The Respondent submitted to the court the form unilaterally prepared, sorted out a total of more than 30 containers, and then made LDP, under which the container number of each container was indicated with the purchase amount of LDP purchased by one company, and stated the customs clearance fee paid by the Applicant. The Respondent pointed out that in accordance with the Agreement, the Applicant shall send the containers from China and remit the customs fees due from

6

Mexico to the Respondent in time. The Customs Declaration Form shall be submitted to the customs in time so that the Respondent's goods will not be delayed and the goods will be cleared and picked up in time. Above-mentioned form submitted by the Respondent has listed each container in great detail, including all containers of LDP and all transactions. ETD is the expected time for the container to arrive at the Mexican Port. ETD is the expected time of departure from Xiamen or Ningbo. ETA is the expected time to arrive at Mexico.

According to the international practice, LDP means that the Applicant pays the customs duty and then the goods are delivered to the Respondent. From this commercial concept, it is impossible to pick up the goods without paying the customs duty. If the goods are not picked up, the Respondent will not approve the transaction, since the Respondent pays the price after customs duties are included.

The dispute lies in fact that almost every container in the aforesaid 30-odd containers has been delayed for several tens of days when the Respondent receives the payment for goods and customs duties. Therefore, according to the date of the Applicant's customs clearance fee, there is a total delay of 1566 days for more than 30 containers. These evidences may be submitted by the Respondent after court.

Generally speaking, goods need to be cleared one week in advance during the process of international trade so that the customs will have sufficient time to review the information. Therefore, the delayed purchase of containers will lead to a necessity for the Respondent to pay the demurrage fee to the local port, and the container needs to be rented for loading, so it also needs to pay relevant fee to the shipping company.

From Xiamen/Ningbo to Mexico, if a container is detained by the customs for one month, the Respondent must pay an extra month's rent, i.e. the empty container fee. The empty container fee is USD 275 per day, the demurrage fee is USD 275, and the Respondent has to pay USD 550 per day for the delay. As a business partner, the Respondent has not claimed the delay fee from the Applicant, but it is assumed by the Respondent independently, thus paying a large fee to the Applicant. Therefore, the Applicant needs to pay 1,566 * USD 550 to the customs for the delay in customs. Therefore, the Applicant needs to pay the import duty of the goods, the delay in port charges caused by the customs clearance fees, paying the import duty of the goods, the delay in port charges caused by the customs clearance fees, and the empty box charges.

In international trade, if the goods are delayed for one week, few customers will accept the goods, since the claim cost of the goods is very huge, including the demurrage fee, empty container fee, rent and customs fines. If the delay exceeds 60 days, the customs will confiscate the goods.

In the past, every container of the Respondent was profitable and delivered to the customer on schedule. These bank records are kept by both the Applicant and the Respondent. In particular, textiles have strong seasonal characteristics. The thickness and color are very seasonal. After a certain season, they will be no longer popular and thus become stock. The clients of the Respondent are all large-scale local-scale dyeing factories in Mexico, purchasing the fabric dyed by the Respondent, as well as large-scale garment factories in Mexico who buy fabrics from the Respondent and process them into garments for sale to Wal-Mart and other large-scale retail chains. If the Respondent's fabric is delayed for more than a month, the clothing factory will not be able to deliver the finished product to Wal-Mart, and Wal-Mart will claim for an indemnity from the clothing factory if it cannot complete the scheduled plan. After that, the clothing factory will also refuse to accept the delayed goods of the Respondent and claim for an indemnity from the

7

Respondent. Finally, once the fabric is out of date, even if it is sold at a discount, it is very difficult to sell it again.

To sum up, the Applicant's delay in paying import duties and customs clearance fees has caused the Respondent to incur such losses as the demurrage fees, container rents and empty container fees at the local port, and therefore the Respondent has the right to refuse to pay for the goods.

(III) Applicant's Statement of Attorney

First of all, the Applicant stated to the Arbitration Tribunal that in consideration of the actual situation of the hearing, both the Applicant and the Respondent in the Case recognize that the Respondent, CRYSTAL VOGUE INC. and XING LIN (USA) INTERNATIONAL CORP. are all enterprises controlled by the same actual controller. The expression of will (e.g. payment instruction, payment commitment, etc.) made by any one of the aforesaid three enterprises may be deemed as the expression of will of the other two, and shall not only be limited deemed as the expression of will of the enterprise actually made.

1.  The Applicant has fulfilled the obligation to deliver all the goods under the Contract in dispute as agreed, and the Respondent shall pay for the goods.

In the five contracts involved in the Case, the Respondent has issued an unconditional Letter of Payment Guarantee. According to the terms of the guarantee, the Respondent shall make unconditional payment within 180 days after the goods are shipped. The Applicant has delivered the certificate of shipment of the goods (i.e. bill of Lading), and the Respondent also acknowledges in the court that it has received all the goods under the Contract in dispute. Therefore, regardless of any risks such as loss of goods or import customs clearance, the Respondent shall undertake the obligation of unconditional payment subject to the commitments made under the Letter of Payment Guarantee.

2.  The Respondents defense of refusing to pay for the goods on the ground that the Applicant delayed payment of the import duty of the subject goods (hereinafter referred to as the payment) caused losses to the Respondent (hereinafter referred to as the "loss") cannot be established.

(1) Under the CIF Contract in dispute, the Applicant will not assume the obligation of import clearance and will not assume the losses arising therefrom.

According to *Incoterms 2010*, under CIF terms, it will be deemed a delivery of goods by the Seller if the goods are shipped on board. When the goods are shipped on board, the risk of loss of or damage to the goods will be transferred together. After the goods are transported to the destination, the Buyer shall assume all risks and expenses, and the Seller shall not be required to pay the import payment or undertake the obligation of import customs clearance. Specifically, in the Case, the Applicant, as the Seller of the Contract in dispute, does not undertake the obligation of import customs clearance and does not need to go through any import customs formalities, so there is no problem of the loss of the Respondent caused by the delay in the payment by the Applicant.

(2) Under the LDP Contract in dispute, the Respondent is the customs clearance obligor of the underlying goods, and shall assume the customs clearance responsibility on its own. The Applicant has no delay in payment, and the Respondent has no right to claim damages from the Applicant.

①The Respondent is the customs clearance obligor of the underlying goods. The Applicant does not bear the import customs clearance responsibility, and the Respondent shall assume the customs

8

clearance responsibility by itself.

In accordance with the *Letter of Undertaking* issued by the Respondent to the Applicant on June 1, 2017, it is explicitly stated that "we will have full control over all customs clearance procedures for containers from the destination port to our warehouse, and the risks of all these procedures shall be assumed by us". The Letter of Undertaking has made it very clear that the Respondent is the responsible person for the customs clearance of the underlying goods, and the Applicant has no obligation of customs clearance.

The Respondent, at the place of receipt and customs clearance, shall undoubtedly be familiar with the local customs clearance policy. As the responsible person for the customs clearance, it shall handle the customs clearance of the goods at the first time and pay the money to enable the normal import of goods. However, the Respondent has not properly and timely performed the obligation of customs clearance. All risks and losses arising from the customs clearance (including but not limited to the delay in the customs clearance) shall be assumed by the Respondent.

② There is No Delay in Payment by the Applicant

a. There is no agreement on the time of payment in the Contract in dispute. If the Respondent requires the Applicant to pay the money, it shall notify the Applicant in advance and leave the Applicant the necessary preparation time.

In accordance with the *Explanatory Letter* provided by the Applicant to the Arbitration Tribunal, the Applicant believed that the Chinese law shall apply to the Case. Pursuant to the provisions set forth in *the Contract Law of the People's Republic of China*, if the time limit for the performance of contractual obligations is unclear, the debtor may perform all the times and the creditor may demand performance all the times, but the other Party hereof shall be given the necessary preparation time. Since the Respondent requires the Applicant to fulfill the payment obligation, it shall inform the Applicant in advance and shall reserve the necessary preparation time for the Applicant. Specifically, in the Case, upon the receipt of the payment instructions from the Respondent, the Applicant will actively arrange the payment and pay the money to the Respondent within a reliable time without any delay in payment.

b. Both Parties Hereof to the Transaction Are Fully Aware of China's Foreign Exchange Control Policies, and the Reliable time for Payment Due to the Foreign Exchange Control Shall Not Be Deemed as a Delay in Payment

It may be seen from the chat records of both Parties hereof to the transaction and the *Letter of Undertaking* that the Respondent was fully aware of China's foreign exchange control policies at the time of signing and performing the Contract, and had pre-judgment on the actual situation that the foreign exchange payment requires a certain reliable payment time. From the chat records of the Parties hereof from May to June 2017 (i.e. when the goods have not yet arrived at the port), it may be found that the Applicant's staff Jiang, Shufang has explicitly indicated to the Respondent's staff Feng Xu that the Applicant cannot directly make the payment abroad. The Respondent's staff has no objection to this. In the meanwhile, it provided various channels and hoped the Applicant can transfer the relevant money to the corresponding domestic account designated by the Respondent to solve this problem. In WeChat and telephone chats of the relevant persons of the Respondent, they have repeatedly pointed out that the remittance risks arising therefrom shall be assumed by them together. Therefore, at the beginning of the transaction, both Parties hereof to the transaction have fully estimated and understood the reliable time for payment, and have made corresponding

9

adjustments to the payment method during the performance of the Contract. It is inappropriate for the Respondent to deem the reliable time for payment caused by foreign exchange control as a delay in payment.

c.  The Applicant has paid the money to the Respondent in full and on schedule within the limits of its ability, without any delay in payment.

Under the circumstance that it is difficult for the money to be remitted directly, the Applicant adheres to the principle of good faith and, in accordance with the instructions of the Respondent, remits the money to a third person designated by the Respondent. The Respondent also admitted in the court that it has received all the money payable by the Applicant in full.

To sum up, neither the law nor the practices stipulate/specify the time for the Seller to make the payment under LDP terms. If the Respondent requires the Applicant to fulfill the payment obligation, it shall notify the Applicant in advance and leave the Applicant the necessary preparation time. In addition, the Parties hereof have been fully aware of China's foreign exchange control policies at the time of signing and performing the Contract, and the Parties hereof have pre-determined in advance the preparation time required for foreign exchange payment. The Respondent shall not regard the reliable time of receipt of funds due to the foreign exchange control as the delay in payment of funds. The Applicant has adhered to the principle of honesty and credit, and has paid the money to the Respondent in full and on schedule within its capabilities, without any delay in payment.

③The Respondent failed to provide the evidence, so the Applicant shall not be held liable for indemnity.

As the Respondent failed to provide the corresponding basic evidence to support the "materials" submitted in Tribunal, the Applicant was unable to question and argue the authenticity and legality of the "materials". From the content shown in the "materials", it was not relating to the losses claimed by the Respondent and could not prove the losses suffered.

If the Respondent believed that the act of the Applicant has caused any losses to it, it shall provide the evidence supporting the losses, but the Respondent has not provided any evidence, so it is impossible to indemnify for the losses arising therefrom. In view of the unclear cause of the claim and the unclear amount of indemnity, the Applicant shall not assume any liability for indemnity against the Respondent.

It is worth mentioning that in August 2017, when the goods payment under LDP has been subject to foreign exchange supervision and it is difficult to pay foreign exchange, the Respondent still issued multiple Payment Guarantees to the Applicant. At that time, the Respondent did not raise any objection to the payment and did not mention the claim against the Applicant. In the WeChat chat between the Applicant's salesman Jiang, Shufang and FENG XU (that is, the actual operator of the Respondent) in September 2017, when the Applicant asked for the relevant payment, the Respondent only repeatedly asked for deferred payment and never claimed for indemnity against the losses arising therefrom. It may be found that the Respondent's defense about the Applicant's delay in payment during the hearing is totally groundless and is only an excuse to evade the payment obligation to the Applicant.

(IV) Explanatory Letter from the Applicant

1. Regarding the Selection of Interest Rate in the First Arbitration Claim

First of all, according to the approval of the Supreme People's Court on the calculation standard of the liquidated damages for overdue payment, if the Parties concerned have no agreement on the liquidated damages for overdue payment, the People's Court may calculate the liquidated damages for overdue payment according to the standard of interest charged on overdue loans by financial agencies stipulated by the People's Bank of China. Due to the great uncertainty of foreign currency loan interest rate and the implementation of foreign exchange control in our country, foreign currencies must be converted into RMB before circulation in China, so the Applicant chose RMB loan interest rate of the Peoples Bank of China as the basis for calculating the interests for the Case, which is not improper. This view has been adopted by relevant courts (please refer to (2011) S.S.W.Z.Z. No. 7)

Since the maturity date of the money involved has been more than one year ago, the Applicant has chosen to calculate the overdue interest of the Case at the current interest rate of medium and long-term loans (one to five years) of the People's Bank of China, i.e. 4.75% per annum. The relevant calculation process is presented in the attached Table.

| Contract No.: | Amount of Goods | Date on Which the Shipping Company Issues the Bill of Lading | Payment time | Provisional Amount | Number of Days | Provisional Interest |
|---|---|---|---|---|---|---|
| NLF20170218 | $96,653.48 | May 28, 2017 | November 24,2017 | November 6, 2018 | 347 | $4,425.25 |
| NLF20170220-1 | $96,980.40 | May 28, 2017 | November 24,2017 | November 6, 2018 | 347 | $4,440.22 |
| NLF20170220-2 | $143,097.50 | July 5, 2017 | January 1,2018 | November 6, 2018 | 309 | $5,834.20 |
| NLF20170514 | $147,541.93 | July 5, 2017 | January 1,2018 | November 6, 2018 | 309 | $6,015.41 |
| NLF20170517 | $149,831.78 | July 4, 2017 | December 31,2017 | November 6, 2018 | 310 | $6,128.54 |
| NLF20170220-2 | $143,195.62 | July 10, 2017 | January 6,2018 | November 6, 2018 | 304 | $5,743.74 |
| NLF20170520 | $144,412.74 | July 10, 2017 | January 6,2018 | November 6, 2018 | 304 | $5,792.56 |
| NLF20170706 | $141,095.39 | July 17, 2017 | January 13,2018 | November 6, 2018 | 297 | $5,529.18 |
| NLF20170620 | $122,945.13 | July 31, 2017 | January 27,2018 | November 6, 2018 | 283 | $4,590.81 |

| | |
|---|---|
| Total Principal | $1,185,753.97 |
| Total Interest (Provisional) | $48,499.89 |
| Total Principal and Interests | $1,234,253.86 |

Interest Calculation Instructions: According to the Letter of Payment Guarantee, the Respondent

commits to pay 180 days after the date of Bill of Lading. Based on this, the due date of payment is calculated at the interest rate of 4.75% per year for medium and long-term loans (one to five years) of the Peoples Bank of China. The calculation formula is as follows: (actual payment date-due date of payment) * 4.75%/360 * Payment amount

2. Regarding the Applicable Law for Contracts in dispute

According to the Article 41 of the Law of the People's Republic of China on Choice of Law for Foreign-related Civil Relationships, if the Parties hereof have no choice in the applicable law for Contract, the law of the permanent residence of the party whose performance of obligations best reflects the characteristics of the Contract or other laws most closely relating to the Contract shall apply.

From the point of view of the performance of the characteristics of the Contract in dispute, the Case is a sale contract dispute, and the performance of the characteristics of the sale contract is the delivery of goods and the collection of payment for goods. The goods in the Case were sent from China, and the payment for goods in accordance with the Contract shall also be collected by the Parties in China. Therefore, there is no doubt that Chinese law shall apply.

From the point of view of the closest connection, the place where the Contract in dispute is most closely connected may be place of performance for the Contract, the place where the Contract is executed, and the residence of the Parties hereof. With reference to the determination of the place of performance for the Contract in the civil procedure law, in case of no agreement on the place of performance or the Agreement is not clear, and the subject under dispute is the payment currency, the place of performance for the Contract shall be place at the location of the party receiving the currency; Where other subject is delivered, the place where the party performing the obligation is located shall be place of performance for the Contract. Thus, the place of performance for the Contract involved shall be in China, and the Applicant is a party in China, so Chinese law shall apply from this power of view.

Finally, the place of arbitration for the Case is in China, and both Parties hereof to the Contract in dispute have not raised any objection to the arbitration language being Chinese. The application of Chinese law is more conducive to the investigation and hearing of the Case.

To sum up, the Applicant claims that Chinese law shall apply to the hearing of the Case.

## II. Opinions of the Arbitration Tribunal

(I) Regarding the Applicable Law for the Contract under the Case

Both Parties hereof have not agreed on the applicable law for the Contract under the Case. In the *Explanatory Letter* submitted by the Applicant, it claimed that the Contract under the Case shall be governed by Chinese law and explained the reasons. The Respondent did not raise any objection to the Applicant's claim.

The Arbitration Tribunal held that judging from the most closely related factors of the Contract, the execution, performance and subjects of the Contract of the Contract under the Case are all closely connected with China. The goods of the eight Contracts under the Case are all shipped and shipped from Chinese ports. The Seller party, i.e. the Applicant, is a Chinese company, and its habitual residence is in China. The Respondent has no objection to the Applicant's claim to apply the Chinese law, so it is appropriate to take Chinese law as the applicable law for the Contract under the Case, so it is appropriate to take Chinese law as the applicable law for the Contract under the

12

Case. In addition, the place of arbitration stipulated in the Contract for the Case is in China, and the application of the law of the place of arbitration, that is, Chinese law, is more convenient to hear and find out the Case. To sum up, the Arbitration Tribunal will take Chinese law as the applicable law to settle the disputes in the Contract under the Case.

At the same time, the Contract under the Case stipulated the delivery terms of CIF or LDP. The Applicant quoted *Incoterms 2010* and the Respondent did not raise any objection to this. Therefore, the Arbitration Tribunal may also apply *Incoterms 2010* to resolve the disputes in the Contract under the Case.

(II) Regarding the Validity of the Contract under the Case

The Arbitration Tribunal held that both the Applicant and the Respondent are legal persons incorporated in accordance with their respective national laws, and both are eligible subjects for executing the Contract. The Agreement reached between the Applicant and the Respondent reflects the true intention of both Parties hereof. The contents of the Contract under the Case did not violate the mandatory provisions of Chinese laws and administrative regulations, and neither Party hereof raised any objection to the validity of the Contract. Therefore, the Contract under the Case is valid and legitimately binding on both Parties hereof. Both the Applicant and the Respondent shall exercise their rights, perform their obligations and assume their responsibilities in accordance with the Contract.

(III) Regarding the Performance of the Contract under the Case

After hearing and examining the evidence, the Arbitration Tribunal confirmed the following facts:

The Applicant and the Respondent executed three PEACE BIRD TRADING CORP CONTRACT contracts on February 10, 2017, numbered NFL20170218 and NFL20170220 (including two with different numbers of NFL20170220-1 and NFL 20170220-2); on May 10, 2017, four PEACE BIRD TRADING CORP CONTRACT were executed, numbered NFL20170514, NFL20170517, NFL20170520, NFL20170706; executed a PEACE BIRD TRADING CORP CONTRACT) on June 25, 2017, numbered NFL20170620, totaling eight contracts. As provided for under above-mentioned contract, the Respondent shall purchase fabric from the Applicant, the Applicant shall deliver the goods in accordance with the Agreement, and the Respondent shall pay the purchase price in accordance with the Agreement. The Arbitration Tribunal found that the actual amount performed for the Contract was not exactly identical with the amount agreed in the Contract, since the Contract agreed on a framework clause, and the actual amount performed was composed of a Bill of Lading and a Letter of Guarantee. The terms and performance of each contract are concluded as follows:

1.  Contract Numbered NFL20170218

In accordance with the Contract, the total quantity of fabric purchased by the Respondent from the Applicant is 72,000KGS, with a total amount of USD 316,800. The place of delivery is CIF MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped).

After the executing of the Contract, the Applicant entrusts the shipping company CCNI to transport the goods hereunder. On May 31, 2017, the Respondent applied to the Applicant for an Telex Release Bill of Lading, and then issued a contract electric Letter of Guarantee and a Letter of Undertaking for the Payment of guarantee to the Applicant to warrant that the payment for goods

13

under the Telex Release Bill of Lading would be paid within 180 days after the goods are shipped. On May 28, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to the Applicant showing that the goods had been loaded on board. On June 9, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on June 18, 2017, and the Respondent extracted the goods by the Telex Release Bill of Lading.

In accordance with the Agreement reached in the Contract and the commitments made in the Letter of Guarantee, the Respondent shall pay off the payment for the goods under the Contract prior to November 28, 2017. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The total amount of payment under the Contract is USD 96,653.48.

2.  Contract Numbered NFL20170220-1

In accordance with the Contract, the total quantity of fabric purchased by the Respondent from the Applicant is a total of 96,000KGS, with a total amount of USD 432,000. The place of delivery is CIF MEXICO and the payment method OA 180days (payment within 180 days after the goods are shipped).

After the executing of the Contract, the Applicant entrusts the shipping company CCNI to transport the goods hereunder. On May 31, 2017, the Respondent applied to the Applicant for the Telex Release Bill of Lading. In the meanwhile, the Respondent issued a release guarantee and a payment commitment guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading will be made within 180 days after the goods are shipped. On May 28, 2017, the shipping company CCNI issued an Telex Release Bill of Lading to the Applicant showing that the goods had been loaded on board. On June 9, 2017, the Applicant sent the Telex Release Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on June 18, 2017, and the Respondent picked up the goods by the Telex Release Bill of Lading.

In accordance with the Agreement reached in the Contract and the commitments made in the Letter of Guarantee, the Respondent shall pay off the payment for the goods under the Contract prior to November 28, 2017. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The total amount of payment under the Contract is USD 96,980.40.

3.  Contract Numbered NFL20170220-2

In accordance with the Contract, the total quantity of fabric purchased by the Respondent from the Applicant is 72,000KGS, with a total amount of USD 452,880. The place of delivery is LDP MEXICO (Landed-Duty Paid) and the payment method is OA 180days (payment within 180 days after the goods are shipped).

After the signing of the Contract, the Applicant consigned the goods under the Contract to the shipping company HAPAG-LLOYD/BVL in two batches. First batch of shipment: on July 4, 2017, the Respondent applied to the Applicant for the release of Bill of Lading numbered HLCBON23769, and then issued the release guarantee and the payment commitment guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading will be made within 180 days after the goods are shipped. On July 5, 2017, the shipping company HAPAG-LLOYD issued a Bill of Lading to the Applicant showing that the goods had been loaded on board. On July 21, 2017, the

14

Applicant sent a scanned Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 29, 2017, and the Respondent picked up the goods with the scanned Bill of Lading.

Second batch of shipment: on July 10, 2017, the Respondent issued a Letter of Payment Guarantee to the Applicant, guaranteeing that the payment under Bill of Lading No. ZYA7NGB020295 will be made within 180 days after the goods are shipped. On July 10, 2017, the shipping company BVL issued the original Bill of Lading to the Applicant showing that the goods had been loaded on board. On July 24, 2017, the Applicant sent the original Bill of Lading to the address designated by the Respondent via DHL express (express number 763 4841 502). The goods arrived at the destination port on July 31, 2017, and the Respondent picked up the goods by the Bill of Lading.

In accordance with the Agreement reached in the Contract and the commitments made in the Letter of Guarantee, the Respondent shall pay off the payment for the goods under the Contract prior to January 6, 2018. Upon the Applicant's urging, the Respondent still does not pay. The total amount of payment under the Contract is USD 286,293.12.

4.  Contract Numbered NFL20170514

In accordance with the Contract, the total quantity of fabric purchased by the Respondent from the Applicant is a total of 22,000KGS, with a total amount of USD 145,640. The place of delivery is LDP MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped)

After the signing of the Contract, the Applicant consigned the goods under the Contract to the shipping company HAPAG-LLOYD for transportation. On July 4, 2017, the Respondent applied to the Applicant for the release of Bill of Lading numbered HLCBON23772, and then issued a release guarantee and a Letter of Payment Guarantee to the Applicant to safeguard that the payment under the Telex Release Bill of Lading would be made within 180 days after the goods are shipped. On July 5, 2017, the shipping company HAPAG-LLOYD issued the original Bill of Lading to the Applicant, showing that the goods had been loaded on board. On July 21, 2017, the Applicant sent a scanned Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 29, 2017, and the Respondent extracted the goods by means of the scanned Bill of Lading.

In accordance with the Agreement in the Contract and the commitment in the letter, the Respondent shall pay off the payment for the goods under the Contract prior to January 5, 2018. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The amount of the Loan under the Contract is USD 147,541.93.

5.  Contract Numbered NFL20170517

In accordance with the Contract, the total quantity of fabric purchased by the Respondent from the Applicant is 132,251KGS, with a total amount of USD 875,498.8. The place of delivery is LDP MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped)

After the signing of the Contract, the Applicant consigned the goods under the Contract to the shipping company HAPAG-LLOYD for transportation. On July 4, 2017, the Respondent applied to

the Applicant for the release of Bill of Lading number HLCBON23758. In the meanwhile, the Respondent issued a release guarantee and a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Telex Release Bill of Lading would be made 180 days after the goods are shipped. On July 4, 2017, the shipping company HAPAG-LLOYD issued the original Bill of Lading to the Applicant, showing that the goods had been loaded on board. On July 21, 2017, the Applicant sent a scanned Bill of Lading to FENG XU, the contact person designated by the Respondent by the email from <964895151@qq.com> to <FENGXU88888@GMAIL.com>. The goods arrived at the destination port on July 29, 2017, and the Respondent picked up the goods with the scanned Bill of Lading.

In accordance with the Agreement reached in the Contract and the commitments made in the Letter of Guarantee, the Respondent shall pay off the payment for the goods under the Contract prior to January 2, 2018. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The amount of the Loan under the Contract is USD 149,831.78.

6. Contract Numbered NFL20170520

In accordance with the Contract, the Respondent purchases 24,000KGS, with a total amount of USD 150,960. The place of delivery is LDP MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped)

On July 10, 2017, the Respondent issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Bill of Lading numbered ZYA7NGB020293 will be made within 180 days after the goods are shipped. On July 10, 2017, the shipping company BVL issued the original Bill of Lading to the Applicant showing that the goods had been loaded on board. On July 24, 2017, the Applicant sent the original Bill of Lading to the address designated by the Respondent via DHL express (express number 763 4841 502). The goods arrived at the destination port on July 31, 2017, and the Respondent picked up the goods by the Bill of Lading.

In accordance with the Agreement reached in the Contract and the commitments made in the Letter of Guarantee, the Respondent shall pay off the purchase price under the aforesaid contract prior to January 6, 2018. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The amount of the Loan under the Contract is USD 144,412.74.

7. Contract Numbered NFL20170706

In Accordance with the Contract, the total Quantity of fabric Purchased by the Respondent from the Applicant is 24000KGS, with a total amount of USD 150,960, Place and Conditions of Delivery LDP MEXICO and the Payment Method is OA 180days (Payment Within 180 Days after the Goods Are Shipped)

On July 10, 2017, the Respondent issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Bill of Lading numbered ZYA7NGB021470 will be made within 180 days after the goods are shipped. On July 17, 2017, the shipping company BVL issued the original Bill of Lading to the Applicant showing that the goods had been loaded on board. On July 24, 2017, the Applicant sent the original Bill of Lading to the address designated by the Respondent via DHL express (express number 763 4841 502). The goods arrived at the destination port on August 7, 2017, and the Respondent picked up the goods by the Bill of Lading.

16

In accordance with the Agreement reached in the Contract and the commitments made in the Letter of Guarantee, the Respondent shall pay off the purchase price under the aforesaid contract prior to January 13, 2018. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The amount of the Loan under the Contract is USD 141,095.39.

8. Contract Numbered NFL20170620

In accordance with the Contract, the total amount of fabric purchased by the Respondent from the Applicant is 19,536KGS, with a total amount of USD 150,426.9. The place of delivery is LDP MEXICO and the payment method is OA 180days (payment within 180 days after the goods are shipped)

On August 4, 2017, the Respondent issued a Letter of Payment Guarantee to the Applicant to warrant that the payment under the Bill of Lading numbered C232013347 will be made within 180 days after the goods are shipped. On July 31, 2017, the shipping company YANG MING issued the original Bill of Lading to the Applicant showing that the goods had been loaded on board. On August 4, 2017, the Applicant sent the original Bill of Lading to the address designated by the Respondent via DHL express (express number 506 2759 995). The goods arrived at the destination port on August 21, 2017, and the Respondent picked up the goods by the Bill of Lading.

In accordance with the Agreement reached in the Contract and the commitments made in the Letter of Guarantee, the Respondent shall pay off the payment for the goods under the Contract prior to January 26, 2018. Upon the repeated reminders by the Applicant, the Respondent still refused to pay. The amount of the Loan under the Contract is USD 122,945.13.

The total amount payable under the aforesaid eight contracts is USD 1,185,753.97. For above-mentioned payment due, the Respondent has issued a Letter of Payment Guarantee. According to the terms of the guarantee, the Respondent commits to pay off the payment within 180 days after the goods are shipped. The Applicant submitted the certificate of shipment (i.e. bill of Lading) and the Respondent acknowledged receipt of all the goods under above-mentioned contract at the arbitration hearing. Therefore, after the Applicant has performed the obligation to deliver the goods, the Respondent shall perform the corresponding payment obligation in accordance with the Contract and the commitments made under the Letter of Payment Guarantee.

The Arbitration Tribunal found that the Respondent proposed at the hearing that the delay in payment of import duties and customs clearance fees caused the Respondent to incur such losses as the demurrage fees, container rents and empty container fees at the local port, and therefore had the right to refuse to pay for the goods, but the Respondent failed to provide any evidence to support its claim in hearing or after the hearing. In response, the Applicant submitted a statement in the *Statement of Attorney* after the hearing: The Applicant did not delay the payment of the funds. In the event of changes in foreign exchange management policies and difficulties in foreign exchange payment, the Applicant actively negotiated with the Respondent to find a solution. Both Parties made corresponding adjustments to the payment method of the funds. The Applicant remitted the funds to the third person designated by the Respondent as instructed by the Respondent. The Respondent also admitted to having received all the funds paid by the Applicant at the hearing session. In addition, the Respondent failed to provide the evidence to prove that it suffered losses, therefore, the respondents argument was only to find excuses for its failure to fulfill its payment obligations.

The Arbitration Tribunal held that among the aforesaid eight Contracts, NFL20170218 and

17

NFL20170220-1 agreed on CIF terms for delivery. According to *Incoterms 2010*, under CIF terms, the Seller delivers the goods on board the ship, and the risk of loss or damage to the goods is transferred from the Seller to the Buyer, i.e. the Buyer assumes all risks and expenses after the goods are delivered. The Seller does not have to pay import duties and does not assume the obligation of customs clearance for the import of the goods. The other six contracts stipulate the delivery terms of LDP MEXICO. According to *Incoterms 2010*, LDP is to deliver the goods duty-paid at the port of destination. The Seller shall handle the customs clearance formalities for the import of the goods at its own risk and expense, including providing the import license, bearing the import duties, customs inspection fees, and any other taxes or fees payable for the import of the goods and delivery to the Buyer. However, an finding of fact in the performance of the Contract under the Case is that the Respondent issued a *Letter of Undertaking* to the Applicant on June 1, 2017 (see Group 15.1, Evidence Submitted by the Applicant for the Third time), explicitly committing that the Respondent would: Purchase insurance for the goods from the destination port to the respondents warehouse on its own; Agree that the Applicant's freight forwarding company and the Respondent shall operate all LDP processes together; to control all steps of the customs clearance of goods from the destination port to the respondents warehouse, and all risks arising therefrom shall be assumed by the Respondent; Pay an extra 4% of the customs clearance fee to compensate the Applicant for the cost of paying LDP advanced for the Respondent. The Letter of Undertaking has actually amended the LDP delivery terms agreed upon by both Parties hereof in the afore-mentioned contract. Via the *Letter of Undertaking*, the Respondent becomes the customs clearance obligor for the import of goods under the Contract under the Case, and bears the responsibilities and risks for the customs clearance of goods. The Applicant no longer bears the responsibilities and risks for the customs clearance of the imported goods. Therefore, during the performance of the Contract under the Case, the risks and losses arising from the delayed customs clearance and delivery of the goods due to the respondents failure to properly and timely handle the customs clearance formalities, including the demurrage fee, empty container fee, rent, customs penalty, etc., shall be assumed by the Respondent.

To sum up, the Arbitration Tribunal does not approve the Respondent's defense of refusing to pay for the goods. The respondents refusal to pay for the goods constitutes a breach of the Contract. According to the Articles 107 and 109 of *the Contract Law of the People's Republic of China*, the Respondent shall assume the liability for the breach of the Contract and indemnify the relevant losses caused to the Applicant due to its breach of the Contract.

(IV) Regarding the Arbitration Claim by the Applicant

For the Respondent's breach of the Contract, the Applicant submitted the following arbitration claim:

1. The Respondent shall immediately pay the Applicant the payment for the goods of USD 1,185,753.97 and the interests arising therefrom of USD 48,499.89 (calculated from the date of payment, provisionally until November 6, 2018, at the interest rate of 4.75% per year for medium and long-term loans [one to five years] of the People's Bank of China, and accrued to the date of actual payment by the Respondent)

Regarding the payment request, according to the Arbitration Tribunal's determination of the fact of performing the Contract, the Applicant has performed the obligation to deliver the goods in accordance with the Contract Agreement, and the Respondent shall perform the obligation to pay the corresponding payment. The total amount of the payment payable under the eight contracts

18

involved in the Case is USD 1,185,753.97. Therefore, the Arbitration Tribunal supports the Applicant's request that the Respondent pay the payable payment of USD 1,185,753.97 to the Applicant.

Regarding the interests claim, the Applicant, according to the judicial interpretation of the Supreme People's Court on the calculation standard of the liquidated damages for overdue payment, chose the long-term and medium-term RMB loan interest rate for financial agencies stipulated by the People's Bank of China to calculate the liquidated damages for overdue payment in the Case, and adduced relevant judgment of the People's Court to support its claim. The Respondent did not raise any objection or defense to this claim. In the *Statement Letter* submitted by the Applicant after the hearing, the loan interest rate for calculating overdue payment interest in the arbitration claim was changed from 5.05% to 4.75% for medium and long-term loans of the People's Bank of China, and the interest calculation method and formula were submitted. The Arbitration Tribunal held that the performance of the Contract under the Case was from 2017 to 2018, and the overdue time for the payment under the Contract had exceeded two years, so it was appropriate for the Applicant to calculate the overdue payment interest at an annual interest rate of 4.75%, which was supported by the Arbitration Tribunal. Therefore, the Respondent shall pay the Applicant USD 48,499.89 of interest provisionally calculated until November 6, 2018, and the interests calculated at the annual interest rate of 4.75% from November 7, 2018 to the date when the Respondent actually pays with USD 1,185,753.97 as the principal.

2.   The Respondent shall reimburse the travel expenses incurred by the Applicant for the Case.

The Applicant failed to submit any evidence for its request, so the Arbitration Tribunal failed to support the claim.

3.   The arbitration and preservation fees for the Case shall be assumed by the Respondent.

According to the hearing of the Case, the Arbitration Tribunal ruled that the arbitration fee for the Case shall be assumed by the Respondent.

As for the preservation fee, the Arbitration Tribunal failed to support the claim as the Applicant failed to submit relevant evidence.

### III. Award

After hearing and discussing together, the Arbitration Tribunal ruled as follows:

(I)  The Respondent shall make the payment to the Applicant for the goods of USD 1,185,753.97;

(II) The Respondent shall pay to the Applicant USD 48,499.89 of interest provisionally calculated until November 6, 2018, and the interests calculated at the annual interest rate of 4.75% from November 7, 2018 to the date when the Respondent actually pays with USD 1,185,753.97 as the principal.

(III) The arbitration fee for the Case is RMB 215,372, all of which shall be assumed by the Respondent. Since the Applicant has paid the arbitration fee in advance, the Respondent shall pay the arbitration fee of RMB 215,372 paid by the Applicant.

(IV) The Other Arbitration Claims by the Applicant will be rejected.

The aforesaid amounts shall be paid by the Respondent within 30 days from the date of this award.

This award is final and effective from the date of its making.

(This Page Intentionally Left Blank)

Chief arbitrator: Zhou Xiaoyan(signature)

Arbitrator: Tang Gongyuan(signature)

Arbitrator: Liu Jing(signature)

Beijing, March 10, 2020

**(Seal) China International Economic and Trade Arbitration Commission**



# China International Economic and Trade Arbitration Commission

# NOTARIAL CERTIFICATE
## ( Translation )

(2020) XM LJ ZI NO.4207

Applicant: Xiamen ITG Group Corp., Ltd., Unified Social Credit Code: 913502001550054395, address: Unit 2801, Guomao Center, No. 4688, Xianyue Road, Huli District, Xiamen City.

Legal Representative: Xu Xiaoxi, male, born on November 1, 1969, ID Card Number: 350203196911014014.

Authorized Agent: Li Bowen, male, born on March 18, 1986, ID Card Number: 430524198603180034.

Notarized Item: Arbitral Award

This is to certify that the original paper of Arbitral Award issued on March 10, 2020 to Xiamen ITG Group Corp., Ltd. by China International Economic and Trade Arbitration Commission is in conformity with the duplicate copy attached hereto, and the original paper is found to be authentic.

Notary: Yan Xiaoping
Xiamen Lujiang Notary Public Office
Fujian Province
The People's Republic of China
April 27, 2020

I V51848448

# 公　证　书

（2020）厦鹭证字第 4208 号

申请人：厦门国贸集团股份有限公司，统一社会信用代码：913502001550054395，住所：厦门市湖里区仙岳路 4688 号国贸中心 2801 单元。

法定代表人：许晓曦，男，一九六九年十一月一日出生，公民身份号码：350203196911014014。

委托代理人：李博文，男，一九八六年三月十八日出生，公民身份号码：430524198603180034。

公证事项：译本内容与原本相符

兹证明前面的（2020）厦鹭证字第 4207 号公证书的英文译本内容与该公证书中文原本相符。

中华人民共和国福建省厦门市鹭江公证处

公证员　



二〇二〇年四月二十七日

I V 5 1 8 4 8 4 4 7

# NOTARIAL CERTIFICATE

( Translation )

(2020) XM LJ ZI NO.4208

Applicant: Xiamen ITG Group Corp., Ltd., Unified Social Credit Code: 913502001550054395, address: Unit 2801, Guomao Center, No. 4688, Xianyue Road, Huli District, Xiamen City.

Legal Representative: Xu Xiaoxi, male, born on November 1, 1969, ID Card Number: 350203196911014014.

Authorized Agent: Li Bowen, male, born on March 18, 1986, ID Card Number: 430524198603180034.

Notarized Item: Translation is in conformity with the original paper

This is to certify that the content of the English translated copy of NOTARIAL CERTIFICATE <(2020) XM LJ ZI NO.4207> is in conformity with the Chinese original paper.

Notary: Yan Xiaoping
Xiamen Lujiang Notary Public Office
Fujian Province
The People's Republic of China
April 27, 2020

I V51848446

# Exhibit 2

John J. Janiec
**LAW OFFICE OF JOHN J. JANIEC**
**261 Madison Avenue, Fl 12**
**New York, New York 10016**
**Tel: (212) 629 – 0027**
**Fax: (646) 589 – 0499**
**E-mail: jjaniec@jjjlawoffice.com**

**Attorney for Plaintiff**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------------

**XIAMEN ITG GROUP CORP., LTD.,**                  :        **Civil Action No.:**  19-CV-6524

                                    **Plaintiff,**        :

                    *-against-*                      :                        **COMPLAINT**

                                                       :

**PEACE BIRD TRADING CORP.,**

                                    **Defendant.**       :

----------------------------------------------------------

Plaintiff, XIAMEN ITG GROUP CORP., LTD. ("ITG"), by and through its attorney, The

Law Office of John J. Janiec, complaining of defendant, PEACE BIRD TRADING CORP. ("Peace

Bird"), alleges as follows:

**NATURE OF THE ACTION**

1. This is an action brought to recover the sum of US$ 2,709,664.17, together with interest and

costs, due and owing to plaintiff, ITG, for fabrics and textiles sold and shipped by it to

defendant Peace Bird during the year 2017. ITG's place of business is in China, and defendant

Peace Bird's place of business is in the United States. This case is governed by the United

Nations Convention on Contracts for the International Sale of Goods ("CISG"). The CISG

automatically applies to contracts for the sale of goods between parties whose places of business are in different Contracting States, unless the parties agree to exclude its application. China and the United States are both signatories to the CISG, and the parties have not agreed to exclude the application of the CISG from applying to their sales transactions.

## **THE PARTIES**

**2.** Plaintiff, ITG, is a corporation organized and existing under the laws of The People's Republic of China ("P.R.C."), with its registered legal address at: Unit 2801, Guomao Centre, No.4688, Xianyue Road, Huli District, Xiamen City, China 361016.

**3.** Defendant, Peace Bird, is a corporation organized and existing under the laws of the State of New York, with its executive office located at: 1441 67th Street, Unit 1B, in the County of Kings, City and State of New York 11219.

## **JURISDICTION AND VENUE**

**4.** This court has diversity of citizenship jurisdiction pursuant to 28 U.S.C.A. § 1332. Plaintiff is a citizen of the P.R.C. Defendant is a citizen of the United States, located in the State of New York, and the amount in controversy exceeds $75,000, exclusive of interests and costs. This court also has jurisdiction pursuant to 28 U.S.C. 1331, as claims made under the CISG arise under federal law.

**5.** Venue is appropriate in this judicial district pursuant to 28 U.S.C.A. § 1391(a).

2

## **FACTS COMMON TO ALL COUNTS**

**6.** During the period beginning with a written contract dated February 10, 2017, and continuing up to, and including, written contracts dated July 7, 2017, Plaintiff ITG entered into a series of twenty eight separate written contracts with Peace Bird, pursuant to which ITG agreed to sell, and Peace Bird agreed to buy, certain described commodities consisting of fabrics and textiles ("the Sales Contracts").

**7.** Under the terms of the Sales Contracts, for the most part and unless noted herein, the fabrics and textiles purchased by Peace Bird were to be shipped by ITG from any port in China by vessel, to Manzanillo, Mexico, where the purchased items were then to be shipped by land for delivery to Peace Bird in Mexico City, Mexico.

**8.** Each Sales Contract contained, among other things, a description of the items being sold, a customer item number, the weight of the shipment, the unit cost, and the shipping container number in which the items being purchased were to be shipped, and provided a "Ship By" date, which fixed the date on which the purchased items were to be shipped by ITG from China to Peace Bird in Mexico.

**9.** Eight of the initial Sales Contracts provided for the arbitration of any dispute, controversy or claim arising out of or relating to the contracts before the China International Economic and Trade Arbitration Commission. The remaining Sales Contracts that were executed by the parties and which are the subject of this action, do not include an arbitration clause.

10. The payment terms in the Sales Contracts provided that payment from Peace Bird to ITG was due "OA180," which the parties agreed to mean that payment was not due until 180 days after shipment of the purchased items by ITG from China.

11.  The initial series of Sales Contracts between the parties provided for delivery of the purchased items "CIF Mexico."

12. The term "CIF" is a delivery term that stands for "Cost, Insurance and Freight" and means that the seller is required to deliver the purchased items on board the vessel. The risk of loss of or damage to the goods passes when the goods are on board the vessel. The seller must contract for and pay the costs and freight necessary to bring the goods to the named port of destination, and also contracts for insurance cover against the buyer's risk of loss of or damage to the goods during the carriage.

13. Under a CIF delivery term, before the purchased items could be released from customs in Mexico, Peace Bird was required to pay all customs' fees, duties and taxes imposed by Mexico.

14. After the initial Sales Contracts were executed, and in order to accommodate Peace Bird, ITG agreed to a change in the delivery terms of the purchased items to be "LDP Mexico."

15. The term "LDP" is an abbreviation for "Landed Duty Paid."  Under an LDP delivery term, among other things, a Seller is required to pay all customs' fees, duties and taxes that are imposed by the government of the destination port.

4

16. ITG and Peace Bird agreed that under their LDP Agreement, ITG would advance the cost of customs' fees, duties and taxes that were required to be paid as the result of the shipments made by it under the Sales Contracts, and that the amount of the fees, duties and taxes, that were paid by ITG would be included in the purchase price of the items sold to Peace Bird.

17. Peace Bird also agreed to reimburse ITG the full amount of the customs' fees, duties and taxes advanced by ITG, together with interest at the rate of 4% from the date each such payment was advanced by ITG on behalf of Peace Bird.

18. As required by the terms of the Sales Contracts, ITG shipped the items purchased by Peace Bird, and paid the customs' fees, duties and taxes on each shipment made by it to Peace Bird, and the items shipped by ITG were received by, or on behalf of, Peace Bird.

19. Despite due demand therefor, defendant Peace Bird has failed, and continues to refuse to pay the amounts due to plaintiff ITG for the items received by it under its Sales Contracts with ITG.

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION

20. Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

21. On June 5, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of fabrics-textiles in various colors, described as "MAKUKO" ("the Purchased Items").

22. Among other things, the Sales Contract required the Purchased Items, customer item numbers LYM031-33, to be shipped by ITG and delivered "LDP Mexico City."

23. The Sales Contract provided that customer item number LYM031 was to be shipped out of any port in China before June 30, 2017;  customer item number LYM032 was to be shipped out of any port in China before July 30, 2017; and customer item number LYM033 was to be shipped out of any port in China before August 30, 2017.

24. The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$4.626 per kilogram.

25. Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG from any port in China.

**Customer Item LYM031**

26. On July 10, 2017, shipping container numbered SUDU8653280, containing customer item number LYM031, and consisting of 571 Rolls of the purchased fabrics-textiles weighing 13,834.9 kilograms, was shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

27. Bill of Lading Number ENBFL17070125 (ZYA7NGBO202597), ITG's Commercial Invoice Number 17410YFX029, in the amount of US$64,000.25, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

28. Shipping container number SUDU8653280 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Customer Item LYM032**

29. On July 24, 2017, shipping container numbered TCNU8867360, containing customer item number LYM032, and consisting of 570 Rolls of the purchased fabrics-textiles, weighing 14,008.4 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

30. Bill of Lading Number CCNRN7465A5VX507 (PEN7NGBO24507), ITG's Commercial Invoice Number 17415YFX030, in the amount of US$37,822.68, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

31. Shipping container number TCNU8867360 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Defendant's Breach**

**32.** Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

**33.** The time for Peace Bird to make payment to ITG for the purchased items shipped in shipping container numbers SUDU653280 and TCNU8867360, under ITG Commercial Invoice Numbers 17410YFX029 and 17415YFX030, expired on January 6, 2018 and January 20, 2018, respectively.

**34.** Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

**35.** As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$101,822.93, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION

**36.** Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

**37.** On June 4, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of polyester/spandex fabric-textiles in various colors, described as "75D BOMBAY" ("the Purchased Items").

**38.** Among other things, the Sales Contract required the Purchased Items, customer item numbers DXB084 and DXB085, to be shipped by ITG and delivered "CIF Mexico City."

**39.** The Sales Contract also provided that customer item numbers DXB084 and DXB085 were to be shipped by ITG from any port in China before July 15, 2017.

**40.** The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$1.830 per kilogram.

**41.** Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG out of any port in China.

**Customer Item DXB084**

**42.** On June 22, 2017, shipping container number MRKU4380900, containing customer item number DXB084, and consisting of 866 Rolls of the purchased fabrics-textiles weighing 17,508 kilograms, was shipped on board from Ningbo, China, to Manzanillo, Mexico for transport by land to Mexico City for delivery to defendant Peace Bird.

**43.** Bill of Lading Number TDSHSE17060291 (589782827), ITG's Commercial Invoice Number 17342YFDR001, in the amount of US$32,039.64, along with a Packing List for the shipment of the Purchased Items were provided to defendant Peace Bird.

9

**44.** Shipping container number MRKU4380900 arrived at the designated port of discharge in Manzanillo Mexico, and the purchased items were delivered to, and received by defendant Peace Bird.

**Customer Item DXB085**

**45.** On June 22, 2017, shipping container number MRKU4707818, containing customer item number DXB085, and consisting of 878 Rolls of the purchased fabrics-textiles weighing 17,795.4 kilograms, was shipped on board from Ningbo, China, to Manzanillo, Mexico for transport by land to Mexico City for delivery to defendant Peace Bird.

**46.** Bill of Lading Number TDSHSE17060292 (589782828), ITG's Commercial Invoice Number 17343YFDR002, in the amount of US$32,565.58, along with a Packing List for the shipment of the Purchased Items were provided to defendant Peace Bird.

**47.** Shipping container number MRKU4707818 arrived at the designated port of discharge in Manzanillo Mexico, and the Purchased Items were delivered to, and received by defendant Peace Bird.

**Defendant's Breach**

**48.** Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

**49.** The time for Peace Bird to make payment to ITG for the Purchased Items shipped in shipping container numbers MRKU4380900 and MRKU4707818, under ITG's Commercial Invoice Numbers 17342YFDR001 and 17343YFDR002, expired on December 19, 2017.

50. Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

51. As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$64,605.22, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION

52. Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

53. On April 19, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of polyester fabric-textiles in various colors, and described as "DOUBLE PIQUE" ("the Purchased Items").

54. Among other things, the Sales Contract required the Purchased Items, customer item number DXDP005, to be shipped by ITG and delivered "CIF Mexico City."

55. The Sales Contract provided that customer item number DXDP005 was to be shipped from any port in China before July 10, 2017.

11

56. The agreed upon price for the Purchased Items payable by Peace Bird to ITG was US$3.200 per kilogram.

57. Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after the Purchased Items were shipped on board by ITG out of any port in China.

**Customer Item DXDP005**

58. On June 22, 2017, shipping container number MSKU9479055, containing customer item number DXDP005, and consisting of 842 Rolls of the purchased fabrics-textiles, weighing 19,404.4 kilograms, was shipped on board from Ningbo, China, to Manzanillo, Mexico, for transport by land to Mexico City for delivery to defendant Peace Bird.

59. Bill of Lading Number TDSHSE17060289 (589782826), ITG's Commercial Invoice Number17344YFDR003, in the amount of US$62,094.08, along with a Packing List for the Purchased Items were provided by ITG to defendant Peace Bird.

60. Shipping container number MSKU9479055 arrived at the designated port of discharge in Manzanillo Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Defendant's Breach**

61. Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

62. The time for Peace Bird to make payment to ITG for the Purchased Items shipped in shipping container number MSKU9479055 under ITG's Commercial Invoice Number 17344YFDR003, expired on December 19, 2017.

63. Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

64. As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$62,094.08, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION

65. Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

66. On June 4, 2017, ITG, as Seller, entered into a written Sales Contract Number NLF20170601 with Peace Bird, as Buyer, for the sale of polyester fabric-textiles in various colors, described as "DOUBLE PIQUE," "GADOL," and "ZAGREB" ("the Purchased Items").

67. Among other things, the Sales Contract required the Purchased Items, customer item numbers OCC-0076-DP, OCC-0076-G, OCC-0076-Z, and OCC-0080-DP, OCC-0080-G, OCC-0080-Z, and OCC-0078-Z, to be shipped by ITG and delivered "CIF Mexico City."

68. The Sales Contract provided that customer item numbers OCC-0076 and OCC-0080 were to be shipped out of any port in China before July 31, 2017.

69. The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$3.020 per kilogram for customer item number OCC-0076-DP; US$3.130 per kilogram for customer items numbered OCC-0076-G and OCC-0080-Z; and US$3.620 per kilogram and US$3.430 per kilogram for customer items numbered OCC-0076-Z, OCC-0080-Z, and OCC-0078-Z, respectively.

70. Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG out of any port in China.

**Customer Items OCC-0076, OCC-0079, and OCC-0080**

71. On July 20, 2017, shipping containers numbered TCKU9754281 and BMOU6072416, containing customer item numbers OCC-0076, OCC-0079, and OCC-0080, and consisting of 1,631 Rolls of the purchased fabrics-textiles, with a net weight of 36,026 kilograms, were shipped on board from Shanghai, China, to Hidalgo, Texas, United States, to Manufacturera Cora, S.A., as consignee, at the direction of, and  on behalf of defendant Peace Bird. .

72. ITG's Commercial Invoice Number 17434YFDR025, in the amount of US$60,080.21, along with a Packing List for the shipment of the Purchased Items in shipping container OCC-0079; ITG's Commercial Invoice Number 17432YFDR023, in the amount of US$60,949.58, along with Packing Slips for the shipment of the Purchased Items in shipping containers numbered TCKU9754281 and BMOU6072416; and Bill of Lading Number TDSH17070319 for the shipment of the shipping containers, were provided to defendant Peace Bird.

73. Shipping containers numbered TCKU9754281 and BMOU6072416, arrived at the designated port of discharge in Hidalgo, Texas, and the Purchased Items were delivered to, and received by defendant Peace Bird.

**Defendant's Breach**

74. Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

75. The time for Peace Bird to make payment to ITG for the Purchased Items shipped in shipping container numbers TCKU9754281 and BMOU6072416, and ITG's Commercial Invoice Numbers 17434FDR025 and 17432YFDR023, expired on January 16, 2018.

76. Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

77. As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$121, 029.79, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S FIFTH CAUSE OF ACTION

**78.** Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

**79.** On June 4, 2017, ITG, as Seller, entered into a written Sales Contract Number NLF20170601 with Peace Bird, as Buyer, for the sale of polyester fabric-textiles in various colors, described as "DOUBLE PIQUE," "GADOL," and "ZAGREB" ("the Purchased Items").

**80.** Among other things, the Sales Contract required the Purchased Items, customer item numbers OCC-0077-DP, OCC-0077-G, OCC-0077-Z , and OCC-0078-DP, OCC-0078-G and OCC-0078-Z, to be shipped by ITG and delivered "CIF Mexico City.".

**81.** The Sales Contract also provided that customer item numbers OCC-0077 and OCC-0078 were to be shipped from any port in China before July 31, 2017.

**82.** The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$3.050 per kilogram, and US$2.90 per kilogram for customer item numbers OCC-0077-DP and OCC-0078-DP, respectively.

**83.** The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$3.150 per kilogram for customer item numbers OCC-0077-G and OCC-0078-G.

84. The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$3.450 per kilogram for customer item numbers OCC-0077-Z and OCC-0078-Z.

85. Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG out of any port in China.

**Customer Items OCC-0077 and OCC-0078**

86. On July 27, 2017, shipping container numbered ECMU9362939, containing OCC-0077 and OCC-0078, and consisting of 856 Rolls of the purchased fabrics-textiles, weighing 18,579.80 kilograms, were shipped on board from Shanghai, China, to Hidalgo, Texas, United States, to Manufacturera Cora, S.A., at the direction of, and  on behalf of defendant Peace Bird.

87. Bill of Lading Number TD17070319A, ITG's Commercial Invoice Number 17433YFDR024, in the amount of US$62,765.18, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

88. Shipping container numbered ECMU9362939 arrived at the designated port of discharge in Hidalgo, Texas, and the Purchased Items were delivered to, and received by defendant Peace Bird.

**Defendant's Breach**

89. Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

90. The time for Peace Bird to make payment to ITG for the purchased items shipped in shipping container number ECMU9362939, and ITG's Commercial Invoice Number 17433YFDR024, expired on January 23, 2018.

91. Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

92. As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$62,765.18, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S SIXTH CAUSE OF ACTION

93. Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

94. On May 4, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of polyester/spandex fabric-textiles in various colors, and described as "PFP FDY WITHOUT BLUSH" ("the Purchased Items").

95. Among other things, the Sales Contract required a part of the Purchased Items, customer item number PFPFD002, to be shipped by ITG and delivered "LDP Mexico City."

**96.** The Sales Contract also provided that customer item number PFPFD002 was to be shipped from any port in China before July 15, 2017.

**97.** The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$4.480 per kilogram.

**98.** Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG out of any port in China.

**Customer Item PFPFD002**

**99.** On July 17, 2017, shipping container number HASU4309550, containing customer item number PFPFD002, consisting of 981 Rolls of the purchased fabrics-textiles weighing 24,145.5 kilograms, was shipped on board from Ningbo, China, to Manzanillo, Mexico, for transport by land to Mexico City for delivery to defendant Peace Bird.

**100.** Bill of Lading Number ENBFL17070157 (ZYA7NGBO21428), ITG's Commercial Invoice Number 17356YFM52B, in the amount of US$108,171.84, along with a Packing List for the Purchased Items were provided to defendant Peace Bird.

**101.** Shipping container number HASU4309550 arrived at the designated port of discharge in Manzanillo Mexico, and the Purchased Items were delivered to, and received by defendant Peace Bird.

**Defendant's Breach**

102.    Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

103.    The time for Peace Bird to make payment to ITG for the Purchased Items shipped in shipping container number HASU4309550, under ITG's Commercial Invoice Number 17356YFM52B, expired on January 13, 2018.

104.    Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

105.    As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$108,171.84, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S SEVENTH CAUSE OF ACTION

106.    Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

107.    On May 4, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of polyester/spandex fabric-textiles in various colors, described as "PFP DTY BLUSH" ("the Purchased Items").

108.    Among other things, the Sales Contract required a part of the Purchased Items, customer item number PFPDB002 to be shipped by ITG and delivered "LDP Mexico City."

109.    The Sales Contract also provided that customer item number PFPDB002 was to be shipped from any port in China before July 25, 2017.

110.    The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$4.990 per kilogram.

111.    Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG out of any port in China.

**Customer Item PFPDB002**

112.    On July 17, 2017, shipping container number HASU4554162, containing customer items number PFPDB002 consisting of 810 Rolls of the purchased fabrics-textiles, weighing 19,573.6 kilograms, was shipped on board from Ningbo, China to Manzanillo, Mexico, for transport by land to Mexico City for delivery to defendant Peace Bird.

113.    Bill of Lading Number ZYA7NGBO21466, ITG's Commercial Invoice Number 17363YFM51B, in the amount of US$97,672.26, along with a Packing List for the shipment of the Purchased Items were provided to defendant Peace Bird.

114.     Shipping container number HASU4554162 arrived at the designated port of discharge in Manzanillo Mexico, and the Purchased Items were delivered to, and received by defendant Peace Bird.

**Defendant's Breach**

115.     Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

116.     The time for Peace Bird to make payment to ITG for the Purchased Items shipped in shipping container number HASU4554162, under ITG's Commercial Invoice Number 17363YFM51B, expired on January 13, 2018.

117.     Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

118.     As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$97,672.26, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

**AS AND FOR PLAINTIFF'S EIGHTH CAUSE OF ACTION**

119.     Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

120.    On June 19, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of fabrics-textiles in various colors, described as "SUPER PONTI" ("the Purchased Items").

121.    Among other things, the Sales Contract required the Purchased Items, customer item number SPT010 to be shipped by ITG and delivered "LDP Mexico City."

122.    The Sales Contract also provided that customer item number SPT010 was to be shipped out of any port in China before July 10, 2017.

123.    The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$7.520 per kilogram.

124.    Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG from any port in China.

**Customer Item SPT010**

125.    On July 24, 2017, shipping container number FCIU8434636, containing customer item number SPT010, and consisting of 850 Rolls of the purchased fabrics-textiles, weighing 20,788 kilograms, was shipped on board from Ningbo, China, to the port of discharge at Manzanillo, Mexico for delivery in Mexico City, Mexico, to defendant Peace Bird.

126.     Bill of Lading Number CCNRN7465A5VX505 (PEN7NGBO24505), ITG's Commercial

Invoice Number 17456YFM07D, in the amount of US$156, 325.76, along with a Packing List

for the shipment of the Purchased Items, were provided to defendant Peace Bird.

127.     Shipping container number FCIU8434636 arrived at the designated port of discharge at

Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant

Peace Bird.

**Defendant's Breach**

128.     Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

129.     The time for Peace Bird to make payment to ITG for the purchased items shipped in

shipping container number FCIU8434636, under ITG's Commercial Invoice Number

17456YFM07D, expired on January 20, 2018.

130.     Defendant Peace Bird has failed and refused to make payment for the items of fabric-

textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles

it received.

131.     As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG

has been damaged in the sum of US$156, 325.76, together with interest, and the costs,

disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S NINTH CAUSE OF ACTION

132.  Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

133.  On July 6, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of fabrics-textiles in various colors, described as "WOOL DOBBY" ("the Purchased Items").

134.  Among other things, the Sales Contract required the Purchased Items, customer item number WD001-1, to be shipped by ITG and delivered "LDP Mexico City.".

135.  The Sales Contract also provided that customer item number WD001-1 was to be shipped out of any port in China before July 20, 2017.

136.  The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$1.430 per metric ton.

137.  Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG from any port in China.

### Customer Item WD001-1

138.  On July 31, 2017, shipping container numbers BMOU5702850 and TCNU2205237, containing customer item number WD001-1, consisting of 851 Rolls of purchased fabrics-

25

textiles, weighing 17,569.7 kilograms, was shipped on board from Ningbo, China, to the port of discharge in Lazaro Cardenas, Mexico, for delivery to defendant Peace Bird.

**139.**   Bills of Lading Number YMLUC232013344 (C232013344) and YMLUC232013347 (C232013347), ITG's Commercial Invoice Numbers 17458YFM99BM100A and 17457YFM99AM08AG, in the total amount of US$152,258.82, along with Packing Lists for the shipments of the Purchased Items, were provided to defendant Peace Bird.

**140.**   Shipping container numbers BMOU5702850 and TCNU2205237 arrived at the designated port of discharge in Lazaro Cardenas, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Defendant's Breach**

**141.**   Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

**142.**   The time for Peace Bird to make payment to ITG for the purchased items shipped in shipping container numbers BMOU5702850 and TCNU2205237, under ITG's Commercial Invoices Numbered 17458YFM99BM100A and 17457YFM99AM08AG, expired on January 27, 2018.

**143.**   Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

144.    As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG
has been damaged in the sum of US$152, 258.82, together with interest, and the costs,
disbursements, and attorneys' fees incurred in connection with this action.

### AS AND FOR PLAINTIFF'S TENTH CAUSE OF ACTION

145.    Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1
through 19, inclusive, with the same force and effect as if the same were set forth fully at
length herein.

146.    On July 6, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as
Buyer, for the sale of fabrics-textiles in various colors, described as "MESH" ("the Purchased
Items").

147.    Among other things, the Sales Contract required the Purchased Items, customer item
number  MESH001-1, to be shipped by ITG and delivered "LDP Lazaro Cardenas, Mexico."

148.    The Sales Contract also provided that customer item number MESH001-1, was to be
shipped out of any port in China before July 20, 2017.

149.    The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was
US$6.160 per kilogram.

150.    Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or
180 days after shipment of the Purchased Items by ITG from any port in China.

**Customer Item MESH001-1**

151.    On July 31, 2017, shipping container number BMOU5702850, containing customer item number MESH001-1, and consisting of 372 Rolls of the purchased fabrics-textiles weighing 10,210.6 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Lazaro Cardenas, Mexico, for delivery to defendant Peace Bird.

152.    Bill of Lading Number YMLUC232013344 (C232013344), ITG's Commercial Invoice Number 17458YFM99BM100A, in the amount of US$62,897.30, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

153.    Shipping container number BMOU5702850 arrived at the designated port of discharge in Lazaro Cardenas, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Defendant's Breach**

154.    Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

155.    The time for Peace Bird to make payment to ITG for the purchased items shipped in shipping container number BMOU5702850, under ITG's Commercial Invoice Number 17458YFM99BM100A, expired on January 27, 2018.

156.    Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

157.    As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$62,897.30, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

### AS AND FOR PLAINTIFF'S ELEVENTH CAUSE OF ACTION

158.    Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

159.    On June 4, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of polyester fabric-textiles in various colors, described as "POLY SPUN" ("the Purchased Items").

160.    Among other things, the Sales Contract required the Purchased Items, customer item numbers PS1028 and PS1029, to be shipped by ITG and delivered "LDP Mexico City."

161.    The Sales Contract also provided that customer item numbers PS1028 and PS1029. were to be shipped by ITG from any port in China before July 15, 2017.

162.    The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$4.130 per kilogram.

**163.**     Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG out of any port in China.

### Customer Item PS1028

**164.**     On June 30, 2017, shipping container number MRKU5221712, containing customer item number PS1028, and containing 1109 Rolls of the purchased fabrics-textiles weighing 24,369 kilograms, was shipped on board from Ningbo, China, to Manzanillo, Mexico, for transport by land to Mexico City for delivery to defendant Peace Bird.

**165.**     Bill of Lading Number TDSHSE17060542 (589782845), ITG's Commercial Invoice Number 17369YFDR004, in the amount of US$100,643.97, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

**166.**     Shipping containers numbered MRKU5221712 arrived at the designated port of discharge in Manzanillo, Mexico, and the purchased items were delivered to, and received by defendant Peace Bird.

### Customer Item PS1029

**167.**     On June 30, 2017, shipping container number EMCU9845140, containing customer item number PS1029, consisting of 1080 Rolls of the purchased fabrics-textiles, weighing 23,716.1 kilograms, was shipped on board from Ningbo, China to Manzanillo, Mexico, for transport by land to Mexico City for delivery to defendant Peace Bird.

168.    Bill of Lading Number TDSHSE17060557 (EGLV143785215662), ITG's Commercial Invoice Number 17370YFDR005, in the amount of US$97,947.49, along with a Packing List for the shipment of the Purchased Items were provided to defendant Peace Bird.

169.    Shipping containers numbered EMCU9845140 arrived at the designated port of discharge in Manzanillo, Mexico, and the purchased items were delivered to, and received by defendant Peace Bird.

**Defendant's Breach**

170.    Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

171.    The time for Peace Bird to make payment to ITG for the purchased items shipped in shipping container numbers MRKU5221712 and EMCU9845140, under ITG's Commercial Invoice Numbers 17369YFDR004 and 17370YFDR005, expired on December 27, 2017.

172.     Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

173.    As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$198,591.46, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S TWELVETH CAUSE OF ACTION

**174.**    Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

**175.**     On June 4, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of polyester fabric-textiles in various colors, described as "75D BOMBAY" ("the Purchased Items").

**176.**    Among other things, the Sales Contract required the Purchased Items, customer item numbers DXB086, DXB087 and BB1027, to be shipped by ITG and delivered "LDP Mexico City."

**177.**    The Sales Contract also provided that customer items numbered DXB086, DXB087 and BB1027, were to be shipped out of any port in China before July 15, 2017.

**178.**    The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$3.870 per kilogram.

**179.**    Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG from any port in China.

**Customer Item DXB086**

**180.** On June 30, 2017, shipping container number PONU7545796, containing customer item number DXB086, consisting of 850 Rolls of the purchased fabrics-textiles weighing 17,235.7 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

**181.** Bill of Lading Number TDSHSE17060544 (589782847), ITG's Commercial Invoice Number 17371YFDR006, in the amount of US$66,702.16, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

**182.** Shipping container number PONU7545796 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Customer Item DXB087**

**183.** On June 30, 2017, shipping container numbered HMCU9156606, containing customer item number DXB087, consisting of 837 Rolls of the purchased fabrics-textiles weighing 16,899.4 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

184.    Bill of Lading Number EGLV143785215689, ITG's Commercial Invoice Number 17372YFDR007, in the amount of US$65,400.68, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

185.    Shipping container number HMCU9156606 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Customer Item BB1027**

186.    On June 30, 2017, shipping container numbered MRKU5323910, containing customer item number BB1027, consisting of 821 Rolls of the purchased fabrics-textiles weighing 16,574.9 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

187.    Bill of Lading Number TDSHSE17060545 (589782848), ITG's Commercial Invoice Number 17373YFDR008, in the amount of US$64,144.86, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

188.    Shipping container number MRKU5323910 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Defendant's Breach**

189.   Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.


190.   The time for Peace Bird to make payment to ITG for the purchased items shipped in
        shipping container numbers PONU7545796 and MRKU5323910, under ITG's Commercial
        Invoice Numbers, 17371YFDR006 and 17373YFDR008, respectively, expired on December
        27, 2017.


191.   The time for Peace Bird to make payment to ITG for the purchased items shipped in
        shipping container number HMCU9156606, under ITG's Commercial Invoice Number
        17372YFDR007, expired on December 27, 2017.


192.   Defendant Peace Bird has failed and refused to make payment for the items of fabric-
        textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles
        it received.


193.   As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG
        has been damaged in the sum of US$196,247.70, together with interest, and the costs,
        disbursements, and attorneys' fees incurred in connection with this action.


## AS AND FOR PLAINTIFF'S THIRTEENTH CAUSE OF ACTION

194.   Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1
        through 19, inclusive, with the same force and effect as if the same were set forth fully at
        length herein.

195.     On June 4, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of polyester fabric-textiles in various colors, described as "DTY BLUSH" ("the Purchased Items").

196.     Among other things, the Sales Contract required the Purchased Items, customer item numbers DXDB004 and DXDB006, to be shipped by ITG and delivered "LDP Mexico City."

197.     The Sales Contract also provided that customer item numbers DXDB004 and DXDB006, be shipped out of any port in China before July 15, 2017.

198.     The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$5.450 per kilogram.

199.     Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG from any port in China.

**Customer Item DXDB004**

200.     On June 30, 2017, shipping container numbered EITU1750127 containing customer item number DXDB004, consisting of 910 Rolls of the purchased fabrics-textiles weighing 19,822.7 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

201.    Bill of Lading Number TDSHSE17060543 (EGLV143785215646), ITG's Commercial Invoice Number 17374YFDR009, in the amount of US$108,033.72, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

202.    Shipping container number EITU1750127 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Customer Item DXDB006**

203.    On June 30, 2017, shipping container numbered MSKU9246984 containing customer item number DXDB006, consisting of 867 Rolls of the purchased fabrics-textiles weighing 19,053.3 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

204.    Bill of Lading Number TDSHSE17060553 (589782846), ITG's Commercial Invoice Number 17375YFDR010, in the amount of US$103,840.49, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

205.    Shipping container number MSKU9246984 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Defendant's Breach**

206.     Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

207.     The time for Peace Bird to make payment to ITG for the purchased items shipped in shipping container numbers EITU1750127 and MSKU9246984, under ITG's Commercial Invoice Numbers 17374YFDR009 and 17375YFDR010, respectively, expired on December 27, 2017.

208.     Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

209.     As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$211,874.21, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S FOURTEENTH CAUSE OF ACTION

210.     Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

211.     On June 4, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of polyester fabric-textiles in various colors, described as "21DTY FELPA SPUN" ("the Purchased Items").

212.    Among other things, the Sales Contract required the Purchased Items, customer item numbers  FS1016 and FS1017, to be shipped by ITG and delivered "LDP Mexico City."

213.    The Sales Contract also provided that customer item numbers FS1016 and FS1017 be shipped out of any port in China before July 15, 2017.

214.    The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$4.130 per kilogram.

215.    Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG from any port in China.

**Customer Item FS1016**

216.    On June 30, 2017, shipping container numbered MRKU4381001, containing customer item number  FS1016, consisting of 666 Rolls of the purchased fabrics-textiles weighing 17,655.1 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

217.    Bill of Lading Number TDSHSE17060540 (589782844), ITG's Commercial Invoice Number 17376YFDR011, in the amount of US$72,915.56, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

218.   Shipping container number MRKU4381001 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Customer Item FS1017**

219.   On June 30, 2017, shipping container numbered GESU5912490, containing customer item number FS1017, consisting of 667 Rolls of the purchased fabrics-textiles weighing 17,765.8 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

220.   Bill of Lading Number TDSHSE17060541 (589782843), ITG's Commercial Invoice Number 17377YFDR012, in the amount of US$73,372.75, along with a Packing List for the shipment of the Purchased  Items, were provided to defendant Peace Bird.

221.   Shipping container number GESU5912490 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Defendant's Breach**

222.   Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

223.   The time for Peace Bird to make payment to ITG for the purchased items shipped in shipping container numbers MRKU4381001 and GESU5912490, under ITG's Commercial

Invoice Numbers 17376YFDR011 and 17377YFDR012, respectively, expired on December 27, 2017.

224.   Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

225.   As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$146,288.31, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S FIFTEENTH CAUSE OF ACTION

226.   Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

227.   On June 4, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of fabrics-textiles in various colors, described as "RAYON SPANDEX" ("the Purchased Items").

228.   Among other things, the Sales Contract required the Purchased Items, customer item numbers  AYR066 and RY1101, to be shipped by ITG and delivered LDP Mexico City."

41

229.    The Sales Contract also provided that customer item numbers  AYR066 and RY1101 were to be shipped out of any port in China before July 15, 2017.

230.    The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$6.410 per kilogram.

231.    Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG from any port in China.

**Customer Item AYR066**

232.    On June 30, 2017, shipping container numbered CAIU9790356,  containing customer item number AYR066, consisting of 948 Rolls of the purchased fabrics-textiles weighing 21,847.7 kilograms, was shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

233.    Bill of Lading Number TDSHSE17060554 (EGLV143785215654), ITG's Commercial Invoice Number 17378YFDR013, in the amount of US$140,043.76, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

234.    Shipping container number CAIU9790356 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Customer Item RY101**

**235.**     On June 30, 2017, shipping container numbered LTIU8007232, containing customer item number RY1101 containing 932 Rolls of the purchased fabrics-textiles, weighing 21,905.1 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

**236.**     Bill of Lading Number TDSHSE17060558 (EGLV143785215671), ITG's Commercial Invoice Number 17379YFDR014, in the amount of US$140,411.69, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

**237.**     Shipping container number LTIU8007232 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Defendant's Breach**

**238.**     Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

**239.**     The time for Peace Bird to make payment to ITG for the purchased items shipped in shipping container numbers CAIU9790356 and LTIU8007232, under ITG's Commercial Invoice Numbers 17378YFDR013 and 17379YFDR014, respectively, expired on December 27, 2017.

240.    Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

241.    As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$280,455.45, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S SIXTEENTH CAUSE OF ACTION

242.    Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

243.    On June 4, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of fabric-textiles in various colors, described as "RAYON SPANDEX" ("the Purchased Items").

244.    Among other things, the Sales Contract required the Purchased Items, customer item number AYR067,  to be shipped by ITG and delivered "LDP Mexico City."

245.    The Sales Contract also provided that customer item number AYR067 be shipped out of any port in China before July 15, 2017.

**246.**   The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$6.470 per kilogram.

**247.**   Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG from any port in China.

## Customer Item AYR067

**248.**   On July 05, 2017, shipping container numbered CAXU 9243983,  containing customer item number AYR067, consisting of 943 Rolls of the purchased fabrics-textiles weighing 21,968.1 kilograms, was shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

**249.**   Bill of Lading Number HLCUNG11707BDKT1 (HLCBON23770), ITG's Commercial Invoice Number 17391YFDR015, in the amount of US$142,133.61, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

**250.**   Shipping container number CAXU 9243983 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

## Defendant's Breach

**251.**   Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

252.    The time for Peace Bird to make payment to ITG for the purchased items shipped in shipping container number CAXU 9243983, under IYG's Commercial Invoice Number 17391YFDR015, expired on January 1, 2018.

253.    Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

254.    As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$142,133.61, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S SEVENTEENTH CAUSE OF ACTION

255.    Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

256.    On June 4, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of fabrics-textiles in various colors, described as "75D BOMBAY" ("the Purchased Items").

257.    Among other things, the Sales Contract required the Purchased Items, customer item numbers  DXB088, DXB089 and BB1028, to be shipped by ITG and delivered "LDP Mexico City."

258.   The Sales Contract also provided that customer item numbers  DXB088, DXB089 and BB1028, were to be shipped out of any port in China before July 15, 2017.

259.   The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$3.960 per kilogram.

260.   Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG from any port in China.

**Customer Item BB1028**

261.   On July 5, 2017, shipping container numbered UASU1037657, containing customer item number BB1028, consisting of 878 Rolls of the purchased fabrics-textiles weighing 17,764.5 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

262.   Bill of Lading Number HLCUNG11707BDKH0 (HLCBON23768), ITG's Commercial Invoice Number 17392YFDR016, in the amount of US$70,347.42, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

263.   Shipping container number UASU1037657 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

47

**Customer Item DXB088**

264.     On July 7, 2017, shipping container numbered MSKU0978351, containing customer item number DXB088, consisting of 865 Rolls of the purchased fabrics-textiles weighing 17,119.70 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

265.     Bill of Lading Number TDSHSE17060759 (589782853), ITG's Commercial Invoice Number 17395YFDR019, in the amount of US$67,794.01, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

266.     Shipping container number MSKU0978351 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Customer Item DXB089**

267.     On July 7, 2017, shipping container numbered MSKU1118992, containing customer item number DXB089, consisting of 872 Rolls of the purchased fabrics-textiles weighing 17,487.6 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

268.  Bill of Lading Number TDSHSE17060760 (589782854), ITG's Commercial Invoice Number 17396YFDR020, in the amount of US$69,250.90, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

269.  Shipping container number MSKU1118992 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Defendant's Breach**

270.  Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

271.  The time for Peace Bird to make payment to ITG for the purchased items shipped in shipping container numbers UASU1037657, MSKU0978351, and MSKU1118992, under ITG's Commercial Invoice Numbers 17392YFDR016, 17395YFDR019, and 17396YFDR020, respectively, expired on January 1, 2018 and January 3, 2018.

272.  Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

273.  As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$207,392.33, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S EIGHTEENTH CAUSE OF ACTION

**274.**     Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1
through 19, inclusive, with the same force and effect as if the same were set forth fully at
length herein.

**275.**     On June 4, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as
Buyer, for the sale of fabric-textiles in various colors, described as "21DTY FELPA SPUN"
("the Purchased Items").

**276.**     Among other things, the Sales Contract required the Purchased Items, customer item
number  FS1018, to be shipped by ITG and delivered "LDP Mexico City."

**277.**     The Sales Contract also provided that customer item number  FS1018 was to be shipped
out of any port in China before July 15, 2017.

**278.**     The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was
US$4.130 per kilogram.

**279.**     Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or
180 days after shipment of the Purchased Items by ITG from any port in China.

**Customer Item FS1018**

**280.**     On July 05, 2017, shipping container numbered TEMU 6706561, containing customer item
number FS1018, consisting of 652 Rolls of the purchased fabrics-textiles weighing 17,474

kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

281.   Bill of Lading Number HLCUNG11707BDKU2 (HLCBON23773), ITG's Commercial Invoice Number 17393YFDR017, in the amount of US$72,167.62, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

282.   Shipping container number TEMU 6706561 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Defendant's Breach**

283.   Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

284.   The time for Peace Bird to make payment to ITG for the purchased items shipped in shipping container number TEMU 6706561, under ITG's Commercial Invoice Number 17393YFDR017, expired on January 1, 2018.

285.   Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

286.    As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$72,167.62, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

## AS AND FOR PLAINTIFF'S NINETEENTH CAUSE OF ACTION

287.    Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

288.    On June 4, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of fabrics-textiles in various colors, described as "POLY SPUN" ("the Purchased Items").

289.    Among other things, the Sales Contract required the Purchased Items, customer item numbers  PS1030 and PS1031, to be shipped by ITG and delivered "LDP Mexico City."

**290.**   The Sales Contract also provided that customer item numbers PS1030 and PS1031, were

to be shipped out of any port in China before July 15, 2017.

**291.**   The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was

US$4.130 per kilogram.

**292.**   Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or

180 days after shipment of the Purchased Items by ITG from any port in China.

**Customer Item PS1030**

**293.**   On July 5, 2017, shipping container numbered TCLU 8614127 containing customer item

number PS1030, consisting of 1090 Rolls of the purchased fabrics-textiles weighing 23,973.2

kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo,

Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant

Peace Bird.

**294.**   Bill of Lading Number HLCUNG11707BDKV4 (HLCBON23771), ITG's Commercial

Invoice Number 17394YFDR018, in the amount of US$99,009.32, along with a Packing List

for the shipment of the Purchased Items, were provided to defendant Peace Bird.

295.     Shipping container number TCLU 8614127 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Customer Item PS1031**

296.     On July 7, 2017, shipping container numbered GLDU0619697, containing customer item number PS1031, consisting of 1074 Rolls of the purchased fabrics-textiles weighing 23,703.4 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

297.     Bill of Lading Number TDSHSE17060762 (589782856), ITG's Commercial Invoice Number 17398YFDR022, in the amount of US$97,895.04, along with a Packing List for the shipment of the Purchased Items, were provided to defendant Peace Bird.

298.     Shipping container number GLDU0619697 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Defendant's Breach**

299.     Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

300.     The time for Peace Bird to make payment to ITG for the purchased items shipped in shipping container numbers TCLU 8614127 and GLDU0619697, under ITG's Commercial

Invoice Numbers 17394YFDR018 and 17398YFDR022, respectively, expired on January 1, 2018 and January 3, 2018.

301.    Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

302.    As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$196,904.36, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

### AS AND FOR PLAINTIFF'S TWENTIETH CAUSE OF ACTION

303.    Plaintiff, ITG, repeats and re-alleges each and every allegation contained in paragraphs 1 through 19, inclusive, with the same force and effect as if the same were set forth fully at length herein.

304.    On June 4, 2017, ITG, as Seller, entered into a written Sales Contract with Peace Bird, as Buyer, for the sale of fabrics-textiles in various colors, described as "JACAR LIVERPOOR" ("the Purchased Items").

305.    Among other things, the Sales Contract required the Purchased Items, customer item number JL1001, to be shipped by ITG and delivered "LDP Mexico City."

**306.**   The Sales Contract also provided that customer item  number  JL1001 was to be shipped by ITG, and delivered  Mexico, out of any port in China before July 15, 2017.

**307.**   The agreed upon Contract Price for the Purchased Items payable by Peace Bird to ITG was US$5.240 per kilogram.

**308.**   Peace Bird agreed to pay to ITG the full amount of the Contract Price "OA 180 days," or 180 days after shipment of the Purchased Items by ITG from any port in China.

**Customer Item JL1001**

**309.**   On July 7, 2017, shipping container numbered MRKU4200042, containing customer item number JL1001, consisting of 565Rolls of the purchased fabrics-textiles weighing 12,970.6 kilograms, were shipped on board from Ningbo, China, to the port of discharge in Manzanillo, Mexico, for transport to the place of delivery at Mexico City, Mexico, on behalf of defendant Peace Bird.

**310.**   Bill of Lading Number TDSHSE17060761 (589782855), ITG's Commercial Invoice Number 17397YFDR021, in the amount of US$67,965.94, along with a Packing List for the shipment of the  Purchased Items, were provided to defendant Peace Bird.

**311.** Shipping container number MRKU4200042 arrived at the designated port of discharge in Manzanillo, Mexico, and the Purchased Items were delivered to, and received by, defendant Peace Bird.

**Defendant's Breach**

**312.** Plaintiff ITG, has, at all times, performed its obligations under the Sales Contract.

**313.** The time for Peace Bird to make payment to ITG for the purchased items shipped in shipping container number MRKU4200042, under ITG's Commercial Invoice Number 17397YFDR021, expired on January 3, 2018.

**314.** Defendant Peace Bird has failed and refused to make payment for the items of fabric-textiles purchased and received by it and is in breach its obligation to pay for the fabrics-textiles it received.

**315.** As a consequence of defendant Peace Bird's breach of the Sales Contract, plaintiff ITG has been damaged in the sum of US$67,965.94, together with interest, and the costs, disbursements, and attorneys' fees incurred in connection with this action.

WHEREFORE, plaintiff, XIAMEN ITG GROUP CORP., LTD.**,** demands judgment in its favor and against, defendant, PEACE BIRD TRADING CORP., as follows**:**

1. on plaintiff's first cause of action, in the amount of $101,822.93, together with interest and costs; and

2. on plaintiff's second cause of action, in the amount of $64,605.22, together with interest and costs; and

**3.** on plaintiff's third cause of action, in the amount of $62,094.08, together with interest and costs; and

**4.** on plaintiff's fourth cause of action, in the amount of $121,029.79, together with interest and costs; and

**5.** on plaintiff's fifth cause of action, in the amount of $62,765.18, together with interest and costs; and

**6.** on plaintiff's sixth cause of action, in the amount of $108,171.84, together with interest and costs; and

**7.** on plaintiff's seventh cause of action, in the amount of $97,672.26, together with interest and costs; and

**8.** on plaintiff's eighth cause of action, in the amount of $156,325.76, together with interest and costs; and

**9.** on plaintiff's ninth cause of action, in the amount of $152,258.82, together with interest and costs; and

**10.** on plaintiff's tenth cause of action, in the amount of $62,897.30, together with interest and costs; and

**11.** on plaintiff's eleventh cause of action, in the amount of $198,591.46, together with interest and costs; and

**12.** on plaintiff's twelfth cause of action, in the amount of $196,247.70, together with interest and costs; and

**13.** on plaintiff's thirteenth cause of action, in the amount of $211,874.21, together with interest and costs; and

**14.** on plaintiff's fourteenth cause of action, in the amount of $146,288.31, together with interest and costs; and

**15.** on plaintiff's fifteenth cause of action, in the amount of $280,455.45, together with interest and costs; and

**16.** on plaintiff's sixteenth cause of action, in the amount of $142,133.61, together with interest and costs; and

17. on plaintiff's seventeenth cause of action, in the amount of $207,392.33, together with interest and costs; and

18. on plaintiff's eighteenth cause of action, in the amount of $72,167.62, together with interest and costs; and

19. on plaintiff's nineteenth cause of action, in the amount of $196,904.36, together with interest and costs; and

20. on plaintiff's twentieth cause of action, in the amount of $67,965.94, together with interest and costs,

together, totaling the sum of US$ 2,709,664.17, plus interest, costs and attorneys' fees, and

such other and further relief as the Court may deem necessary and proper in the premises.

Law Office of John J. Janiec

By: _____

John J. Janiec
261 Madison Avenue, Fl.12
New York, New York 10016
(212) 629 -0027
E-mail: jjaniec@jjjlawoffice.com

To:
Peace Bird Trading Corp.
1441 67th Street, Unit 1B
Brooklyn, New York 11219

# Exhibit 3

date that the requested "detailed" conversations took place, as demanded by this Interrogatory. Absent a recorded record of any conversation it is impossible for a detailed record to be sent any person, and there are no documents stating in detail, the verbal communications between the parties, as the meaning of the term "verbal communications" is understood by plaintiff. The documents provided to defendant and counterclaim-plaintiffs along with plaintiff's initial disclosures and in response to these interrogatories and in response to defendant and counterclaim-plaintiffs' document requests are sufficient to provide the substance of the interactions between the parties.

**INTERROGATORY NO. 7:**

*Indicate whether any Plaintiff or any of its subsidiaries and/or parent companies have been named as a party or offered testimony in any other case, and if so, IDENTIFY the Court and Docket Number; whether any Respondent was a Defendant, Plaintiff or Third Party Defendant in the case; whether any Plaintiff provided testimony in the matter in the form of trial testimony, deposition and/or a certification, and indicate the disposition of the matter.*

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff objects to this Interrogatory to the extent that it seeks information concerning non-parties to this litigation. Plaintiff has not been named as a party or offered testimony in any other case in the United States As used in this Interrogatory the reference to Respondent will be understood to refer to defendant and counterclaim-plaintiffs. With respect to the claims alleged by defendant and the counterclaim-plaintiffs, plaintiff was the Applicant and defendant, Peace Bird Trading Corp., and counterclaim-plaintiffs, Xing Lin (USA) International Corp. and Crystal Vogue, Inc. were the Respondents in arbitration proceedings held before the China International Economic and Trade Arbitration Commission, [2020] Z.G.M.Z.J.C.Z. Nos. 0317,0318 and 316, respectively. Plaintiff appeared through counsel and presented evidence in support of its claims. The submissions to the arbitral tribunal that were made by the parties are detailed in the Arbitral

Award dated March 10, 2020. A true copy of the Arbitral Award as issued in the Chinese language, along with an English language translation accompanies plaintiff's responses to these Interrogatories as XIAMENITG000671A-847.

**INTERROGATORY NO. 8:**

*Identify each person whom you intend to rely upon at trial as an expert witness, including their educational background, work history, professional experience, professional association, or other material upon which you will rely to establish that each of the foregoing named individuals is an expert and the field or area in which each such person is an expert, and attach to your answers to these Interrogatories complete and true copies of all written reports rendered by each expert listed in your answer to these Interrogatories.*

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff objects to this Interrogatory as being premature and as requesting information at this stage of the proceedings that is not in accordance with the Court's Scheduling Order dated January 30, 2020. In any event, plaintiff has not determined the need for expert testimony at this stage of the proceedings.

**INTERROGATORY NO. 9:**

*Set forth the terms of any agreements and/or contracts between the parties.*

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff objects to this Interrogatory as being duplicative in that it calls for information that was previously provided by plaintiff to defendant and counterclaim-plaintiffs on February 14, 2020 along with plaintiff's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)(A), as plaintiff's document numbers XIAMENITG000001-665, which, along with the additional documents provided in response to these Interrogatories and in response to defendant and counterclaim-plaintiffs' First Set of Document Demands To Xiamen ITG Group Corp.. Ltd., dated May 4, 2020, provide copies of what are believed to be all of the written contracts and agreements between the

parties. These documents are referred to in lieu of a written answer, and their review will provide the information requested by this Interrogatory with the burden of obtaining the answer to the question posed in this Interrogatory from the documents provided being substantially the same for either party.

**INTERROGATORY NO. 10:**

*Set forth all contracts and agreements between Plaintiff and any other party to this litigation. Identify the specific parties to each contract and/or agreement and the specific terms of any alleged contract and/or agreement.*

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff objects to this Interrogatory as duplicative to the extent that it seeks information that has already been requested and provided. Plaintiff refers to and incorporates by reference its response to Interrogatory No. 9 which seeks information identical to that requested by defendant and counter-claim plaintiffs in this Interrogatory.

**INTERROGATORY NO. 11:**

*Identify all statutes, laws and or provisions of the Provisions (sic) of the United Nations Conventions (sic) on contracts for the International Sale of Goods which you are relying upon and all facts to support your position.*

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff objects to this Interrogatory at this stage of the proceedings as being premature. However, based upon the fact that plaintiff and defendant and counterclaim-plaintiffs entered into a series of written contracts for the sale of goods, and plaintiff, in each instance, having shipped the ordered goods to defendant and counterclaim-plaintiffs, and in some instances having advanced funds for the benefit of defendant and counterclaim plaintiffs to pay customs fees, duties and taxes, and the goods having been shipped and received by defendant and counterclaim-plaintiffs without

protest, and defendant and counterclaim plaintiffs having guaranteed payment of the funds advanced on their behalf, and the price for the goods ordered and shipped having been agreed upon, and defendant and counterclaim-plaintiffs not having paid any part whatsoever of the purchase price or funds advanced on their behalf by plaintiff, at this stage of the proceedings plaintiff relies upon, at least, Articles 53, 54 and 59 of the United Nations Convention on Contracts for the International Sale of Goods ("CISG"). Plaintiff specifically reserves its right to supplement its answer to this Interrogatory, should additional provisions of the CISG appear to be applicable under the facts and circumstances of this case.

**INTERROGATORY NO. 12 :**

*Set forth in detail the circumstances surrounding and promises made prior to the execution of any agreement or contract between the parties.*

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff objects to the form of this Interrogatory to the extent that it suggests or implies that there were any promises made prior to the execution of the written agreements of the parties which were not included in the parties' agreements. Plaintiff further objects to this Interrogatory as being vague and ambiguous in requesting unspecified detail about unspecified circumstances surrounding any agreement or contract between the parties. In each instance, agreements were exchanged between the parties and presumably reviewed by all parties prior to being executed by the parties to the agreements.

**INTERROGATORY NO. 13 :**

*If you contend that any items were seized and/or confiscated by any governmental agency and or were sold to any non-party, articulate the item number and/or containment (sic) number and the details regarding the date these goods were sold and/or confiscated and the value of the goods that were either sold or confiscated.*

12

*the person or entity to whom or to which such an application was made, and identify all documents submitted to said person or entity in support of the application.*

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiff objects to this Interrogatory on the grounds that it seeks information that is not relevant to the parties' claims or defenses; that it is overbroad and too burdensome to answer; and that it is intended to harass or annoy plaintiff. Subject to the objections raised, plaintiff used its own corporate funds to pay for the duties, taxes and/or customs fees for some of the goods at issue in this case.

**INTERROGATORY NO. 17 :**

*Identify any connection between the People's Republic of China and Plaintiff.*

**RESPONSE TO INTERROGATORY NO. 17:**

Plaintiff objects to this Interrogatory to the extent that it seeks information that is not relevant to either parties' claims or defenses. Nonetheless, plaintiff is a corporation organized and existing under the laws of the People's Republic of China ("PRC"), and its principal offices are located in the PRC. Plaintiff is a state-owned enterprise

**INTERROGATORY NO. 18 :**

*Set forth all arbitration awards issued related to this case and the arbitrator which issued the award and identify all testimony and/or documents submitted to any arbitrator.*

**RESPONSE TO INTERROGATORY NO. 18:**

In lieu of providing a written answer to this Interrogatory, plaintiff is providing along with its answers these Interrogatories true copies of the arbitral awards dated March 10, 2020, in the original Chinese language followed by an English language translation. that were entered following arbitration proceedings that were held before China International Economic and Trade

Arbitration Commission, which involved plaintiff as the Applicant and defendant, Peace Bird Trading Corp., and counterclaim-plaintiffs, Xing Lin (USA) International Corp. and Crystal Vogue, Inc., as Respondents ([2020] Z.G.M.Z.J.C.Z. Nos. 0317,0318 and 316, respectively). (XIAMENITG000671A- 847) The answers requested by this Interrogatory can be determined by a review of these awards, with the burden of obtaining the answers from the documents provided being substantially the same for either party.

**INTERROGATORY NO. 19 :**

*Identify all bank accounts used to pay for the manufacturing, shipment and/or transportation of the goods at issue in this case and the specific amounts used from each account and the purpose that such amounts were expended.*

**RESPONSE TO INTERROGATORY NO. 19:**

Plaintiff objects to this Interrogatory on the grounds that that it seeks information that is not relevant to either parties' claims or defenses, however, see documents numbered XIAMENITG000848-857.

**INTERROGATORY NO. 20 :**

*Set forth in detail each item, containment (sic) number, estimated date of delivery, the date when the goods arrived, the date when all customs, duties and/or taxes were to be paid and the date when all such customs, duties and/or taxes were paid, for the goods at issue in this case and/or all of the goods identified in all the pleadings in this case.*

**RESPONSE TO INTERROGATORY NO. 20:**

In lieu of a written response to this Interrogatory, and in addition to documents previously provided along with plaintiff's initial disclosures, and accompanying plaintiff's responses to these Interrogatories plaintiff is providing in Excel format a file named "Excel Spreadsheet No. 1." Excel Spreadsheet No. 1 provides the information requested by this Interrogatory. with the burden of extracting the answers from the document being provided substantially the same for either party.

# Exhibit 4

shipments at issue in this case. In any event, plaintiff denies that there was any delay on the part of plaintiff in meeting its obligations under the parties' agreements.

**INTERROGATORY NO. 23 :**

*Set forth in detail all goods that were subject to any arbitration and the specific rulings made by any arbitrator related to those goods.*

**RESPONSE TO INTERROGATORY NO. 23:**

In lieu of providing a written answer to this Interrogatory, plaintiff refers to documents being provided along with plaintiff's answers to these Interrogatories as XIAMENITG000671A-847, the said documents being true copies of the arbitral awards dated March 10, 2020, in the original Chinese language followed by an English language translation. that were entered following arbitration proceedings that were held before China International Economic and Trade Arbitration Commission, which involved plaintiff as the Applicant and defendant, Peace Bird Trading Corp., and counterclaim-plaintiffs, Xing Lin (USA) International Corp. and Crystal Vogue, Inc., as Respondents ([2020] Z.G.M.Z.J.C.Z. Nos. 0317,0318 and 316, respectively). The answer to the inquiries made by this Interrogatory can be determined by a review of these awards, with the burden of obtaining the answers from the documents provided being substantially the same for either party.

**INTERROGATORY NO. 24 :**

*Set forth all oral communications with any brokers and/or customs officers related to the goods at issue in this case.*

**RESPONSE TO INTERROGATORY NO. 24:**

# Exhibit 5

# PEACE BIRD TRADING CORP

## CONTRACT

CONTRACT NO: NLF20170218

DATE:FEB.10TH,2017

买方(BUYER): PEACE BIRD TRADING CORP
地址(ADDRESS): 144 E 61TH ST BROOKLYN, NY 11219 USA
联系人(CONTACT PERSON):
税号 (TAX ID):
电话(TEL): (212)

卖方(SELLER): XIAMEN ITG GROUP CORP., LTD
地址(ADDRESS): 8-18F, GUOMAO BUILDING, HUBIN SOUTH ROAD, XIAMEN CITY, CHINA
联系人(CONTACT PERSON): 柏卫民/沈良燕
电话(TEL): +86-13065585718

1、兹经买卖双方同意成交本列商品订立条款如下：
It's agreed by bothe parties to trade the following commodities with the following terms:

| 货物名称Description | Our Referenc No. 8 | Container # | Quantity (KGS) Per Container | Total Quantity (KGS) | Unit Price (USD) | | Amount |
|---|---|---|---|---|---|---|---|
| RAYON SPANDEX, 宽度 (Weight):145克/平方米 (145g/square meter),4.31米/公斤(4.31m/kg) 门幅(Width):160厘米 (160cm), 成分(Composition):96%人棉,4%氨纶 (96%rayon, 4%spandex) | | | 24,000KG/40"HQ | 3 containers of 40"HQ | CIF Mexico City, Mexico Pantaco Via prot of MANZANILLO or LAZARO CARDENAS | | USD |
| IVORY | | CHRY1058-1060 | 2400 | 7200 | $ | 4.400 | $31,680.00 |
| NEGRO | | CHRY1058-1060 | 4800 | 14400 | $ | 4.400 | $63,360.00 |
| MARINO | | CHRY1058-1060 | 1800 | 5400 | $ | 4.400 | $23,760.00 |
| AMARILLO | | CHRY1058-1060 | 1800 | 5400 | $ | 4.400 | $23,760.00 |
| LT MENTA | | CHRY1058-1060 | 1200 | 3600 | $ | 4.400 | $15,840.00 |
| MELON | | CHRY1058-1060 | 1200 | 3600 | $ | 4.400 | $15,840.00 |
| LT OLIVE | | CHRY1058-1060 | 1800 | 5400 | $ | 4.400 | $23,760.00 |
| CORAL STRAWBERRY | | CHRY1058-1060 | 1800 | 5400 | $ | 4.400 | $23,760.00 |
| ARENA | | CHRY1058-1060 | 1200 | 3600 | $ | 4.400 | $15,840.00 |
| ROJO | | CHRY1058-1060 | 1800 | 5400 | $ | 4.400 | $23,760.00 |
| BLANCO | | CHRY1058-1060 | 1200 | 3600 | $ | 4.400 | $15,840.00 |
| DENIM | | CHRY1058-1060 | 600 | 1800 | $ | 4.400 | $7,920.00 |
| REY | | CHRY1058-1060 | 1200 | 3600 | $ | 4.400 | $15,840.00 |
| FIUSHA | | CHRY1058-1060 | 1200 | 3600 | $ | 4.400 | $15,840.00 |
| Total | | | | 72000 | | | $316,800.00 |

2、 交货地点及时间（PLACE & DATE OF DELIVERY）:
CIF MEXICO CITY,MEXICO via port of MANZANLILO or LAZARO CARDENAS.
C#RY1058必须在2017年3月30日前离开中国口岸。C#RY1059/RY1060必须在2017年4月15日前离开中国口岸。
The containers of C#RY1058 must depart form any port of CHINA before Mar.30th,2017.
The containers of C#RY1059/RY1060 must depart form any port of CHINA before Apr.15.th,2017.

3、 运费（FREIGHT CHARGE TERMS）:
预付运费到达目的港：墨西哥城（PREPAID TO MEXICO CITY,MEXICO）

4、 包装（PACKING): 用塑料袋（最好中间有小孔缕空）包装，每卷两侧贴标签。标识的重量和米数按照4.31米/公斤计算。
SEAL WITH PLASTIC AND LABEL FOR BOTH SIDE OF THE EACH ROLL. COUNT 4.31M/KG TO MARK ON THE LABEL.

5、 文件要求（DOCUMENTS REQUIREMENTS):
每个货柜需要单独的商业发票、装箱单和提单
EACH CONTAINER HAS TO COME WITH INDIVIDUAL COMMERCIAL INVOICE,PACKING LIST AND BILL OF LADING.

6、 付款条件（TERMS OF PAYMENT):
OA 180days.

7、 数量(QTY):
72,000 kilograms
ALLOWANCE +/-5% MORE OR LESS OF QUANTITIES

8、 Any claim should be lodged by the buyers within 10days after having discharged the goods at the port of destination.
After garments cutting no claim.

9、 Arbitration: Any dispute, controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity thereof, shall
be settled amicably through negotiation. In case no settlement can be reached between the two parties, the case shall be submitted for
arbitration to China International Economic and Trade Arbitration Commission in Beijing in accordance with its Arbitration Rules. The tribunal
shall be composed of three arbitrators. Each party shall nominate one arbitrator and jointly nominate the third arbitrator who shall act as the
presiding arbitrator. Where the parties have failed to nominate the third arbitrator, the third arbitrator shall be appointed by the chairman
of CIETAC. The presiding arbitrator shall not be a lawyer in practice. The arbitrary award shall be accepted as final and binding upon both
parties. The arbitration fee shall be borne by the losing party.

10、 PI and order after sign no cancellance, if buyer cancel should pay all Seller's cost, if Seller cancel are same.

11、 Notice
Any notice under this agreement must be in writing by registered email as following:
Buyer's: email "fengxd8888@gmail.com"
Seller's: email<mubai52639@aliyun.com>; downy <downy@htg.com.cn>; 964895151@qq.com



买方盖章
BUYER'S SIGNATURE

卖方盖章
SELLER'S SIGNATURE

**ISSUER:**
XIAMEN ITG GROUP CORP., LTD
8-18F, GUOMAO BUILDING, HUBIN SOUTH ROAD,
XIAMEN, CHINA ZIP CODE: 361000
TAX ID: 91350200155008439S
TEL/FAX:0592-5161888

## COMMERCIAL INVOICE

**TO:**
JACE IMPORTACIONES S. A. DE C.V.
CALLE PLAZA BUENAVISTA NUMERO 2 INTERIOR 304-305,
COLONIA BUENAVISTA DELEGACION CUAUHTEMOC, C.P. 06350 MEXICO D.F.
R.F.C. : JIM150410 7KA
ATTN: JOSE SALAZAR +52(55) 1336 3220
JACEIMPORT@OUTLOOK.COM

| INVOICE NO. : 17291YFM08N | DATE: MAY. 23, 2017 |
|---|---|

| S/C NO: | NLF20170218 |
|---|---|

**TRANSPORT DETAILS:**
FROM NINGBO, CHINA TO MEXICO CITY, MEXICO

**TERMS OF PAYMENT:**
OA 180 DAYS

| MARKS & NO. | DESCRIPTION | QUANTITY(KGS) | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | FABRICS-TEXTILE | CIF MEXICO CITY,MEXICO | | |
| C#RY1058 | RAYON SPANDEX WEIGHT: 145GSM WIDTH: 160CM, COMPOSITION: 96%RAYON, 4%SPANDEX | 21966.70KGS | USD4.40/KG | US$96,653.48 |
| | | 21966.70KGS | | US$96,653.48 |

**TOTAL:**
PACKAGE: 985 ROLLS     G.W.:22200 KGS     N.W.: 21966.7 KGS

SAY U.S. DOLLARS NINETY SIX THOUSAND SIX HUNDRED AND FIFTY THREE AND CENTS FORTY EIGHT ONLY

VESSEL NAME &VOYAGE NO.:          721E
DATE OF SHIPMENT:

厦门国贸集团股份有限公司
XIAMEN ITG GROUP CORP., LTD.



# PEACE BIRD TRADING CORP

## CONTRACT

CONTRACT NO: NLF20170220

DATE:FEB.10TH,2017

买方(BUYER): PEACE BIRD TRADING CORP
地址(ADDRESS): 147 13TH ST BROOKLYN, NY 11219 USA
联系人(CONTACT PERSON): YUKUN HUANG
税号 (TAX ID): 26-2852132
电话(TEL): +1(212)967-6846

卖方(SELLER): XIAMEN ITG GROUP CORP., LTD
地址(ADDRESS): 8-18F,GUOMAO BUILDING, HUBIN SOUTH ROAD,
XIAMEN CITY, CHINA
联系人(CONTACT PERSON): 柏卫民/沈良燕
电话(TEL): +86-13065585718

1、 兹经买卖双方同意成交下列商品订立条款如下:
It's agreed by bothe parties to trade the following commodities with the following terms:

| 货物名称Description | Our Reference No. | Container # | Quantity (KGS) Per Container | Total Quantity (KGS) | Unit Price | Amount |
|---|---|---|---|---|---|---|
| RAYON SPANDEX, 克重(Weight):145克/平方米 (145g/square meter), 4.31米/公斤(4.31m/kg) 门幅(Width):160厘米(160cm), 成分(Composition):96%人棉,4%氨纶 (96%rayon,4%spandex) | | | 24,000KG/40"HQ | 4 containers of 40"HQ | CIF Mexico City, Mexico Pantaco Via prot of MANZANLLIO or LAZARO CARDENAS | USD |
| NEGRO | | C#RY1066-1069 | 6000 | 24000 | $ 4.500 | $108,000.00 |
| MARINO | | C#RY1066-1069 | 1800 | 7200 | $ 4.500 | $32,400.00 |
| HUESO | | C#RY1066-1069 | 3000 | 12000 | $ 4.500 | $54,000.00 |
| BLANCO | | C#RY1066-1069 | 1200 | 4800 | $ 4.500 | $21,600.00 |
| ROJO | | C#RY1066-1069 | 2400 | 9600 | $ 4.500 | $43,200.00 |
| REY | | C#RY1066-1069 | 2400 | 9600 | $ 4.500 | $43,200.00 |
| CORAL | | C#RY1066-1069 | 1800 | 7200 | $ 4.500 | $32,400.00 |
| FIUSHA | | C#RY1066-1069 | 1800 | 7200 | $ 4.500 | $32,400.00 |
| JADE | | C#RY1066-1069 | 1200 | 4800 | $ 4.500 | $21,600.00 |
| JASPE PERLA | | C#RY1066-1069 | 1800 | 7200 | $ 4.500 | $32,400.00 |
| JASPE AVENA | | C#RY1066-1069 | 600 | 2400 | $ 4.500 | $10,800.00 |
| Total | | | | 96000 | | $432,000.00 |

2、 交货地点及时间（PLACE & DATE OF DELIVERY）:
CIF MEXICO CITY ,MEXICO via port of MANZANLLIO or LAZARO CARDENAS.
C#RY1066~RY1067必须在2017年4月22日前离开中国口岸。C#RY1068~RY1069必须在2017年04月30日前离开中国口岸。

The containers of CHRY1066-RY1067 must depart form any port of CHINA before Apr.22nd,2017,
The containers of CHRY1068-RY1069 must depart form any port of CHINA before Apr.30th,2017.

3. 运费 （FREIGHT CHARGE TERMS）:
预付运费到达目的港。墨西哥城市 （PREPAID TO MEXICO CITY,MEXICO）

4. 包装 （PACKING）:用塑料袋（最好中间有小孔袋空）包装，每卷两侧贴标签，标识的重量和米数按照4.31米/公斤计算。
SEAL WITH PLASTIC AND LABEL FOR BOTH SIDE OF THE EACH ROLL. COUNT 4.31M/KG TO MARK ON THE LABEL.

5. 文件要求 （DOCUMENTS REQUIREMENTS）:
每个货柜需要单独的商业发票、装箱单和提单
EACH CONTAINER HAS TO COME WITH INDIVIDUAL COMMERCIAL INVOICE,PACKING LIST AND BILL OF LADING.

6. 付款条件 （TERMS OF PAYMENT）:
OA 180days.

7. 数量(QTY):
96,000 kilograms
ALLOWANCE +/-5% MORE OR LESS OF QUANTITIES

8. Any claim should be lodged by the buyers within 10days after having discharged the goods at the port of destination.
After garments cutting no claim.

9. Arbitration: Any dispute, controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity thereof, shall be settled amicably through negotiation. In case no settlement can be reached between the two parties, the case shall be submitted for arbitration to China International Economic and Trade Arbitration Commission in Beijing in accordance with its Arbitration Rules. The tribunal shall be composed of three arbitrators. Each party shall nominate one arbitrator and jointly nominate the third arbitrator who shall act as the presiding arbitrator. Where the parties have failed to nominate the third arbitrator, the third arbitrator shall be appointed by the chairman of CIETAC. The presiding arbitrator shall not be a lawyer in practice. The arbitrary award shall be accepted as final and binding upon both parties. The arbitration fee shall be borne by the losing party.

10. Pl and order after sign no cancellance, if buyer cancel should pay all Seller's cost, if Seller cancel are same.

11. Notice
Any notice under this agreement must be in writing by registered email as following:
Buyer's: email "fengxu88888@gmail.com"
Seller's email: mubai52639<mubai52639@aliyun.com>; downy <downy@litg.com.cn>; 964895151@qq.com

买方签章
BUYER'S SIGNATURE

卖方签章
SELLER'S SIGNATURE

## COMMERCIAL INVOICE

**ISSUER:**
XIAMEN ITG GROUP CORP., LTD
8~18F,GUOMAO BUILDING, HUBIN SOUTH ROAD,
XIAMEN, CHINA ZIP CODE: 361009
TAX ID: 91350200155064139E
TEL/FAX:0592-5161988

**TO:**
JACE IMPORTACIONES S.A. DE C.V.
CALLE PLAZA BUENAVISTA NUMERO 2 INTERIOR 304-305,
COLONIA BUENAVISTA DELEGACION CUAUHTEMOC, C.P. 06350 MEXICO D.F.
R.F.C.: JIM150410 7RA
ATTN: JOSE SALAZAR (52)(55) 4336 3220
JACEIMPORT@OUTLOOK.COM

INVOICE NO. : 17292VFM08P    DATE: MAY. 25, 2017

S/C NO:    NLF20170220

**TRANSPORT DETAILS:**
FROM NINGBO, CHINA TO MEXICO CITY, MEXICO

**TERMS OF PAYMENT:**
OA 180 DAYS

| MARKS & NO. | DESCRIPTION | QUANTITY(KGS) | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | FABRICS-TEXTILE | CIF MEXICO CITY,MEXICO | | |
| C#RY1066 | RAYON SPANDEX WEIGHT:145GSM WIDTH:160CM, COMPOSITION:96%RAYON, 4%SPANDEX | 22041.00KGS | USD4.40/KG | US$96,980.40 |
| | | 22041.00KGS | | US$96,980.40 |

**TOTAL:**    PACKAGE: 1000 ROLLS    G.W.:22400 KGS    N.W.: 22041 KGS

SAY U.S DOLLARS NINETY SIX THOUSAND NINE HUNDRED AND EIGHTY AND CENTS FORTY ONLY

VESSEL NAME &VOYAGE NO. :    SANTA BARBARA  /  721E
DATE OF SHIPMENT:    MAY.26, 2017



厦门国贸集团股份有限公司
XIAMEN ITG GROUP CORP., LTD

# PEACE BIRD TRADING CORP
## CONTRACT

**CONTRACT NO: NLF20170220**

DATE:FEB.10TH,2017

买方(BUYER):　PEACE BIRD TRADING CORP
地址(ADDRESS): 1441 67TH ST BROOKLYN, NY 11219 USA
联系人(CONTACT PERSON): EASTERN H.G.
税号（TAX ID): 26-2852142
电话(TEL):　+1(212)947-4846

卖方(SELLER): XIAMEN ITG GROUP CORP., LTD
地址(ADDRESS): 8-18F,GUOMAO BUILDING, HUBIN SOUTH ROAD, XIAMEN CITY, CHINA
联系人(CONTACT PERSON): 柏卫民/沈良燕
电话(TEL): +86-13065585718

1、兹经买卖双方同意成交下列商品订立条款如下:
It's agreed by bothe parties to trade the following commodities with the following terms:

| 货物名称Description | Our Reference No. | Container # | Quantity (KGS) Per Container | Total Quantity (KGS) | Unit Price | Amount |
|---|---|---|---|---|---|---|
| RAYON SPANDEX, 克重(Weight):145克/平方米 (145g/square meter),4.31米/公斤 (4.31m/kg) 门幅(Width):160厘米(160cm), 成分(Composition):96%人棉, 4%氨纶 (96%rayon, 4%spandex) | | | 24,000KG/40"HQ | 3 containers of 40"HQ | LDP Mexico City, Mexico Pantaco Via prot of MANZANLLIO or LAZARO CARDENAS. | USD |
| NEGRO | | C#RY1067-1069 | 6000 | 18000 | $    6.290 | $113,220.00 |
| MARINO | | C#RY1067-1069 | 1800 | 5400 | $    6.290 | $33,966.00 |
| HUESO | | C#RY1067-1069 | 3000 | 9000 | $    6.290 | $56,610.00 |
| BLANCO | | C#RY1067-1069 | 1200 | 3600 | $    6.290 | $22,644.00 |
| ROJO | | C#RY1067-1069 | 2400 | 7200 | $    6.290 | $45,288.00 |
| REY | | C#RY1067-1069 | 2400 | 7200 | $    6.290 | $45,288.00 |
| CORAL | | C#RY1067-1069 | 1800 | 5400 | $    6.290 | $33,966.00 |
| FIUSHA | | C#RY1067-1069 | 1800 | 5400 | $    6.290 | $33,966.00 |
| JADE | | C#RY1067-1069 | 1200 | 3600 | $    6.290 | $22,644.00 |
| JASPE PERLA | | C#RY1067-1069 | 1800 | 5400 | $    6.290 | $33,966.00 |
| JASPE AVENA | | C#RY1067-1069 | 600 | 1800 | $    6.290 | $11,322.00 |
| Total | | | | 72000 | | $452,880.00 |

2、交货地点及时间（PLACE & DATE OF DELIVERY):
LDP MEXICO CITY ,MEXICO via port of MANZANLLIO or LAZARO CARDENAS.
C#RY1067-RY1069必须在2017年7月15日前离开中国口岸。
The containers of C#RY1067-RY1069 must depart form any port of CHINA before Jul.15th,2017.

3、运费（FREIGHT CHARGE TERMS）:
预付运费到达目的港：墨西哥城。（PREPAID TO MEXICO CITY,MEXICO)
LDP The guest warehouse, customs clearance fee and customs duties are paid by XIAMEN ITG GROUP CORP., LTD

4、包装（PACKING):用塑料袋（最好中间有小孔镂空）包装，每卷两侧贴标签，标明的重量和米数按照4.31米/公斤计算。
SEAL WITH PLASTIC AND LABEL FOR BOTH SIDE OF THE EACH ROLL. COUNT 4.31M/KG TO MARK ON THE LABEL.

5、文件要求（DOCUMENTS REQUIREMENTS）:
每个货柜需要单独的商业发票，装箱单和提单
EACH CONTAINER HAS TO COME WITH INDIVIDUAL COMMERCIAL INVOICE,PACKING LIST AND BILL OF LADING.

6、付款条件（TERMS OF PAYMENT):
OA 180days.

7、数量(QTY):
72,000 kilograms
ALLOWANCE +/-5% MORE OR LESS OF QUANTITIES

8、Any claim should be lodged by the buyers within 10days after having discharged the goods at the port of destination.
After garments cutting no claim.

9、Arbitration: Any dispute, controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity thereof, shall be settled amicably through negotiation. In case no settlement can be reached between the two parties, the case shall be submitted for arbitration to China International Economic and Trade Arbitration Commission in Beijing in accordance with its Arbitration Rules. The tribunal shall be composed of three arbitrators. Each party shall nominate one arbitrator and jointly nominate the third arbitrator who shall act as the presiding arbitrator. Where the parties have failed to nominate the third arbitrator, the third arbitrator shall be appointed by the chairman of CIETAC. The presiding arbitrator shall not be a lawyer in practice. The arbitrary award shall be accepted as final and binding upon both parties. The arbitration fee shall be borne by the losing party.

10、 PI and order after sign no cancellance, if buyer cancel should pay all Seller's cost, if Seller cancel are same.

11、Notice
Any notice under this agreement must be in writing by registered email as following:
Buyer's email "fengxiaobao6@gmail.com"
Seller's email: mub@182639.onaliyun.com>; downy <downy@itg.com.cn>; 964895151@qq.com

买方签章
BUYER'S SIGNATURE

卖方签章
SELLER'S SIGNATURE

| ISSUER: | | | COMMERCIAL INVOICE | | |
|---|---|---|---|---|---|
| XIAMEN ITG GROUP CORP., LTD | | | | | |
| 4-16F, GUOMAO BUILDING, HUBIN SOUTH ROAD, | | | | | |
| XIAMEN, CHINA ZIP CODE: 361000 | | | | | |
| TAX ID: 913502001350054395 | | | | | |
| TEL/FAX:0592-5161888 | | | | | |

**COMMERCIAL INVOICE**

| TO: | | | INVOICE NO. : 17360YFM08AB | DATE: JUL. 4, 2017 |
|---|---|---|---|---|
| PEACE BIRD TRADING CORP. | | | | |
| 1441 67TH ST APT 1B BROOKLYN, NY 11219 | | | | |
| UNITED STATES OF AMERICA | | | | |
| TEL:212 947-4846 | | | S/C NO: | NLF20170220 |
| E-MAIL :FENGXUS88888@GMAIL.COM, | | | | |
| A.BALCAZAR18@HOTMAIL.COM | | | | |
| TAX:26-2852142 | | | | |

| TRANSPORT DETAILS: | TERMS OF PAYMENT: |
|---|---|
| FROM NINGBO, CHINA TO MEXICO CITY, MEXICO | OA 180 DAYS |

| MARKS & NO. | DESCRIPTION | QUANTITY(KGS) | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | FABRICS-TEXTILE | LDP MEXICO CITY,MEXICO | | |
| C#RY1068 | RAYON SPANDEX<br>WEIGHT:145GSM<br>WIDTH:160CM,<br>COMPOSITION:96%RAYON, 4%SPANDEX | 22765.60KGS | USD6.29/KG | US$143,195.62 |
| TOTAL: | | 22765.60KGS | | US$143,195.62 |
| | PACKAGE: 1000 ROLLS | G.W.:23000 KGS | N.W. : 22765.6 KGS | |

SAY U.S. DOLLARS ONE HUNDRED AND FORTY THREE THOUSAND ONE HUNDRED AND NINETY FIVE AND CENTS SIXTY ONLY

VESSEL NAME &VOYAGE NO. :    NORTHERN JUPITER V.004
DATE OF SHIPMENT:    JUL.07, 2017



厦门国贸集团股份有限公司
XIAMEN ITG GROUP CORP., LTD.

王利芳

ISSUER:

XIAMEN ITG GROUP CORP., LTD
V-18F GUOMAO BUILDING, HUBIN SOUTH ROAD,
XIAMEN, CHINA ZIP CODE: 361000
FAX ID: 91350200155095435
TEL/FAX:0592-5161888

TO:

FACE IMPORTACIONES S.A. DE C.V.
CALLE PLAZA BUENAVISTA NUMERO 2 INTERIOR 304-305,
COLONIA BUENAVISTA DELEGACION CUAUHTEMOC, C.P. 06350 MEXICO D.F.
C.F.C.: JIM150410 7KA
ATTN: JOSE SALAZAR +52(55) 4356 3220
FACEIMPORT@OUTLOOK.COM

# COMMERCIAL INVOICE

| INVOICE NO. : 17357YFM08Y | DATE: JUN. 30, 2017 |
|---|---|
| S/C NO: | NLF20170220 |

TRANSPORT DETAILS:

FROM NINGBO, CHINA TO MEXICO CITY, MEXICO

TERMS OF PAYMENT:

OA 180 DAYS

| MARKS & NO. | DESCRIPTION | QUANTITY (KGS) | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | FABRICS-TEXTILE | LDP MEXICO CITY,MEXICO | | |
| C#RY1069 | RAYON SPANDEX WEIGHT:145GSM WIDTH:160CM COMPOSITION:96%RAYON,4%SPANDEX | 22750.00KGS | USD6.29/KG | US$143,097.50 |
| | | 22750.00KGS | | US$143,097.50 |

**TOTAL:**    PACKAGE: 1005 ROLLS      G.W.:23000 KGS       N.W.: 22750 KGS

SAY U.S.DOLLARS ONE HUNDRED AND FORTY THREE THOUSAND NINETY SEVEN AND CENTS FIFTY ONLY

VESSEL NAME &VOYAGE NO. :      CISNES / 727E
DATE OF SHIPMENT:          JUL. 5, 2017



厦门国贸集团股份有限公司
XIAMEN ITG GROUP CORP., LTD.

# PEACE BIRD TRADING CORP
# CONTRACT

**CONTRACT NO: NLF20170514**

DATE:MAY.10TH,2017

买方(BUYER): PEACE BIRD TRADING CORP
地址(ADDRESS): 1441 67TH ST BROOKLYN, NY 11219 USA
联系人(CONTACT PERSON): EASTERN H.G.
税号（TAX ID): 26-2852142
电话(TEL): +1(212)947-4846

卖方(SELLER): XIAMEN ITG GROUP CORP., LTD
地址(ADDRESS): 8-18F,GUOMAO BUILDING, HUBIN SOUTH ROAD, XIAMEN CITY, CHINA
联系人(CONTACT PERSON): 柏卫民/沈良燕
电话(TEL): +86-13065585718

1、兹经买卖双方同意成交下列商品订立条款如下:
　　It's agreed by bothe parties to trade the following commodities with the following terms:

| 货物名称Description | Our Reference No. | Container # | Quantity (KGS) Per Container | Total Quantity (KGS) | Unit Price (USD) | Amount |
|---|---|---|---|---|---|---|
| RAYON SPANDEX, 克重(Weight):160克/平方米 (160g/square meter), 3.91米/公斤 (3.91m/kg) 门幅(Width):160厘米(160cm), 成分(Composition):95%人棉,5%氨纶 (95%rayon, 5%spandex) | | | 40"HQ | 1 containers of 40"HQ | LDP Mexico City, Mexico Pantaco Via prot of MANZANLLIO or LAZARO CARDENAS. | USD |
| AZAFRAN 7511 C | MR | C#AYR055 | 2000 | 2000 | $ 6.620 | 13,240.0 |
| ROSIN 19-0509 TCX | MR | C#AYR055 | 2000 | 2000 | $ 6.620 | 13,240.0 |
| BISTRO GARDEN 19-5408 TCX | MR | C#AYR055 | 2000 | 2000 | $ 6.620 | 13,240.0 |
| DUFFET BAG 19-0415 TCX | MR | C#AYR055 | 2000 | 2000 | $ 6.620 | 13,240.0 |
| FOREST NIGHT 19-0414 TCX | MR | C#AYR055 | 2000 | 2000 | $ 6.620 | 13,240.0 |
| VINO 19-2024 TCX 7644C | MR | C#AYR055 | 3000 | 3000 | $ 6.620 | 19,860.0 |
| GRAPE SHAKE 18-2109 TCX | MR | C#AYR055 | 2000 | 2000 | $ 6.620 | 13,240.0 |
| JESTER TED 19-1862 TCX | MR | C#AYR055 | 4000 | 4000 | $ 6.620 | 26,480.0 |
| PALO DE ROSA 4725 C | MR | C#AYR055 | 3000 | 3000 | $ 6.620 | 19,860.0 |
| Total | | | | 22000 | | 145,640.0 |

2、交货地点及时间（PLACE & DATE OF DELIVERY):
　　LDP MEXICO CITY ,MEXICO via port of MANZANLLIO or LAZARO CARDENAS.
　　C#AYR055必须在2017年6月10日前离开中国口岸。
　　The containers of C#AYR055 must depart form any port of CHINA before Jun.10th,2017.
3、运费（FREIGHT CHARGE TERMS）:
　　预付运费到达目的港: 墨西哥城（PREPAID TO MEXICO CITY,MEXICO）
　　LDP The guest warehouse，customs clearance fee and customs duties are paid by XIAMEN ITG GROUP CORP., LTD
4、包装（PACKING): 用塑料袋（最好中间有小孔镂空）包装，每卷两侧贴标签，标识的重和米数按照3.91米/公斤计算。
　　SEAL WITH PLASTIC AND LABEL FOR BOTH SIDE OF THE EACH ROLL. COUNT 4.31M/KG TO MARK ON THE LABEL.
5、文件要求（DOCUMENTS REQUIREMENTS):
　　每个货柜需要单独的商业发票，装箱单和提单
　　EACH CONTAINER HAS TO COME WITH INDIVIDUAL COMMERCIAL INVOICE,PACKING LIST AND BILL OF LADING.
6、付款条件（TERMS OF PAYMENT):
　　OA 180days.
7、数量(QTY):
　　22,000 kilograms
　　ALLOWANCE +/-5% MORE OR LESS OF QUANTITIES
8、Any claim should be lodged by the buyers within 10days after having discharged the goods at the port of destination.
　　After garments cutting no claim.
9、Arbitration: Any dispute, controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity thereof, shall be settled amicably through negotiation. In case no settlement can be reached between the two parties, the case shall be submitted for arbitration to China International Economic and Trade Arbitration Commission in Beijing in accordance with its Arbitration Rules. The tribunal shall be composed of three arbitrators. Each party shall nominate one arbitrator and jointly nominate the third arbitrator who shall act as the presiding arbitrator. Where the parties have failed to nominate the third arbitrator, the third arbitrator shall be appointed by the chairman of CIETAC. The presiding arbitrator shall not be a lawyer in practice. The arbitrary award shall be accepted as final and binding upon both parties. The arbitration fee shall be borne by the losing party.
10、PI and order after sign no cancellance, if buyer cancel should pay all Seller's cost, if Seller cancel are same.
11、Notice
　　Any notice under this agreement must be in writing by registered email as following:
　　Buyer's email "fonru888@gmail.com"
　　Seller's email: hubal52639 <mhubai52639@aliyun.com>; downy <downy@itg.com.cn>; 964895151@qq.com

买方签章
BUYER'S SIGNATURE

卖方签章
SELLER'S SIGNATURE

**ISSUER:**
XIAMEN ITG GROUP CORP., LTD
1-18F, GUOMAO BUILDING, HUBIN SOUTH ROAD,
XIAMEN, CHINA ZIP CODE: 361000
TAX ID: 913502001550954395
TEL/FAX:0592-5161888

# COMMERCIAL INVOICE

**TO:**
JACE IMPORTACIONES S.A. DE C.V.
CALLE PLAZA BUENAVISTA NUMERO 2 INTERIOR 304 305,
COLONIA BUENAVISTA DELEGACION CUAHTEMOC, C.P. 06350 MEXICO D.F.
R.F.C.: JIM150410 7KA
ATTN: JOSE SALAZAR +52(55) 4336 3220
JACE.IMPORT@OUTLOOK.COM

| INVOICE NO. : 17358YFM08Z | DATE: JUN. 30, 2017 |
|---|---|
| S/C NO: | NLF20170514 |

**TRANSPORT DETAILS:**
FROM NINGBO, CHINA TO MEXICO CITY, MEXICO

**TERMS OF PAYMENT:**
OA 180 DAYS

| MARKS & NO. | DESCRIPTION | QUANTITY (KGS) | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | FABRICS-TEXTILE | LDP MEXICO CITY, MEXICO | | |
| C#AYR055 | RAYON SPANDEX<br>WEIGHT:145GSM<br>WIDTH:160CM<br>COMPOSITION:95%RAYON 5%SPANDEX | 22287.30KGS | USD6.62/KG | US$147,541.93 |
| | | 22287.30KGS | | US$147,511.93 |
| **TOTAL:** | PACKAGE: 995 ROLLS | G.W.:22600 KGS | N.W. : 22287.3 KGS | |

SAY U.S. DOLLARS ONE HUNDRED AND FORTY SEVEN THOUSAND FIVE HUNDRED AND FORTY ONE AND CENTS NINETY ONLY

VESSEL NAME &VOYAGE NO. :       CISNES / 727E
DATE OF SHIPMENT:       JUL. 05, 2017



厦门国贸集团股份有限公司
XIAMEN ITG GROUP CORP., LTD.

王利芳

# PEACE BIRD TRADING CORP
# CONTRACT

**CONTRACT NO: NLF20170517**

DATE:MAY.10TH,2017

买方(BUYER):   PEACE BIRD TRADING CORP
地址(ADDRESS): 1441 67TH ST BROOKLYN, NY 11219 USA
联系人(CONTACT PERSON): EASTERN H.G.
税号（TAX ID): 26-2852142
电话(TEL):  +1(212)947-4846

卖方(SELLER):   XIAMEN ITG GROUP CORP., LTD
地址(ADDRESS): 8-18F,GUOMAO BUILDING, HUBIN SOUTH ROAD, XIAMEN CITY, CHINA
联系人(CONTACT PERSON): 柏卫民/沈良燕
电话(TEL): +86-13065585718

1、兹经买卖双方同意成交下列商品订立条款如下：
It's agreed by bothe parties to trade the following commodities with the following terms:

| 货物名称Description | Our Reference No. | Container # | Quantity (MTS) Per Container | Total Quantity (KGS) | Unit Price (USD) | Amount |
|---|---|---|---|---|---|---|
| RAYON SPANDEX, 克重(Weight):145克/平方米 (145g/square meter),4.31米/公斤 (4.31m/kg) 门幅(Width):160厘米(160cm), 成分(Composition):95%人棉,5%氨纶 (95%rayon, 5%spandex) | | | 40"HQ | 6 containers of 40"HQ | LDP Mexico City, Mexico Pantaco Via prot of MANZANLLIO or LAZARO CARDENAS. | USD |
| NEGRO | | C#AYR058-063 | 20000 | 27842 | $    6.620 | 184,315.5 |
| NAVY BLAZER 19-3923 TCX | | C#AYR058-063 | 10000 | 13921 | $    6.620 | 92,157.8 |
| VINO 19-2024 TCX | | C#AYR058-063 | 11000 | 15313 | $    6.620 | 101,373.5 |
| CHILLY PEPPER 19-1557 TCX | | C#AYR058-063 | 3000 | 4176 | $    6.620 | 27,647.3 |
| ROSIN 19-0509 TCX | | C#AYR058-063 | 11000 | 15313 | $    6.620 | 101,373.5 |
| YELLOW 15-0850 TCX | | C#AYR058-063 | 4000 | 5568 | $    6.620 | 36,863.1 |
| MAUVE | | C#AYR058-063 | 7000 | 9745 | $    6.620 | 64,510.4 |
| AMPHORA | | C#AYR058-063 | 5000 | 6961 | $    6.620 | 46,078.9 |
| NHISPER WHITE 11-0701 TCX | | C#AYR058-063 | 15000 | 20882 | $    6.620 | 138,236.7 |
| SURF THE BEB 19-3952 TCX | | C#AYR058-063 | 3000 | 4176 | $    6.620 | 27,647.3 |
| TEABERRY 18-1856 TCX | | C#AYR058-063 | 3000 | 4176 | $    6.620 | 27,647.3 |
| CABARET 18-2140 TCX | | C#AYR058-063 | 3000 | 4176 | $    6.620 | 27,647.3 |
| Total | | | | 132251 | | 875,498.8 |

2、交货地点及时间（PLACE & DATE OF DELIVERY）:
LDP MEXICO CITY ,MEXICO via port of  MANZANLLIO or LAZARO CARDENAS.
C#AYR058/059/060必须在2017年6月30日前离开中国口岸，C#AYR061/062/063必须在2017年7月30日前离开中国口岸。
The containers of C#AYR058/059/060 must depart form any port of CHINA before Jun.30th,2017.
The containers of C#AYR061/062/063 must depart form any port of CHINA before Jul.30th,2017.
3、运费（FREIGHT CHARGE TERMS）:
预付运费到达目的港：墨西哥城 （PREPAID TO MEXICO CITY,MEXICO）
LDP The guest warehouse，customs clearance fee and customs duties are paid by XIAMEN ITG GROUP CORP., LTD
4、包装（PACKING）:用塑料袋（最好中间有小孔镂空）包装，每卷两侧贴标签，标识的重量和米数按照4.31/公斤计算。
SEAL WITH PLASTIC AND LABEL FOR BOTH SIDE OF THE EACH ROLL. COUNT 4.31M/KG TO MARK ON THE LABEL.
5、文件要求（DOCUMENTS REQUIREMENTS）:
每个货柜需要单独的商业发票、装箱单和提单
EACH CONTAINER HAS TO COME WITH INDIVIDUAL COMMERCIAL INVOICE,PACKING LIST AND BILL OF LADING.
6、付款条件（TERMS OF PAYMENT）:
OA 180days.
7、数量(QTY):
132,251 kilograms
ALLOWANCE +/-5% MORE OR LESS OF QUANTITIES
8、Any claim should be lodged by the buyers within 10days after having discharged the goods at the port of destination.
After garments cutting no claim.
9、Arbitration: Any dispute, controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity thereof, shall be settled amicably through negotiation. In case no settlement can be reached between the two parties, the case shall be submitted for arbitration to China International Economic and Trade Arbitration Commission in Beijing in accordance with its Arbitration Rules. The tribunal shall be composed of three arbitrators. Each party shall nominate one arbitrator and jointly nominate the third arbitrator who shall act as the presiding arbitrator. Where the parties have failed to nominate the third arbitrator, the third arbitrator shall be appointed by the chairman of CIETAC. The presiding arbitrator shall not be a lawyer in practice. The arbitrary award shall be accepted as final and binding upon both parties. The arbitration fee shall be borne by the losing party.
10、PI and order are signed for cancellance. if buyer cancel should pay all Seller's cost. if Seller cancel are same.
11、Notice
Any notice under this agreement must be in writing  by registered email as following:
Buyer's email:
Seller's email: oubai52639 <oubai52639@aliyun.com>；  downy <downy@itg.com.cn>；  964895151@qq.com

买方签章
BUYER'S SIGNATURE

卖方签章
SELLER'S SIGNATURE

ISSUER:
XIAMEN ITG GROUP CORP., LTD
4-18F, GUOMAO BUILDING, HEBIN SOUTH ROAD,
XIAMEN, CHINA ZIP CODE: 361000
TAX ID: 913502001550654395
TEL/FAX:0592-5161888

# COMMERCIAL INVOICE

TO:
FACE IMPORTACIONES S.A. DE C.V.
CALLE PLAZA BUENAVISTA NUMERO 2 INTERIOR 304-305,
COLONIA BUENAVISTA DELEGACION CUAUHTEMOC, C.P. 06350 MEXICO D.F.
R.T.C.: JIM150410 7KA
ATTN: JOSE SALAZAR +52(55) 4336 3220
FACEIMPORT@OUTLOOK.COM

| INVOICE NO.: 17359YFM08AA | DATE: JUN.29, 2017 |
|---|---|
| S/C NO: | NLF20170517 |

TRANSPORT DETAILS:
FROM NINGBO, CHINA TO MEXICO CITY, MEXICO

TERMS OF PAYMENT:
OA 180 DAYS

| MARKS & NO. | DESCRIPTION | QUANTITY(KGS) | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | FABRICS-TEXTILE | LDP MEXICO CITY,MEXICO | | |
| C#AYR058 | RAYON SPANDEX WEIGHT:145GSM WIDTH:160CM COMPOSITION:95%RAYON 5%SPANDEX | 22633.20KGS | USD6.62/KG | US$149,831.78 |
| | | 22633.20KGS | | US$149,831.78 |
| **TOTAL:** | PACKAGE: 1010 ROLLS | G.W.:23000 KGS | | N.W.: 22633.2 KGS |

SAY U.S.DOLLARS ONE HUNDRED AND FORTY NINE THOUSAND EIGHT HUNDRED AND THIRTY ONE AND CENTS EIGHTY ONLY

VESSEL NAME &VOYAGE NO.:        CMA CGM MEKONG / 726E
DATE OF SHIPMENT:               JUL.02, 2017



厦门国贸集团股份有限公司
XIAMEN ITG GROUP CORP., LTD.

## PEACE BIRD TRADING CORP
## CONTRACT

CONTRACT NO: NLF20170520

DATE:MAY 10TH,2017

| 买方(BUYER): | PEACE BIRD TRADING CORP | 卖方(SELLER): | XIAMEN ITG GROUP CORP., LTD |
|---|---|---|---|
| 地址(ADDRESS): | 1441 67TH ST BROOKLYN, NY 11219 USA | 地址(ADDRESS): | 8-18F,GUOMAO BUILDING, HUBIN SOUTH ROAD, XIAMEN CITY, CHINA |
| 联系人(CONTACT PERSON): | EASTERN H.G. | 联系人(CONTACT PERSON): | 柏荣/沈良燕 |
| 号码（FAX ID): | | 电话(TEL) | +86-13065585718 |
| 电话(TEL): | +1(212)947-4846 | | |

1、兹经买卖双方同意成交下列商品订立条款如下：
It's agreed by both parties to trade the following commodities with the following terms

| 货物名称Description | Our Reference No. | Container # | Quantity (KGS) Per Container | Total Quantity (KGS) | Unit Price (USD) | Amount |
|---|---|---|---|---|---|---|
| BROWN SPANDEX, 克重 270 148克/平方米 (The square meter), 4.31米/公斤(4.31m/kg) 宽幅（width: 160厘米(160cm)) 成分（content：88大棉，12氨纶 (88% cotton, 12% spandex) | | | 40'HQ | 1 containers of 40'HQ | LDP Mexico City, Mexico Pantaco Via port of MANZANLIJO or LAZARO CARDENAS | USD |
| NEGRO | | C#RY1096 | 24000 | 24000 | $        6.290 | 150,960.0 |
| Total | | | | 24000 | | 150,960.0 |

2、交货地点及时间（PLACE & DATE OF DELIVERY）：
LDP MEXICO CITY ,MEXICO via port of MANZANLIJO or LAZARO CARDENAS
C#RY1096必须在2017年9月30日从海内东中国启运。
The containers of C#RY1096 must depart form any port of CHINA before Sep.30th,2017.

3、运费（FREIGHT CHARGE TERMS）：
预付运费到达目的港：墨西哥城 （PREPAID TO MEXICO CITY,MEXICO)
LDP The guest warehouse,  customs clearance fee and customs duties are paid by XIAMEN ITG GROUP CORP., LTD

4、包装（PACKING):用塑料套（最好中间有小孔镂空）包装，每卷两侧贴标签，每卷的重量和米数按照4.31米/公斤计算。
SEAL WITH PLASTIC AND LABEL FOR BOTH SIDE OF THE EACH ROLL. COUNT 4.31M/KG TO MARK ON THE LABEL.

5、文件要求（DOCUMENTS REQUIREMENTS):
每个货柜给装单独的商业发票，装箱单和提单
EACH CONTAINER HAS TO COME WITH INDIVIDUAL COMMERCIAL INVOICE,PACKING LIST AND BILL OF LADING.

6、付款条件（TERMS OF PAYMENT):
OA 180days

7、数量(QTY):
24,000 kilograms
ALLOWANCE +/-5% MORE OR LESS OF QUANTITIES

8、Any claim should be lodged by the buyers within 10days after having discharged the goods at the port of destination.
After garments cutting no claim.

9、Arbitration: Any dispute, controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity thereof, shall be settled amicably through negotiation. In case no settlement can be reached between the two parties, the case shall be submitted for arbitration to China International Economic and Trade Arbitration Commission in Beijing in accordance with its Arbitration Rules. The tribunal shall be composed of three arbitrators. Each party shall nominate one arbitrator and jointly nominate the third arbitrator who shall act as the presiding arbitrator. Where the parties have failed to nominate the third arbitrator, the third arbitrator shall be appointed by the chairman of CIETAC. The presiding arbitrator shall not be a lawyer in practice. The arbitrary award shall be accepted as final and binding upon both parties. The arbitration fee shall be borne by the losing party.

10、 PI and order after sign no cancellance, if buyer cancel should pay all Seller's cost. if Seller cancel are same.

11、Notice
Any notice under this agreement must be in writing  by registered email as following:
Buyer               s:        email
Seller's email: muhai13639144499@152639@aliyun.com>;  downy <downy@itg.com.cn>;  864435151@qq.com

买方签字
BUYER'S SIGNATURE

卖方签字
SELLER'S SIGNATURE

LDP

ISSUER:
XIAMEN ITG GROUP CORP., LTD
4-45F,GUOMAO BUILDING, HUBIN SOUTH ROAD,
XIAMEN, CHINA ZIP CODE: 361000
TAX ID: 913502001550054395
TEL-FAX:0592-5161888

TO:
PEACE BIRD TRADING CORP.
1441 67TH ST APT 1B BROOKLYN, NY 11219
UNITED STATES OF AMERICA
TEL:212 947-4846
E-MAIL:FENG.XI88888@GMAIL.COM,
A.BALCAZAR19@HOTMAIL.COM
FAX:26 2352442

# COMMERCIAL INVOICE

INVOICE NO.: 17361YPM08AC    DATE: JUL.3, 2017

S/C NO:    NLF20170520

TRANSPORT DETAILS:
FROM NINGBO, CHINA TO MEXICO CITY,MEXICO

TERMS OF PAYMENT:
OA 180 DAYS

| MARKS & NO. | DESCRIPTION | QUANTITY(KGS) | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | FABRICS-TEXTILE | LDP MEXICO CITY,MEXICO | | |
| C#RY1096 | RAYON SPANDEX WEIGHT:145GSM WIDTH:160CM, COMPOSITION:96%RAYON, 4%SPANDEX | 22959.10KGS | USD6.29/KG | US$144,412.74 |
| TOTAL: | | 22959.10KGS | | US$144,412.74 |

PACKAGE: 971 ROLLS    G.W.:23270 KGS    N.W.: 22959.1 KGS

SAY U.S. DOLLARS ONE HUNDRED AND FORTY FOUR THOUSAND FOUR HUNDRED AND TWELVE AND CENTS SEVENTY ONLY

VESSEL NAME &VOYAGE NO.:    NORTHERN JUPITER V.004
DATE OF SHIPMENT:    JUL.07, 2017



# PEACE BIRD TRADING CORP
## CONTRACT

**CONTRACT NO: NLF20170706**

DATE:MAY.10TH,2017

买方(BUYER):　PEACE BIRD TRADING CORP
地址(ADDRESS): 1441 67TH ST BROOKLYN, NY 11219 USA
联系人(CONTACT PERSON): EASTERN H.G.
税号（TAX ID）：　26-2852142
电话(TEL):　　+1(212)947-4846

卖方(SELLER): XIAMEN ITG GROUP CORP., LTD
地址(ADDRESS): 8-18F,GUOMAO BUILDING, HUBIN SOUTH ROAD, XIAMEN CITY, CHINA
联系人(CONTACT PERSON): 柏卫民/沈良燕
0 电话(TEL):+86-13065585718

1、兹经买卖双方同意成交下列商品订立条款如下：
　　It's agreed by bothe parties to trade the following commodities with the following terms:

| 货物名称Description | Our Reference No. | Container # | Quantity (KGS) Per Container | Total Quantity (KGS) | Unit Price (USD) | Amount |
|---|---|---|---|---|---|---|
| RAYON SPANDEX, 克重(Weight)：145克/平方米 (145g/square meter), 4.31米/公斤(4.31m/kg) 门幅(Width)：160厘米(160cm), 成分(Composition)：95%人棉, 4%氨纶 (95%rayon, 5%spandex) | | | 40"HQ | 1 containers of 40"HQ | LDP Mexico City, Mexico Pantaco Via prot of MANZANLLIO or LAZARO CARDENAS. | USD |
| 具体颜色及数量待定 | | C#AYR068 | 24000 | 24000 | $    6.290 | 150,960.0 |
| Total | | | | 24000 | | 150,960.0 |

2、交货地点及时间（PLACE & DATE OF DELIVERY）:
　　LDP MEXICO CITY ,MEXICO via port of  MANZANLLIO or LAZARO CARDENAS.
　　C#AYR068必须在2017年9月30日前离开中国口岸。
　　The containers of C#RY1096 must depart form any port of CHINA before Sep.30th,2017.
3、运费（FREIGHT CHARGE TERMS）:
　　预付运费到达目的港：墨西哥城（PREPAID TO MEXICO CITY,MEXICO）
　　LDP The guest warehouse,  customs clearance fee and customs duties are paid by XIAMEN ITG GROUP CORP., LTD
4、包装（PACKING）:用塑料袋（最好中间有小孔镂空）包装，每卷两侧贴标签，标识的重量和米数按照4.31米/公斤计算。
　　SEAL WITH PLASTIC AND LABEL FOR BOTH SIDE OF THE EACH ROLL. COUNT 4.31M/KG TO MARK ON THE LABEL.
5、文件要求（DOCUMENTS REQUIREMENTS）:
　　每个货柜需要单独的商业发票，装箱单和提单
　　EACH CONTAINER HAS TO COME WITH INDIVIDUAL COMMERCIAL INVOICE,PACKING LIST AND BILL OF LADING.
6、付款条件（TERMS OF PAYMENT）:
　　OA 180days.
7、数量(QTY):
　　24,000 kilograms
　　ALLOWANCE +/-5% MORE OR LESS OF QUANTITIES
8、Any claim should be lodged by the buyers within 10days after having discharged the goods at the port of destination.
　　After garments cutting no claim.
9、Arbitration: Any dispute, controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity thereof, shall
　　be settled amicably through negotiation. In case no settlement can be reached between the two parties, the case shall be submitted for
　　arbitration to China International Economic and Trade Arbitration Commission in Beijing in accordance with its Arbitration Rules. The tribunal
　　shall be composed of three arbitrators. Each party shall nominate one arbitrator and jointly nominate the third arbitrator who shall act as the
　　presiding arbitrator. Where the parties have failed to nominate the third arbitrator, the third arbitrator shall be appointed by the chairman
　　of CIETAC. The presiding arbitrator shall not be a lawyer in practice. The arbitrary award shall be accepted as final and binding upon both
　　parties. The arbitration fee shall be borne by the losing party.
10、PI and order after sign no cancellance, if buyer cancel should pay all Seller's cost, if Seller cancel are same.
11、Notice
　　Any notice under this agreement must be in writing  by registered email as following:
　　Buyer's: email
　　Seller's: email: mubai52639 <mubai52639@aliyun.com>; downy <downy@itg.com.cn>; 964895151@qq.com

买方签章
BUYER'S SIGNATURE

卖方签章
SELLER'S SIGNATURE

ISSUER:

XIAMEN ITG GROUP CORP., LTD

5-18F, GUOMAO BUILDING, HUBIN SOUTH ROAD,

XIAMEN, CHINA ZIP CODE: 361000

AN ID: 913502001550054395

TEL-FAX:0592 5161888

# COMMERCIAL INVOICE

TO:

PEACE BIRD TRADING CORP.

441 67TH ST APT 1B BROOKLYN, NY 11219

UNITED STATES OF AMERICA

TEL:212-947-4846

E-MAIL:FENGMEI888888@MAIL.COM,

C.BALCAZAR486@HOTMAIL.COM,

FAX:26-2852442

| INVOICE NO. : 17364YPM08AF | DATE: JUL. 11, 2017 |
|---|---|
| S/C NO: | MLF20170706 |

TRANSPORT DETAILS:

FROM NINGBO, CHINA TO MEXICO CITY, MEXICO

TERMS OF PAYMENT:

OA 180 DAYS

| MARKS & NO. | DESCRIPTION | QUANTITY (KGS) | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | FABRICS-TEXTILE | LDP MEXICO CITY, MEXICO | | |
| C#AYRO68 | RAYON SPANDEX WEIGHT:145GSM WIDTH:160CM, COMPOSITION:96%RAYON, 4%SPANDEX | 22431.70KGS | USD6.29/KG | US$141,095.39 |
| **TOTAL:** | | 22431.70KGS | | US$141,095.39 |

PACKAGE: 998 ROLLS

G.W.:22700 KGS          N.W. : 22431.7 KGS

SAY U.S. DOLLARS ONE HUNDRED AND FORTY ONE THOUSAND NINETY FIVE AND CENTS FORTY ONLY

VESSEL NAME &VOYAGE NO. :     SAN FELIPE  V.728E

DATE OF SHIPMENT:              JUL. 14, 2017



厦门国贸集团股份有限公司

XIAMEN ITG GROUP CORP., LTD.

# PEACE BIRD TRADING CORP
# CONTRACT

**CONTRACT NO: NLF20170620**

DATE:JUN.25TH,2017

买方(BUYER): PEACE BIRD TRADING CORP
地址(ADDRESS): 1441 67TH ST BROOKLYN,
NY 11219 USA

电话(TEL): +1(646)919-6559

卖方(SELL)XIAMEN ITG GROUP CORP., LTD
地址(ADDI 8-18F,GUOMAO BUILDING, HUBIN SOUTH ROAD,
XIAMEN CITY, CHINA

联系人(CONTACT PERSON): 柏卫民/沈良燕
电话(TEL): +86-13065585718

1、兹经买卖双方同意成交下列商品订立条款如下:
It's agreed by bothe parties to trade the following commodities with the following terms:

| 货物名称Description | Our Reference No. | Container # | Quantity (MTS) | Total Quantity (KGS) | Unit Price (USD) | Amount |
|---|---|---|---|---|---|---|
| RAYON SPANDEX, 克重(Weight):145克/平方米 (145g/square meter), 4.31克/公斤 (4.31m/kg) 门幅(Width):160厘米(160cm), 成分(Composition):96%人棉,4%氨纶 | | | 40"HQ | 6 containers of 40"HQ | LDP Mexico City, Mexico Pantaco via prot of MANZANLLIO or LAZARO CARDENAS. USD | |
| HEARTS 9006/BLANCO 19-3920 TCX | MIRO | C#AYR069-P | 8800 | 2042 | $ 7.700 | 15,721.6 |
| HEARTS 9006/HUESO 19-1725 TCX | MIRO | C#AYR069-P | 8800 | 2042 | $ 7.700 | 15,721.6 |
| STARS 9006/BLANCO 19-4008 TCX | MIRO | C#AYR069-P | 8800 | 2042 | $ 7.700 | 15,721.6 |
| STARS 9006/19-408 TCX SEGUN MUESTRA | MIRO | C#AYR069-P | 8800 | 2042 | $ 7.700 | 15,721.6 |
| BIRDS 9006/19-4008 TCX BLANCO | MIRO | C#AYR069-P | 8800 | 2042 | $ 7.700 | 15,721.6 |
| BIRDS 9006/BLANCO 16-1511 TCX | MIRO | C#AYR069-P | 8800 | 2042 | $ 7.700 | 15,721.6 |
| IVORY FLOWERS 9010 | MIRO | C#AYR069-P | 6200 | 1439 | $ 7.700 | 11,076.6 |
| BLACK FLOWERS 9010 | MIRO | C#AYR069-P | 6200 | 1439 | $ 7.700 | 11,076.6 |
| BLANCO SOLID | MIRO | C#AYR069-P | 8000 | 1856 | $ 7.700 | 14,292.3 |
| GRIS CLARO JASPE SOLID | MIRO | C#AYR069-P | 6000 | 1392 | $ 7.700 | 10,719.3 |
| MARINO SOLID | MIRO | C#AYR069-P | 2000 | 464 | $ 7.700 | 3,573.1 |
| NEGRO SOLID | MIRO | C#AYR069-P | 3000 | 696 | $ 7.700 | 5,359.6 |
| Total | | | | 19538 | | 150,426.9 |

2、交货地点及时间（PLACE & DATE OF DELIVERY）:
LDP MEXICO CITY ,MEXICO via port of MANZANLLIO or LAZARO CARDENAS.
C#AYR069必须在2017年7月20日前离开中国口岸.
The containers of C#AYR069 must depart form any port of CHINA before Jul.20th,2017.
3、运费（FREIGHT CHARGE TERMS）:
预付运费到达目的港: 墨西哥城 （PREPAID TO MEXICO CITY,MEXICO）
LDP The guest warehouse，customs clearance fee and customs duties are paid by XIAMEN ITG GROUP CORP., LTD
4、包装（PACKING）:用塑料袋（最好中间有小孔镂空）包装，每卷两侧贴标签，标识的重量和米数按照4.31米/公斤计算。
SEAL WITH PLASTIC AND LABEL FOR BOTH SIDE OF THE EACH ROLL. COUNT 4.31M/KG TO MARK ON THE LABEL.
5、文件要求（DOCUMENTS REQUIREMENTS）:
每个货柜需要单独的商业发票，装箱单和提单
EACH CONTAINER HAS TO COME WITH INDIVIDUAL COMMERCIAL INVOICE,PACKING LIST AND BILL OF LADING.
6、付款条件（TERMS OF PAYMENT）:
OA 180days.
7、数量(QTY):
132,251 kilograms
ALLOWANCE +/-5% MORE OR LESS OF QUANTITIES
8、Any claim should be lodged by the buyers within 10days after having discharged the goods at the port of destination.
After garments cutting no claim.
9、Arbitration: Any dispute, controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity
be settled amicably through negotiation. In case no settlement can be reached between the two parties, the case shall be submitted
arbitration to China International Economic and Trade Arbitration Commission in Beijing in accordance with its Arbitration Rules. The
shall be composed of three arbitrators. Each party shall nominate one arbitrator and jointly nominate the third arbitrator who shall act
presiding arbitrator. Where the parties have failed to nominate the third arbitrator, the third arbitrator shall be appointed by the
of CIETAC. The presiding arbitrator shall not be a lawyer in practice. The arbitrary award shall be accepted as final and binding upon
parties. The arbitration fee shall be borne by the losing party.
10、 PI and order after sign no cancellance, if buyer cancel should pay all Seller's cost, if Seller cancel are same.
11、 Notice:
Any notice under this agreement must be in writing by registered email as following:
Buyer's email "fenxu08888@gmail.com"
Seller's email: mubai52639 <mubai52639@aliyun.com>; downy <downy@itg.com.cn>; 964895151@qq.com

买方签章
BUYER'S SIGNATURE

卖方签章
SELLER'S SIGNATURE

**ISSUER:**
XIAMEN ITG GROUP CORP., LTD
8 18F, GUOMAO BUILDING, HUBIN SOUTH ROAD,
XIAMEN, CHINA ZIP CODE: 361000
TAX ID: 91350200155G051395
TEL/FAX:0592-5161888

# COMMERCIAL INVOICE

**TO:**
PEACE BIRD TRADING CORP.
1441 67TH ST APT 1B BROOKLYN, NY 11219
UNITED STATES OF AMERICA
TEL:212 947 4846
E-MAIL:FENGXU838888GMAIL.COM.
A.BJLAZARI8@HOTMAIL.COM
FAX:26-2852142

| INVOICE NO. : 17457YFM99AM08AG | DATE: JUL. 23, 2017 |
|---|---|

S/C NO:  NLF20170706&NLF20170620

**TRANSPORT DETAILS:**
FROM NINGBO, CHINA TO LAZARO CARDENAS, MEXICO

**TERMS OF PAYMENT:**
OA 180 DAYS

| MARKS & NO. | DESCRIPTION | QUANTITY(KGS) | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | FABRICS-TEXTILE | LDP LAZARO CARDENAS,MEXICO | | |
| C#AYR069-P | RAYON SPANDEX<br>WEIGHT:145GSM<br>WIDTH:160CM,<br>COMPOSITION:96%RAYON, 4%SPANDEX | 15966.90KGS | USD7.70/KG | US$122,945.13 |
| C#WD001-1 | WOOL DOBBY<br>WEIGHT:110GSM<br>WIDTH:150CM,<br>COMPOSITION:100%POLYESTER | 32120.70MTS | USD1.43/M | US$45,932.60 |

**TOTAL:** PACKAGE: 994 ROLLS    G.W.:21500 KGS    N.W.:21266.9 KGS

US$168,877.73

SAY U.S. DOLLARS ONE HUNDRED AND SIXTY EIGHT THOUSAND EIGHT HUNDRED AND SEVENTY SEVEN AND CENTS SEVENTY ONLY

VESSEL NAME &VOYAGE NO. :    EVER UNIFIC 0221/129E
DATE OF SHIPMENT:    JUL. 27, 2017



厦门国贸集团股份有限公司
XIAMEN ITG GROUP CORP., LTD
王利芳

# Exhibit 6

Article 26 Nomination or Appointment of Arbitrator

1. CIETAC maintains a Panel of Arbitrators which uniformly applies to itself and all its sub-commissions/arbitration centers. The parties shall nominate arbitrators from the Panel of Arbitrators provided by CIETAC.

2. Where the parties have agreed to nominate arbitrators from outside CIETAC's Panel of Arbitrators, an arbitrator so nominated by the parties or nominated according to the agreement of the parties may act as arbitrator subject to the confirmation by the Chairman of CIETAC.

Article 27 Three-Arbitrator Tribunal

1. Within fifteen (15) days from the date of receipt of the Notice of Arbitration, the Claimant and the Respondent shall each nominate, or entrust the Chairman of CIETAC to appoint, an arbitrator, failing which the arbitrator shall be appointed by the Chairman of CIETAC.

2. Within fifteen (15) days from the date of the Respondent's receipt of the Notice of Arbitration, the parties shall jointly nominate, or entrust the Chairman of CIETAC to appoint, the third arbitrator, who shall act as the presiding arbitrator.

3. The parties may each recommend one to five arbitrators as candidates for the presiding arbitrator and shall each submit a list of recommended candidates within the time period specified in the preceding Paragraph 2. Where there is only one common candidate on the lists, such candidate shall be the presiding arbitrator jointly nominated by the parties. Where there is more than one common candidate on the lists, the Chairman of CIETAC shall choose the presiding arbitrator from among the common candidates having regard to the circumstances of the case, and he/she shall act as the presiding arbitrator jointly nominated by the parties. Where there is no common candidate on the lists, the presiding arbitrator shall be appointed by the Chairman of CIETAC.

4. Where the parties have failed to jointly nominate the presiding arbitrator according to the above provisions, the presiding arbitrator shall be appointed by the Chairman of CIETAC.

Article 28 Sole-Arbitrator Tribunal

Where the arbitral tribunal is composed of one arbitrator, the sole arbitrator shall be nominated pursuant to the procedures stipulated in Paragraphs 2, 3 and 4 of Article 27 of these Rules.

Article 29 Multiple-Party Tribunal

1. Where there are two or more Claimants and/or Respondents in an arbitration case, the Claimant side and/or the Respondent side, following discussion, shall each jointly nominate or jointly entrust the Chairman of CIETAC to appoint one arbitrator.

2. The presiding arbitrator or the sole arbitrator shall be nominated in accordance with the procedures stipulated in Paragraphs 2, 3 and 4 of Article 27 of these Rules. When making such nomination pursuant to Paragraph 3 of Article 27 of these Rules, the Claimant side and/or the Respondent side, following discussion, shall each submit a list of their jointly agreed candidates.

3. Where either the Claimant side or the Respondent side fails to jointly nominate or jointly entrust the Chairman of CIETAC to appoint one arbitrator within fifteen (15) days from the date of its receipt of the Notice of Arbitration, the Chairman of CIETAC shall appoint all three members of the arbitral tribunal and designate one of them to act as the presiding arbitrator.

# Exhibit 7

# 裁 决 书

## Arbitral Award



## 中国国际经济贸易仲裁委员会
### CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

# 中国国际经济贸易仲裁委员会

# 裁 决 书

申　请　人：厦门国贸集团股份有限公司

地　　　址：中国福建省厦门市思明区湖滨南路国贸大厦

　　　　　　18层

仲裁代理人：刘鑫、江纯静 厦门国贸集团股份有限公司

被申请人：PEACE BIRD TRADING CORP

地　　　址：1441 67TH ST APT 1B BROOKLYN,

　　　　　　NY11219 UNITED STATES OF AMEIRICA

仲裁代理人：WU Wen Yi （吴文艺）

北　京

二〇二〇年三月十日

# 裁　决　书

〔2020〕中国贸仲京裁字第 0317 号

中国国际经济贸易仲裁委员会（以下简称"仲裁委员会"）根据申请人厦门国贸集团股份有限公司（以下简称"申请人"）与被申请人 PEACE BIRD TRADING CORP（以下简称"被申请人"）于 2017 年 2 月 10 日签订的 NLF20170218 号 "PEACE BIRD TRADING CORP CONTRACT"、NLF20170220-1 号 "PEACE BIRD TRADING CORP CONTRACT"、NLF20170220-2 号 "PEACE BIRD TRADING CORP CONTRACT"，于 2017 年 5 月 10 日签订的 NLF20170514 号 "PEACE BIRD TRADING CORP CONTRACT"、NLF20170517 号 "PEACE BIRD TRADING CORP CONTRACT"、NLF20170520 号 "PEACE BIRD TRADING CORP CONTRACT"、NLF20170706 号 "PEACE BIRD TRADING CORP CONTRACT"，于 2017 年 6 月 25 日签订的 NLF20170620 号 "PEACE BIRD TRADING CORP CONTRACT" 中仲裁条款的约定，以及申请人于 2018 年 11 月 22 日向仲裁委员会提交的书面仲裁申请，受理了本案。本案案件编号为 G20181782。

本案仲裁程序适用自 2015 年 1 月 1 日起施行的《中国国际经济贸易仲裁委员会仲裁规则》（以下简称"《仲裁规则》"）。

1

2019 年 1 月 2 日，仲裁委员会仲裁院（以下简称"仲裁院"）按照申请人在仲裁申请书中提供的地址，以特快专递的方式分别向双方当事人寄送了本案仲裁通知、《仲裁规则》和《仲裁员名册》，同时向被申请人寄送了申请人提交的仲裁申请书及其所附证据材料。

申请人选定唐功远先生担任本案仲裁员。由于被申请人未在规定期限内选定或委托仲裁委员会主任指定仲裁员，仲裁委员会主任根据《仲裁规则》之规定指定刘净女士担任本案仲裁员。由于双方未在规定期限内共同选定或共同委托仲裁委员会主任指定首席仲裁员，仲裁委员会主任根据《仲裁规则》之规定指定周晓燕女士担任本案首席仲裁员。在签署了接受指定《声明书》后，上述三位仲裁员于 2019 年 4 月 16 日组成仲裁庭，共同审理本案。

仲裁庭经商仲裁院决定于 2019 年 5 月 29 日在北京对本案进行开庭审理。2019 年 4 月 16 日，仲裁院以特快专递的方式向双方当事人分别寄送了本案组庭通知及所附本案仲裁员签署的接受指定《声明书》和开庭通知。

2019 年 5 月 29 日，仲裁庭在北京如期对本案进行了开庭审理。双方当事人均委托代理人参加了庭审。庭审前，申请人向仲裁庭提交了落款日期为 2019 年 5 月 1 日的"证据清单"及其所附证据材料，被申请人提交了其单方制作的表格，仲裁院当庭将双方当事人的上述文件进行了互转。庭审中，申请人

陈述了其仲裁请求及所依据的事实和理由，被申请人进行了答辩，申请人出示了相关证据的原件，被申请人进行了质证，双方当事人就事实和法律问题进行了辩论，并回答了仲裁庭的提问。

2019 年 7 月 1 日，申请人提交了"说明函""代理词"、落款日期为 2019 年 6 月 18 日的"证据清单"及其所附证据材料。后，仲裁院向被申请人转寄了申请人提交的上述材料。

2020 年 2 月 19 日，申请人提交了"变更仲裁请求说明函"及附件。2020 年 2 月 25 日，仲裁院将上述材料转寄被申请人，并通知双方当事人，仲裁庭已决定受理申请人上述"变更仲裁请求说明函"中变更的仲裁请求，并请被申请人于规定期限内答辩。在上述规定期限内，被申请人未提交书面答辩。

基于本案仲裁程序进行的需要，经仲裁庭申请，仲裁院院长同意并决定将本案裁决作出的期限延长至 2020 年 3 月 17 日。

有关本案的所有书面通知和文件均已由仲裁院按照《仲裁规则》的规定有效送达双方当事人。

本案现已审理终结，仲裁庭根据双方当事人提交的现有书面文件以及庭审所查明的事实，经合议，作出本裁决。

现将本案案情、仲裁庭意见和裁决结果分述如下：

# 一、 案 情

（一） 申请人的仲裁请求及所依据的事实和理由

申请人与被申请人于 2017 年 2 月 10 日签订编号 NFL20170218、NFL20170220（共两份，以 NFL20170220-1、NFL20170220-2、以示区别）三份《PEACE BIRD TRADING CORP ONTRACT》，于 2017 年 5 月 10 日签订编号 NFL20170514、NFL20170517、NFL20170520、NFL20170706 四份《PEACE BIRD TRADING CORP ONTRACT》，于 2017 年 6 月 25 日签订编号 NFL20170620《PEACE BIRD TRADING CORP ONTRACT》（前述合同合计共八份）。合同约定由被申请人向申请人采购布料，申请人按照合同约定将前述讼争合同项下货物如期交付被申请人，然被申请人拒不付款。各合同具体条款及履行情况如下：

1. 编号 NFL20170218 合同条款及履行情况

合同约定，被申请人向申请人采购布料合计数量 72,000KGS，总金额 316,800 美元，交货地点 CIF MEXICO,付款方式为 OA 180days(货物起运后 180 天内付款)。

合同签订后，申请人将合同项下货物委托船公司 CCNI 运输。2017 年 5 月 31 日，被申请人向申请人申请提单电放，同时向申请人出具付款保证函，保证对电放提单项下的货款于货物装运后 180 天付款。2017 年 5 月 17 日，船公司 CCNI 向申请人出具电放提单，提单显示货物已经装船。2017 年 6 月 9 日，

4

申请人通过邮箱 <964895151@qq.com>向被申请人指定联系人 FENG XU 邮箱<FENGXU88888@GMAIL.COM>发送电放提单。货物于 2017 年 6 月 18 日到达目的港，被申请人凭借电放提单将货物提走。

根据合同约定，被申请人应于 2017 年 11 月 24 日前付清前述合同项下款项，经申请人多次催告，被申请人仍拒不付款。前述合同项下货款本金合计 96,653.48 美元。

2. 编号 NFL20170220-1 合同条款及履行情况

合同约定，被申请人向申请人采购布料合计数量 96,000KGS，总金额 432,000 美元，交货地点 CIF MEXICO,付款方式为 OA 180days(货物起运后 180 天内付款)。

合同签订后，申请人将合同项下货物委托船公司 CCNI 运输。2017 年 5 月 31 日，被申请人向申请人申请提单电放，同时向申请人出具付款保证函，保证对电放提单项下的货款于货物装运后 180 天付款。2017 年 5 月 17 日，船公司 CCNI 向申请人出具电放提单，提单显示货物已经装船。2017 年 6 月 9 日，申请人通过邮箱 <964895151@qq.com>向被申请人指定联系人 FENG XU 邮箱<FENGXU88888@GMAIL.COM>发送电放提单。货物于 2017 年 6 月 18 日到达目的港，被申请人凭借电放提单将货物提走。

根据合同约定，被申请人应于 2017 年 11 月 24 日前付清

前述合同项下款项，经申请人多次催告，被申请人仍拒不付款。前述合同项下货款本金合计96,980.4美元。

3. 编号NFL20170220-2合同条款及履行情况

合同约定，被申请人向申请人采购布料合计数量72,000KGS，总金额452,880美元，交货地点及时间LDP MEXICO（完税交货），付款方式为OA 180days（货物起运后180天内付款）。

合同签订后，申请人将合同项下货物分两批次委托船公司HAPAG-LLOYD/BVL运输。2017年7月4日，被申请人向申请人申请编号HLCBON23769提单电放，同时向申请人出具付款保证函，保证对电放提单项下的货款于货物装运后180天付款。2017年7月5日，船公司HAPAG-LLOYD向申请人出具提单，提单显示货物已经装船。2017年7月21日，申请人通过邮箱<964895151@qq.com>向被申请人指定联系人FENG XU邮箱<FENGXU88888@GMAIL.COM>发送提单扫描件。货物于2017年7月29日到达目的港，被申请人凭借提单扫描件将货物提走。

2017年7月10日，被申请人向申请人出具付款保证函，保证对编号ZYA7NGB020295提单项下的货款于货物装运后180天付款。2017年7月10日，船公司BVL向申请人出具正本提单，提单显示货物已经装船。2017年7月24日，申请人通过DHL快递（快递单号763 4841 502）向被申请人指定地址发送

6

提单正本。货物于 2017 年 7 月 31 日到达目的港，被申请人凭借提单将货物提走。

根据合同约定，被申请人应于 2018 年 1 月 6 日前付清前述合同项下款项，经申请人多次催告，被申请人仍拒不付款。前述合同项下货款本金合计 286,293.12 美元。

4. 编号 NFL20170514 合同条款及履行情况

合同约定，被申请人向申请人采购布料合计数量 22,000KGS，总金额 145,640 美元，交货地点 LDP MEXICO,付款方式为 OA 180days (货到后 180 天内付款)。

合同签订后，申请人将合同项下货物委托船公司 HAPAG-LLOYD 运输。2017 年 7 月 4 日，被申请人向申请人申请提单电放，同时向申请人出具付款保证函，保证对电放提单项下的货款于货物装运后 180 天付款。2017 年 6 月 26 日,船公司 HAPAG-LLOYD 向申请人出具正本提单，提单显示货物已经装船。2017 年 7 月 21 日，申请人通过邮箱 <964895151@qq.com>向被申请人指定联系人 FENG  XU 邮箱<FENGXU88888@GMAIL.COM>发送提单扫描件。货物于 2017 年 7 月 29 日到达目的港，被申请人凭借提单扫描件将货物提走。

根据合同约定，被申请人应于 20118 年 1 月 1 日前付清前述合同项下款项，经申请人多次催告，被申请人仍拒不付款。前述合同项下货款本金 147,541.93 美元。

5. 编号 NFL20170517 合同条款及履行情况

合同约定，被申请人向申请人采购布料合计数量 132,251KGS，总金额 875,498.8 美元，交货地点 LDP MEXICO，付款方式为 OA 180days(货到后 180 天内付款)。

合同签订后，申请人将合同项下货物委托船公司 HAPAG-LLOYD 运输。2017 年 7 月 4 日，被申请人向申请人申请提单电放，同时向申请人出具付款保证函，保证对电放提单项下的货款于货物装运后 180 天付款。2017 年 7 月 4 日，船公司 HAPAG-LLOYD 向申请人出具正本提单，提单显示货物已经装船。2017 年 7 月 21 日，申请人通过邮箱 <964895151@qq.com>向被申请人指定联系人 FENG XU 邮箱<FENGXU88888@GMAIL.COM>发送提单扫描件。货物于 2017 年 7 月 29 日到达目的港，被申请人凭借提单扫描件将货物提走。

根据合同约定，被申请人应于 2018 年 1 月 1 日前付清前述合同项下款项，经申请人多次催告，被申请人仍拒不付款。前述合同项下货款本金 149,831.78 美元。

6. 编号 NFL20170520 合同条款及履行情况

合同约定，被申请人向申请人采购布料合计数量 24,000KGS，总金额 150,960 美元，交货地点 LDP MEXICO，付款方式为 OA 180days(货到后 180 天内付款)。

2017 年 7 月 10 日，被申请人向申请人出具付款保证函，保证对编号 ZYA7NGB020293 提单项下的货款于货物装运后 180 天付款。2017 年 7 月 10 日，船公司 BVL 向申请人出具正本提单，提单显示货物已经装船。2017 年 7 月 24 日，申请人通过 DHL 快递（快递单号 763 4841 502）向被申请人指定地址发送提单正本。货物于 2017 年 7 月 31 日到达目的港，被申请人凭借提单将货物提走。

根据合同约定，被申请人应于 2018 年 1 月 6 日前付清前述合同项下款项，经申请人多次催告，被申请人仍拒不付款。前述合同项下货款本金 144,412.74 美元。

7. 编号 NFL20170706 合同条款及履行情况

合同约定，被申请人向申请人采购布料合计数量 24,000KGS，总金额 150,960 美元，交货地点 LDP MEXICO，付款方式为 OA 180days（货到后 180 天内付款）。

2017 年 7 月 10 日，被申请人向申请人出具付款保证函，保证对编号 ZYA7NGB021470 提单项下的货款于货物装运后 180 天付款。2017 年 7 月 17 日，船公司 BVL 向申请人出具正本提单，提单显示货物已经装船。2017 年 7 月 24 日，申请人通过 DHL 快递（快递单号 763 4841 502）向被申请人指定地址发送提单正本。货物于 2017 年 8 月 7 日到达目的港，被申请人凭借提单将货物提走。

9

根据合同约定，被申请人应于 2018 年 1 月 6 日前付清前述合同项下款项，经申请人多次催告，被申请人仍拒不付款。前述合同项下货款本金 141,095.39 美元。

8. 编号 NFL20170620 合同条款及履行情况

合同约定，被申请人向申请人采购布料合计数量 19,536KGS，总金额 150,426.9 美元，交货地点 LDP MEXICO，付款方式为 OA 180days（货到后 180 天内付款）。

2017 年 8 月 4 日，被申请人向申请人出具付款保证函，保证对编号 C232013347 提单项下的货款于货物装运后 180 天付款。2017 年 7 月 31 日，船公司 YANG MING 向申请人出具正本提单，提单显示货物已经装船。2017 年 8 月 4 日，申请人通过 DHL 快递（快递单号 506 2759 995）向被申请人指定地址发送提单正本。货物于 2017 年 8 月 21 日到达目的港，被申请人凭借提单将货物提走。

根据合同约定，被申请人应于 2018 年 1 月 27 日前付清前述合同项下款项，经申请人多次催告，被申请人仍拒不付款。前述合同项下货款本金 122,945.13 美元。

上述八个合同项下，货款本金合计 1,185,753.97 美元。

申请人提出仲裁请求如下：

1. 被申请人立即向申请人支付货款 1,185,753.97 美元及

利息 51,563.04 美元（从应付款之日起计算，暂计至 2018 年 11 月 6 日，以银行同期贷款利率年 5.05%计算）；

以上金额暂合计：1,237,317.01 美元

2．被申请人偿付申请人为本案支出的差旅费；

3．本案的仲裁费、保全费由被申请人承担。

后，申请人提交变更请求说明函，将上述第 1 项仲裁请求变更为：

1．被申请人立即向申请人支付货款 1,185,753.97 美元及利息 48,499.89 美元（从应付款之日起算，暂计至 2018 年 11 月 6 日，以中国人民银行中长期贷款【一至五年】利率即年 4.75%计算，应计至被申请人实际支付之日）。

（二）被申请人庭审时的口头答辩

被申请人于庭审前未提交任何书面文件，庭审时口头答辩如下：

被申请人当庭提交单方整理出的表格，整理出总共三十几个货柜，之后做了 LDP，每个货柜的货柜号，用了一个公司采购的 LDP 的采购金额，并写明申请人支付的清关费用。被申请人称，按照约定，申请人把货柜从中国送出去，而且要及时把墨西哥该交的海关费用汇到被申请人那边，报关函要及时交到海关，被申请人的货物才不会延误，及时清关提货出来。被申请

人提交的上述表格已经很详细的列出每个货柜，包括 LDP 所有的货柜、所有的交易买卖。货柜号 ETD，是货柜到达墨西哥码头的预计时间；ETD，是从厦门或者宁波离案的预计时间；ETA 是预计到达墨西哥的时间。

按照国际惯例，LDP 是指申请人付完关税，然后货交被申请人，从这个商业概念上讲，如果没有支付关税，就不可能提货。如果没有提货，被申请人就不会认可此交易，因为被申请人支付的是包含关税之后的价格。

争端在于上述 30 多个货柜中几乎每个货柜在被申请人收到货款、关税之时，都已经延误几十天不等。因此根据申请人清关费用的日期计算，30 多个货柜总共延误了 1566 天，这些证据被申请人可以庭后提交。

一般来说，国际贸易过程中货物需要提早一星期清关，让海关有充足的时间审核资料。所以，货柜采购延误会导致被申请人需要付给当地港口货物滞港费用，货柜需要租赁集装箱装载，因此还需要支付给船公司费用。

从厦门、宁波到墨西哥，如果货柜被海关扣押一个月，被申请人就必须额外支付一月的租金，即空箱费用。空箱费用每天需要 275 美元，加上滞港费用 275 美元，每天的延误费用被申请人需要支付 550 美元。作为生意上的合作伙伴，被申请人一直没有向申请人索取延误费用，而是由被申请人独立承担，

因此向海关支付了一笔很大费用。因此，因此，申请人迟延给付货物进口关税、海关清关费用导致的滞港费用、空箱费用需要向海关支付 1566×550 美元。

在国际贸易中，如果货物延误一个礼拜，很少有客户会接收货物的，因为货物的索赔费用是一笔天文数字，包括滞港费用、空箱费用、租金、海关罚款。如果延误超过 60 天，海关会将这批货物没收。

被申请人以往每个货柜都可以盈利，并按时交付给客户，这些银行记录申请人与被申请人都有留存。尤其是纺织品，季节性比较强，厚度颜色非常应季，过了一定季节就不流行了，纺织品因此变成了库存。被申请人的客户都是墨西哥当地大型的染厂，购买被申请人的布料染色；以及墨西哥大型服装厂，购买被申请人的面料加工成服装卖给沃尔玛和其他大型零售连锁店。被申请人的布料延误了一个多月，服装厂就无法将成品制作完成交付给沃尔玛，沃尔玛无法完成预定的计划，就会向服装厂索赔。之后，服装厂也会拒绝接收被申请人延误的货物，并向被申请人索赔。最后，布料一旦过时，即使折价甩卖，也很难再出售了。

综上，申请人迟延给付货物进口关税、海关清关费用导致被申请人发生当地港口货物滞港费、集装箱租赁费、空箱费等损失，因此有权拒付货款。

13

（三）申请人的代理词

首先，申请人向仲裁庭阐明，根据开庭的实际情况，本案的申请人及被申请人均认可被申请人、CRYSTAL VOGUE INC.及XING LIN(USA)INTERNATIONAL CORP.均为同一实际控制人所控制的企业，上述三家企业任何一家所作出的意思表示（例如付款指示、付款承诺等），均可视为是另外两家的意思表示，不应局限地认为仅为实际作出主体的意思表示。

1.　申请人已经依约履行了所有讼争合同项下标的货物的交付义务，被申请人应当支付货款

在本案所涉的五份合同中，被申请人均出具了无条件付款保函，根据保函条款，被申请人应当在货物起运后的180内无条件付款。申请人已提交货物装船起运的证明(即提单)，被申请人也当庭认可业已收到讼争合同项下的全部货物。因此无论是发生货物灭失或者进口清关等任何风险，被申请人均应依照付款保函的承诺，承担无条件付款的义务。

2.　被申请人以申请人迟延支付标的货物进口关税款项（以下简称"款项"）给被申请人造成损失（以下简称"损失"）为由拒付货款的抗辩理由不能成立

（1）讼争CIF合同项下，申请人不承担进口清关义务，不应承担损失

14

根据《2010国际贸易术语解释通则》，CIF贸易术语项下，卖方将货物运至船上即完成交货。当货物运至船上时，货物灭失或损坏的风险转移。货物运至目的地后，由买方承担一切风险与费用，卖方无需缴纳进口款项、不承担进口清关义务。具体到本案中，申请人作为讼争合同的卖方，不承担进口清关义务，无需办理任何进口海关手续，因此不存在因申请人支付款项迟延造成被申请人损失的问题。

（2）讼争LDP合同项下，被申请人是标的货物的清关义务人，应自行承担清关责任，申请人不存在款项的迟延支付行为，被申请人无权要求申请人赔偿损失

①被申请人是标的货物的清关义务人，申请人不承担进口清关责任，被申请人应自行承担清关责任

根据被申请人于2017年6月1日向申请人出具的《承诺书》，明确表示"我们将全权控制货柜从目的港到我们仓库的所有通关步骤，所有这些步骤的风险都由我们承担"，本承诺书已经十分明确的表明，被申请人是标的货物的清关责任人，申请人不存在清关义务。

被申请人身处收货地、货物清关地，毫无疑问应熟悉当地的清关政策，作为清关责任人，应当在第一时间处理货物的清关事宜，缴纳款项使得货物得以正常进口。然而被申请人并未适当、及时的履行清关义务，由清关（包括但不限于清关迟延）

15

所产生的一切风险与损失，应由被申请人自行承担。

②申请人不存在款项的迟延支付行为

a. 讼争合同中关于款项支付时间没有约定，如被申请人要求申请人支付款项，应当提前通知申请人并且留给申请人必要的准备时间

根据申请人提供给仲裁庭的《说明函》，申请人认为本案应当适用中国法。根据《中华人民共和国合同法》的规定，关于合同义务履行期限不明确的，债务人可以随时履行，债权人也可以随时要求履行，但应当给对方必要的准备时间。被申请人既然要求申请人履行款项的付款义务，就应提前告知申请人，并且应当给申请人预留必要的准备时间。具体到本案中，申请人在收到被申请人的付款指示后，即积极安排付款事宜，并且在合理的时间内将款项支付给被申请人，不存在迟延付款的行为。

b. 交易双方对中国外汇管制政策均已充分了解，因外汇管制原因引起的款项合理支付时间不应视为款项迟延支付

从交易双方的聊天记录以及《承诺函》可以看出，被申请人在合同签订、履行时，已充分知悉中国的外汇管制政策，对外汇付出需要一定的合理支付时间这一实际情况都有着提前的预判。从2017年5月至6月期间（亦即货物尚未到港之时）各方聊天记录可以看出，申请人人员蒋淑芳已明确向被申请人

16

工作人员 Feng Xu 表示申请人不能向境外直接打"款项"，被申请人方工作人员对此并无异议，其同时提供了多种渠道，希望申请人将相关款项打到被申请人指定的国内相应账户，以解决该问题。被申请人各方的微信、电话聊天中也一再表示，由此产生的汇付风险由其承担。因此，交易双方在交易之初已对款项支付的合理时间有了充分的预估了解，在合同履行过程中对款项的支付方式也做了相应的调整，被申请人将外汇管制原因引起的款项合理支付时间视为款项迟延支付是不恰当的。

　　c.　申请人已在力所能及的范围内及时、全额的将款项支付给被申请人，不存在任何的支付迟延

　　在款项难以直接汇出的情况下，申请人秉持着诚实信用的原则，按照被申请人的指示，在第一时间将款项汇付给其指定的第三人，被申请人在庭上也承认已经全额收到申请人应付的全部款项。

　　综上，法律上、惯例中，均未对 LDP 术语下卖方支付款项的时间进行规定/约定，被申请人如要求申请人履行付款义务应当提前告知并应当预留给申请人必要的准备时间。且各方在合同签订、履行时已充分知悉中国对外汇的管制政策，对外汇付出需要一定的准备时间都有着提前的预判，被申请人不应将外汇管制原因造成的款项合理到账时间视为款项迟延支付。申请人秉持着诚实信用的原则，已在力所能及的范围内及时、全

17

额的将款项支付给被申请人，不存在任何的支付迟延。

③被申请人未能举证所遭受的损失，申请人不应承担赔偿责任

由于被申请人未能提供相应的基础证据对其当庭提交的"材料"进行佐证，因此申请人无法对"材料"的真实性、合法性进行质证，从"材料"所显示的内容而言，亦与被申请人所主张的损失不具有关联性，无法证明其所遭受的损失。

如被申请人认为申请人的行为对其造成了损失，则应对损失进行举证，但被申请人并未提供任何的证据，赔偿损失无从谈起。鉴于索偿事由不清、赔偿金额不明，申请人不应向被申请人承担任何赔偿责任。

值得一提的是，在 2017 年 8 月份，在 LDP 项下货物款项已受外汇监管，难以对外付汇时，被申请人仍然向申请人出具多份付款保函，被申请人在当时并未对款项问题提出任何异议，也未提及向申请人的索偿主张。在 2017 年 9 月申请人业务员蒋淑芳与 FENG XU(亦即被申请人的实际操作人员)的微信聊天中，申请人索要相关货款时，被申请人也只是一再的要求延期付款，从未提出对损失的索偿问题。可见，被申请人在庭审过程中关于申请人付款迟延的抗辩，完全是无稽之谈，仅仅是为了逃避向申请人的付款义务而寻找的借口。

（四）申请人的说明函

1. 关于仲裁请求第一项当中，利率选择的问题

首先，根据最高人民法院对逾期付款违约金的计算标准的批复，当事人如果对逾期付款违约金没有约定的，人民法院可以参照人民银行规定的金融机构计收逾期贷款利息的标准计算逾期付款违约金。由于外币贷款利率存在较大的不确定性，且中国实行外汇管制，外币须兑换成人民币方可在中国流通，因此申请人选择以中国人民银行人民币贷款利率为本案利息的计算基础，并无不当。该观点已得到相关法院的采纳（请参（2011）苏商外终字第 7 号）。

由于涉案款项的应付款时间距今已经超过一年，因此申请人选择以当前中国人民银行中长期贷款（一至五年）利率，即年利率 4.75%计算本案逾期利息，相关计算过程见附表。

| 合同编号 | 货物金额 | 船公司出具提单日 | 付款时间 | 暂计 | 天数 | 暂计利息 |
|---|---|---|---|---|---|---|
| NLF20170218 | $96,653.48 | 2017 年 5 月 28 日 | 2017/11/24 | 2018/11/6 | 347 | $4,425.25 |
| NLF20170220-1 | $96,980.40 | 2017 年 5 月 28 日 | 2017/11/24 | 2018/11/6 | 347 | $4,440.22 |
| NLF20170220-2 | $143,097.50 | 2017 年 7 月 5 日 | 2018/1/1 | 2018/11/6 | 309 | $5,834.20 |
| NLF20170514 | $147,541.93 | 2017 年 7 月 5 日 | 2018/1/1 | 2018/11/6 | 309 | $6,015.41 |
| NLF20170517 | $149,831.78 | 2017 年 7 月 4 日 | 2017/12/31 | 2018/11/6 | 310 | $6,128.54 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| NLF20170220-2 | $143,195.62 | 2017 年 7 月 10 日 | 2018/1/6 | 2018/11/6 | 304 | $5,743.74 | |
| NLF20170520 | $144,412.74 | 2017 年 7 月 10 日 | 2018/1/6 | 2018/11/6 | 304 | $5,792.56 | |
| NLF20170706 | $141,095.39 | 2017 年 7 月 17 日 | 2018/1/13 | 2018/11/6 | 297 | $5,529.18 | |
| NLF20170620 | $122,945.13 | 2017 年 7 月 31 日 | 2018/1/27 | 2018/11/6 | 283 | $4,590.81 | |

| | |
|---|---|
| 本金合计 | $1,185,753.97 |
| 利息合计（暂计） | $48,499.89 |
| 本息合计 | $1,234,253.86 |

利息计算说明：根据付款保函，被申请人承诺在提单日后 180 天付款，据此计算应付款日期，利率为中国人民银行中长期贷款（一至五年）利率即年 4.75%，计算公式为：（实际付款日期-应付日期）×4.75%/360×货款金额

## 2. 关于讼争合同的法律适用问题

根据《中华人民共和国涉外民事关系法律适用法》第四十一条，当事人对合同法律适用没有选择的，适用履行义务最能体现该合同特征的一方当事人经常居所地法律或者其他与该合同有最密切联系的法律。

从讼争合同特征履行的角度出发，本案系买卖合同纠纷，买卖合同的特征履行即为货物的交付与货款的收取。本案货物系从中国发出，按照合同约定货款也应由中国境内当事人收取。因为毫无疑问应当适用中国法。

20

　　从最密切联系角度出发，讼争合同最密切联系地，可以是合同履行地，也可以是合同签订地，以及各方当事人的住所等。参照民事诉讼法对于合同履行地点的认定，合同没有约定履行地或约定不明确的，争议标的为给付货币的，以接受货币一方所在地为合同履行地；交付其他标的物的，以履行义务一方所在地为合同履行地。由此可见，涉案合同的合同履行地应当在中国，且申请人系中国境内当事人，因此也应当适用中国法。

　　最后，本案仲裁地点在中国，讼争合同双方对仲裁语言为中文也未提出异议，适用中国法更有利于对案件的查明和审理。

　　综上，申请人主张本案审理应当适用中国法。

## 二 、仲裁庭意见

### （一）关于本案合同的适用法律

　　双方当事人在本案合同中没有约定合同的适用法。申请人在提交的《说明函》中，主张本案合同应当适用中国法律，并阐述了理由，被申请人对申请人的主张没有提出反对意见。

　　仲裁庭认为，从合同最密切联系因素来看，本案合同的签订、履行、主要当事人均与中国有密切联系，本案八份合同的货物均从中国港口装船并发运，卖方当事人即申请人是中国公司，其经常居所地在中国，被申请人对申请人主张适用中国法

21

律亦没有提出异议，故，以中国法律作为本案合同的适用法是合适的。此外，本案合同约定的仲裁地点在中国，适用仲裁地法即中国法律更便于对案件的审理和查明。综上，仲裁庭将以中国法律作为解决本案合同争议的适用法律。

同时，本案合同约定了 CIF 或 LDP 交货条款，申请人援引了《2010 国际贸易术语解释通则》，被申请人对此未提出异议，故，仲裁庭亦可适用《2010 国际贸易术语解释通则》解决本案合同争议。

（二）关于本案合同的效力

仲裁庭认为，申请人和被申请人是各自依照其本国法注册成立的公司法人，均为签订合同的适格主体，申请人与被申请人经协商一致订立本案合同，体现了双方当事人真实意思表示。本案合同内容没有违反中国法律、行政法规的强制性规定，双方当事人也没有对合同效力提出异议。故，本案合同合法有效，对双方当事人都具有法律约束力，申请人与被申请人都应当按照合同约定，行使权利、履行义务、承担责任。

（三）关于本案合同的履行情况

仲裁庭经开庭审理、审核证据，认定以下事实：

申请人与被申请人于 2017 年 2 月 10 日签订三份《PEACE BIRD TRADING CORP CONTRACT》合同，编号为 NFL20170218 、NFL20170220（包含两份，编号区别为 NFL20170220-1 、

22

NFL20170220-2）；于 2017 年 5 月 10 日签订四份《PEACE BIRD TRADING CORP CONTRACT》合同，编号为 NFL20170514、NFL20170517、NFL20170520、NFL20170706；于 2017 年 6 月 25 日签订一份《PEACE BIRD TRADING CORP CONTRACT》合同，编号为 NFL20170620，合计八份合同。上述合同约定由被申请人向申请人采购布料，申请人按照约定交付货物，被申请人按照约定支付货款。仲裁庭注意到，合同实际履行金额与合同约定金额不完全一致，是由于合同约定的是框架条款，实际履行金额由提单和保函共同构成。各项合同条款及履行情况如下：

1. 编号 NFL20170218 合同

合同约定，被申请人向申请人采购布料合计数量 72,000KGS,总金额 316,800 美元,交货地点及条件 CIF MEXICO,付款方式为 OA 180days(货物启运后 180 天内付款)。

合同签订后,申请人委托船公司 CCNI 运输合同项下货物。2017 年 5 月 31 日,被申请人向申请人申请电放提单,同时向申请人出具合同电放保函和付款承诺保函,保证对电放提单项下的货款于货物启运后 180 天内支付。2017 年 5 月 28 日,船公司 CCNI 向申请人出具电放提单,提单显示货物已经装船。2017 年 6 月 9 日,申请人通过邮箱 <964895151@qq.com>向被申请人指定联系人 FENG XU 邮箱<FENGXU88888@GMAIL.COM>发送电放提单。货物于 2017 年 6 月 18 日到达目的港,被申请人

凭借电放提单提取了货物。

根据合同约定以及保函承诺，被申请人应于 2017 年 11 月 28 日前付清该合同项下货款，经申请人多次催告，被申请人仍未付款。该合同项下货款金额合计 96,653.48 美元。

2. 编号 NFL20170220-1 合同

合同约定，被申请人向申请人采购布料合计数量 96,000KGS，总金额 432,000 美元，交货地点及条件 CIF MEXICO，付款方式 OA 180days（货物起运后 180 天内付款）。

合同签订后，申请人委托船公司 CCNI 运输合同项下货物。2017 年 5 月 31 日，被申请人向申请人申请提单电放，同时向申请人出具电放保函和付款承诺保函，保证对电放提单项下的货款于货物启运后 180 天付款。2017 年 5 月 28 日，船公司 CCNI 向申请人出具电放提单，提单显示货物已经装船。2017 年 6 月 9 日，申请人通过邮箱 <9648951510qq.com>向被申请人指定联系人 FENG  XU 邮箱<FENGXU88888@GMAIL.COM>发送电放提单。货物于 2017 年 6 月 18 日到达目的港，被申请人凭借电放提单将货物提走。

根据合同约定以及保函承诺，被申请人应于 2017 年 11 月 28 日前付清该合同项下货款，经申请人多次催告，被申请人仍未付款。该合同项下货款金额合计 96,980.40 美元。

3. 编号 NFL20170220-2 合同

合同约定，被申请人向申请人采购布料合计数量 72,000KGS，总金额 452,880 美元，交货地点及条件为 LDP MEXICO（完税交货），付款方式为 OA 180days（货物启运后 180 天内付款）。

合同签订后，申请人将合同项下货物分两批次委托船公司 HAPAG-LLOYD/BVL 运输。第一批次装运：2017 年 7 月 4 日，被申请人向申请人申请编号 HLCBON23769 提单电放，同时向申请人出具电放保函和付款承诺保函，保证对电放提单项下的货款于货物启运后 180 天付款。2017 年 7 月 5 日，船公司 HAPAG-LLOYD 向申请人出具提单，提单显示货物已经装船。2017 年 7 月 21 日，申请人通过邮箱 <964895151@qq.com>向被申请人指定联系人 FENG XU 邮箱<FENGXU88888@GMAIL.COM>发送该货物提单扫描件。货物于 2017 年 7 月 29 日到达目的港，被申请人凭借提单扫描件将货物提走。

第二批次装运：2017 年 7 月 10 日，被申请人向申请人出具付款保证函，保证对编号 ZYA7NGB020295 提单项下的货款于货物装运后 180 天付款。2017 年 7 月 10 日，船公司 BVL 向申请人出具正本提单，提单显示货物已经装船。2017 年 7 月 24 日，申请人通过 DHL 快递（快递单号 7634841502）向被申请人指定地址发送提单正本。货物于 2017 年 7 月 31 日到达目的港，

25

被申请人凭借提单将货物提走。

根据合同约定以及保函承诺，被申请人应于 2018 年 1 月 6 日前付清该合同项下货款，经申请人催告，被申请人仍不付款。该合同项下货款金额合计 286,293.12 美元。

4. 编号 NFL20170514 合同

合同约定，被申请人向申请人采购布料合计数量 22,000KGS，总金额 145,640 美元，交货地点及条件 LDP MEXICO，付款方式为 OA 180days（货到后 180 天内付款）。

合同签订后，申请人将合同项下货物委托船公司 HAPAG-LLOYD 运输。2017 年 7 月 4 日，被申请人向申请人申请编号 HLCBON23772 提单电放，同时向申请人出具电放保函和付款保证函，保证对电放提单项下的货款于货物装运后 180 天内付款。2017 年 7 月 5 日，船公司 HAPAG-LLOYD 向申请人出具正本提单，提单显示货物已经装船。2017 年 7 月 21 日，申请人通过邮箱 <964895151@qq.com>向被申请人指定联系人 FENG XU 邮箱<fengxu88888@gmail.com>发送提单扫描件。货物于 2017 年 7 月 29 日到达目的港，被申请人凭提单扫描件提取了货物。

根据合同约定以及函承诺，被申请人应于 2018 年 1 月 5 日前付清该合同项下货款，经申请人多次催告，被申请人仍拒不付款。该合同项下货款金额为 147,541.93 美元。

5. 编号 NFL20170517 合同

合同约定，被申请人向申请人采购布料合计数量 132,251KGS，总金额 875,498.8 美元，交货地点及条件为 LDP MEXICO ，付款方式为 OA 180days(货到后 180 天内付款)。

合同签订后，申请人将合同项下货物委托船公司 HAPAG-LLOYD 运输。2017 年 7 月 4 日，被申请人向申请人申请提单编号 HLCBON23758 提单电放，同时向申请人出具电放保函和付款保证函,保证对电放提单项下的货款于货物装运后 180 天付款。2017 年 7 月 4 日，船公司 HAPAG-LLOYD 向申请人出具正本提单，提单显示货物已经装船。2017 年 7 月 21 日，申请人通过邮箱 <964895151@qq.com>向被申请人指定联系人 FENG XU 邮箱<FENGXU88888@GMAIL.COM>发送提单扫描件。货物于 2017 年 7 月 29 日到达目的港，被申请人凭借提单扫描件将货物提走。

根据合同约定及保函承诺，被申请人应于 2018 年 1 月 2 日前付清该合同项下货款，经申请人多次催告，被申请人仍拒不付款。该合同项下货款金额为 149,831.78 美元。

6. 编号 NFL20170520 合同

合同约定，被申请人向申请人采购布料合计数量 24,000KGS,总金额 150,960 美元,交货地点及条件 LDP MEXICO, 付款方式为 OA 180days(货到后 180 天内付款)。

2017 年 7 月 10 日，被申请人向申请人出具付款保证函，保证对编号 ZYA7NGB020293 提单项下的货款于货物装运后 180 天付款。2017 年 7 月 10 日，船公司 BVL 向申请人出具正本提单，提单显示货物已经装船。2017 年 7 月 24 日，申请人通过 DHL 快递（快递单号 7634841502）向被申请人指定地址发送提单正本。货物于 2017 年 7 月 31 日到达目的港，被申请人凭借提单将货物提走。

根据合同约定及保函承诺，被申请人应于 2018 年 1 月 6 日前付清前述合同项下货款，经申请人多次催告，被申请人仍拒不付款。该合同项下货款金额为 144,412.74 美元。

7. 编号 NFL20170706 合同

合同约定，被申请人向申请人采购布料合计数量 24000KGS，总金额 150,960 美元，交货地点及条件 LDP MEXICO，付款方式为 OA 180days（货到后 180 天内付款）。

2017 年 7 月 10 日，被申请人向申请人出具付款保证函，保证对编号 ZYA7NGB021470 提单项下的货款于货物装运后 180 天付款。2017 年 7 月 17 日，船公司 BVL 向申请人出具正本提单，提单显示货物已经装船。2017 年 7 月 24 日，申请人通过 DHL 快递（快递单号 7634841502）向被申请人指定地址发送提单正本。货物于 2017 年 8 月 7 日到达目的港，被申请人凭借提单将货物提走。

根据合同约定及保函承诺，被申请人应于 2018 年 1 月 13 日前付清前述合同项下货款，经申请人多次催告，被申请人仍拒不付款。该合同项下货款金额为 141,095.39 美元。

8．编号 NFL20170620 合同

合同约定，被申请人向申请人采购布料合计数量 19,536KGS，总金额 150,426.9 美元，交货地点及条件为 LDP MEXICO,付款方式为 OA 180days（货到后 180 天内付款）。

2017 年 8 月 4 日，被申请人向申请人出具付款保函，保证对编号 C232013347 提单项下的货款于货物装运后 180 天付款。2017 年 7 月 31 日,船公司 YANG MING 向申请人出具正本提单，提单显示货物已经装船。2017 年 8 月 4 日，申请人通过 DHL 快递（快递单号 5062759995）向被申请人指定地址发送提单正本。货物于 2017 年 8 月 21 日到达目的港，被申请人凭借提单将货物提走。

根据合同约定以及保函承诺，被申请人应于 2018 年 1 月 26 日前付清该合同项下货款，经申请人多次催告，被申请人仍拒不付款。该合同项下货款金额为 122,945.13 美元。

上述八份合同项下应付货款金额合计 1,185,753.97 美元。对于上述各笔应付货款，被申请人均出具了付款保函，根据保函条款，被申请人承诺在货物启运后的 180 内付清货款。申请人提交了货物装船启运的证明（即提单），被申请人在仲裁开庭

29

时当庭认可收到上述合同项下的全部货物。故， 在申请人履行了交货义务后，被申请人应依照合同约定以及付款保函的承诺，履行相应付款义务。

仲裁庭注意到，被申请人在开庭时提出，申请人迟延给付货物进口关税、海关清关费用导致被申请人发生当地港口货物滞港费、集装箱租赁费、空箱费等损失，因此有权拒付货款，但被申请人当庭及庭后均没有提供任何证据支持其主张。对此，申请人庭后提交《代理词》陈述：申请人没有延迟支付该等款项，在遇到外汇管理政策变化、对外付汇困难的情况下，积极与被申请人协商，寻找解决办法，双方对该等款项的支付方式做出了相应调整，申请人按照被申请人的指示，将款项汇付给其指定的第三人，被申请人开庭时亦承认已收到申请人给付的全部款项。此外，被申请人没有举证证明其遭受损失，因此，被申请人的辩称只是为其不履行付款义务寻找借口。

仲裁庭认为，上述八份合同中，编号 NFL20170218 合同、NFL20170220-1 合同约定的是 CIF 交货条款，根据《2010 国际贸易术语解释通则》，CIF 贸易术语项下，卖方将货物运至船上即完成交货，货物灭失或损坏的风险由卖方转移至买方，即交货后由买方承担一切风险和费用，卖方无需缴纳进口关税，不承担货物进口清关义务。其他六份合同约定的是 LDP MEXICO 交货条款，根据《2010 国际贸易术语解释通则》，LDP 是目的

30

港完税交货，卖方要自负风险及费用，办理货物进口清关手续，包括提供进口许可证，负担进口关税、海关验关费用，以及因货物进口并交付买方而需支付的任何其他税款或费用。然而，本案合同履行的一个重要事实是，被申请人于 2017 年 6 月 1 日向申请人出具一份《承诺书》（见申请人第三次提交证据第十五组 15.1），明确承诺被申请人将：自行购买货物从目的港到被申请人仓库的保险；同意申请人的货运代理公司与被申请人一起操作 LDP 所有流程；控制货物从目的港到被申请人仓库海关清关的所有步骤，由此产生的所有风险都由被申请人承担；多支付清关费的 4%以补偿申请人为被申请人垫付 LDP 的成本。该《承诺书》实际上已修改了双方在前述合同中约定的 LDP 交货条款，被申请人通过该《承诺函》成为本案合同项下货物进口的清关义务人，承担货物清关的责任及风险，申请人不再承担进口货物的清关责任及风险。故，本案合同履行过程中，因被申请人未适当、及时办理清关手续，导致货物延迟通关及交付所产生的风险与损失，包括滞港费、空箱费、租金、海关罚款等，应由被申请人自行承担。

综上，仲裁庭对被申请人拒付货款的抗辩理由不予认可，被申请人拒付货款行为构成违反合同，根据《中华人民共和国合同法》第一百零七条、第一百零九条的规定，被申请人应当承担违约责任，并赔偿因其违约给申请人造成的相关损失。

（四）关于申请人的仲裁请求

对被申请人的违约行为，申请人提出以下仲裁请求：

1. 被申请人立即向申请人支付货款 1,185,753.97 美元及利息 48,499.89 美元（从应付款之日起算，暂计至 2018 年 11 月 6 日，以中国人民银行中长期贷款【一至五年】利率即年 4.75% 计算，应计至被申请人实际支付之日）。

关于货款请求，根据仲裁庭前述对履行合同事实的认定，申请人按照合同约定履行了交货义务，被申请人应当履行支付相应货款义务，本案所涉八份合同项下的应付货款合计为 1,185,753.97 美元，因此，仲裁庭对于申请人要求被申请人向其支付应付货款 1,185,753.97 美元的请求予以支持。

关于利息请求，申请人根据最高人民法院关于逾期付款违约金计算标准的司法解释，选择中国人民银行规定的金融机构人民币中长期贷款利率计算本案逾期付款违约金，并举证人民法院相关判决支持其主张。对此主张，被申请人没有提出异议及抗辩。申请人庭后提交的《说明函》中，将仲裁请求中计算逾期付款利息的贷款利率 5.05% 改为人民银行中长期贷款利率 4.75%，并提交了利息计算方法和公式。仲裁庭认为，本案合同履行是从 2017 年至 2018 年，合同项下应付款的逾期时间已超过两年，故，申请人以年利率 4.75% 计算逾期付款利息是适当的，仲裁庭予以支持。故，被申请人应向申请人支付暂计至 2018

32

年 11 月 6 日的利息 48,499.89 美元, 以及以 1,185,753.97 美元为本金, 自 2018 年 11 月 7 日起至被申请人实际支付之日止按年利率 4.75%计算的利息。

2. 被申请人偿付申请人为本案支出的差旅费。

申请人对其此项请求没有提交任何证据, 所以, 仲裁庭对该请求不予支持。

3. 本案的仲裁费、保全费由被申请人承担。

根据本案审理情况, 仲裁庭裁定, 本案仲裁费由被申请人全部承担。

关于保全费, 鉴于申请人没有提交相关证据, 仲裁庭对该请求不予支持。

## 三、 裁 决

经审理及合议, 仲裁庭裁决如下:

（一）被申请人向申请人支付货款 1,185,753.97 美元;

（二）被申请人向申请人支付暂计至 2018 年 11 月 6 日的利息 48,499.89 美元, 以及以 1,185,753.97 美元为本金, 自 2018 年 11 月 7 日起至被申请人实际支付之日止按年利率

4.75%计算的利息;

（三）本案仲裁费人民币 215,372 元,全部由被申请人承担，鉴于申请人已预付该笔仲裁费用，被申请人应偿付申请人为其垫付的仲裁费人民币 215,372 元;

（四）驳回申请人其他仲裁请求。

以上各项支付金额,被申请人应于本裁决作出之日起 30 日内支付完毕。

本裁决为终局裁决，自作出之日起生效。

（此页无正文）

首席仲裁员： 

仲　裁　员：

仲　裁　员：

二〇二〇年三月十日于北京



中 国 国 际 经 济 贸 易 仲 裁 委 员 会

CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION